IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ANDREW CARR | ) | CASE NO. 1:17-CV-00620 |
| | ) | |
| Plaintiff | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | DEFENDANTS OFFICER STEVEN |
| DETECTIVE ALFRED JOHNSON, *et al.* | ) | DAVIS AND SGT. KEITH E. |
| | ) | KULAK'S MOTION FOR SUMMARY |
| Defendants | ) | JUDGMENT |
| | ) | |

Now come Defendants Officer Steven Davis and Sergeant Keith E. Kulak, by and through counsel, and pursuant to Fed.R.Civ.P. 56(c), respectfully move this Honorable Court for an Order granting them summary judgment and dismissing with prejudice all of Plaintiff's claims asserted against them. As there are no genuine issues of material fact, Defendants are entitled to judgment as a matter of law. This Motion is supported by the attached Brief in Support and Exhibits, all of which are attached hereto and fully incorporated herein.

Respectfully submitted,

/s/ Thomas G. Lobe
Thomas G. Lobe (0001346)
THOMAS G. LOBE CO., L.P.A.
1300 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113
(440) 725-5410
(216) 664-6999 *fax*
tomlobe@yahoo.com

/s/ Todd D. Cipollo

Todd D. Cipollo, Esq. (0069043)
TODD D. CIPOLLO CO., L.P.A.
1300 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113
(216) 644-7450
(216) 664-6999 *fax*
tcipollo@cipollolaw.com

*Attorneys for Defendants Davis and Kulak*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES     ii

I.    INTRODUCTION     1

II.   STATEMENT OF THE CASE     2

     A.    SEALE SWAT     2
     B.    Search Warrant     3
     C.    Arrest and Prosecution     4
     D.    Complaint     5

III.   LAW AND ARGUMENT     5

     A.    Plaintiff's § 1983 claims fail as a matter of law as Sgt. Kulak and Ofc. Davis have qualified immunity for their respective police actions.     6

         1.   Plaintiff's § 1983 claims fail as a matter of law as Sgt. Kulak and Ofc. Davis have qualified immunity as the search warrant in question was facially sufficient in indicia of probable cause.     7
         2.   Plaintiff's § 1983 claims fail as a matter of law as Sgt. Kulak and Ofc. Davis as rank and file member of the SEALE SWAT unit have no responsibility to review of search warrant.     8
         3.   Plaintiff's § 1983 claims fail as a matter of law as there was not violation of the "knock and announce" rule by Sgt. Kulak and Ofc. Davis     10

     B.    Plaintiff's federal malicious prosecution claim fails as a matter of law.     12

     C.    Plaintiff's false imprisonment claim fails as a matter of law.     12

     D.    Plaintiff's civil conspiracy fails as a matter of law.     13

         1.   Plaintiff's state civil conspiracy fails as a matter of law.     13
         2.   Plaintiff's federal civil conspiracy fails as a matter of law.     14

IV.   CONCLUSION     15

CERTIFICATE OF SERVICE     16

# TABLE OF AUTHORITIES

## Cases

*Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999)     6

*Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)     7

*Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 2081, 179 L.Ed.2d 1149, 1157 [132 S.Ct. 1245] (2011)     6

*Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir.2006)     12-13

*Binay v. Bettendorf,* 601 F.3d 640, 650 (6th Cir.2010)     7

*Bindra v. Fuenning*, 9th Dist. Summit No. 26489, 2013-Ohio-5722     13

*Collins v. City of Shaker Heights*, 503 U.S. 115 (1992);     6

*Cook v. McPherson*, 273 F.App'x. 421 (6th Cir. 2008); *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir.2006)     12

*DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201-202 (1989)     6

*Ex parte U.S.*, 53 S.Ct. 129 (1932)     12

*Gradisher v. City of Akron*, 794 F.3d 574 (6th Cir. 2015)     12

*Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir.1986)     9

*Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)*     9

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)     6

*Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005)     13

*Hubbard v. Gross*, 199 F. App'x. 422, 441 (6th Cir. 2006)     13

*KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008)     8, 9

*LaSalle Bank, N.A. v. Kelly*, 9th Dist. Medina No. 09CA0067-M, 2010-Ohio-2668     13

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)     6

*McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006)     13

*McLeod v. Benjamin*, 2016 WL 6947546 (W.D.Mich. 2016)

*Messerschmidt v. Millender,* 565 U.S. 535 (2012)     7

*Minarik v. Nagy*, 8 Ohio App.2d 194, 196 (1963)     13

*Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)     6

*Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1026 (9th Cir. 2002*), aff'd sub nom. Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)*     9

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014)

*Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002)     12

*Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006)     6

*United States v. Bates,* 84 F.3d 790, 794 (6th Cir.1996)     10

*United States v. Bragg*, 138 F.3d 1194, 1195 (7th Cir. 1998)     11

*United States v. Dice*, 200 F.3d 978, 982 (6th Cir.2000)     10

*United States v. Leon*, 468 U.S. 897, 922-923, 104 S.Ct. 3405, 82 L.Ed.2d 677     7

*United States v. Maher*, 185 F. Supp.2d 826, 830 (W.D. Mich. 2001)     11

*United States v. Markling,* 7 F.3d 1309 (7th Cir.1993)     10

*United States v. Spikes,* 158 F.3d 913, 925 (6th Cir.1998)     10

*Warren v. Tankersley*, No. 1:14-CV-1006, 2015 WL 5567103 (N.D.Ohio Sept. 21, 2015)     7

## **Statutes**

42 U.S.C. § 1983     1, 5, 6, 7, 8, 10, 12, 13

42 U.S.C. § 1983     14

## I.    INTRODUCTION

Plaintiff Andrew Carr brings the instant lawsuit alleging a variety of claims under 42 U.S.C. § 1983 ("§ 1983").  Carr's § 1983 claims primarily arise from a Search Warrant obtained by Defendant Cleveland Police Detective Alfred Johnson ("Det. Johnson") to search the premises located at 19409 Milan Drive, Maple Heights, Ohio ("the Premises") for "criminal gang materials".    The Search Warrant and Affidavit for Search Warrant provided that Michael Menefield resided at the Premises and was involved in criminal gang activity.  (See April 12, 2016 Search Warrant and Affidavit attached as Exhibit A).  Carr alleges that the search warrant drafted by Det. Johnson lacked probable cause to justify the search of the Premises.  (Compl. ECF#1 at ¶54).

Defendants Officer Steven Davis (hereinafter "Ofc. Davis") and Sergeant Keith Kulak (hereinafter "Sgt. Kulak") are police officers employed by the Solon Police Department in the City of Solon, Ohio.  (Affid. of Kulak at ¶ 1 attached as Exhibit B; and Affidavit of Davis at ¶ 1 attached as Exhibit C).  Ofc. Davis and Sgt. Kulak are members of the Southeast Area Law Enforcement Network's (hereinafter, "SEALE") Special Weapons and Tactics (hereinafter "SWAT") unit.  (*Id. at* ¶ 5 and ¶ 5).

The SEALE SWAT assisted the Cleveland Police Department ("CPD") in executing the Search Warrant.  (*Id. at* ¶ 10 and ¶ 9).  The SEALE SWAT unit's sole involvement in the execution of the Search Warrant is limited to securing the property and persons present at the location.  (*Id. at* ¶ 19 and ¶ 18).  Once the property and location are secured by the members of the SWAT unit, the investigating police entity involved completes its search pursuant to the terms of the warrant.  (*Id. at* ¶ 20 and ¶ 19).  The SWAT unit members had no involvement in CPD search of the Premises, nor would SWAT unit members investigate or arrest for any crime

1

that might occur at the location of the execution of the search warrant. (*Id. at* ¶¶ 21-22 and ¶¶ 20-21). Any crime that may occur at the location of the execution of the warrant is under the jurisdiction of the municipal police force in that location. In the instant matter, the Maple Height Police Department ("MHPD") would have jurisdiction and responsibility to investigate and charge any crime committed at said location.

Sgt. Kulak and Ofc. Davis's actions relevant to the instant lawsuit involve *only* securing the property at the Premises in their roles at SEALE SWAT unit members. The entirety of Sgt. Kulak and Ofc. Davis's interactions with Mr. Carr consisted solely of Mr. Carr firing a gun in their direction. Once the property was secured, the SEALE SWAT unit turned the search over to the Cleveland Police Department and any criminal investigation on the Premises over to the Maple Heights Police Department.

## II.    STATEMENT OF THE CASE

### A.    SEALE SWAT

SEALE exists pursuant to an Agreement for Establishment of Regional Council of Governments, authorized under Chapter 167 of the Ohio Revised Code, by and between the City of Bedford, the City of Maple Heights, the City of Bedford Heights, the Village of Oakwood, the City of Garfield Heights, the Village of Walton Hills, and the City of Solon. The purpose of SEALE is for the mutual interchange of police personnel and police equipment as well as jointly acquired and owned police equipment. SEALE consists of several specialized police service units, one of which is SEALE SWAT.

The purpose and intent of SEALE SWAT is to serve as a specialized, flexible unit, activated to assist member departments in the containment, de-escalation and ultimate control of all situations beyond the capabilities of a traditional on-duty police officer. SEALE SWAT

2

routinely serves warrants within the jurisdictions of its member municipalities. (Affid. of Kulak at ¶ 8 attached as Exhibit B; and Affidavit of Davis at ¶ 7 attached as Exhibit C). Ofc. Davis and Sgt. Kulak were present at 19409 Milan Drive, Maple Heights, Ohio on April 15, 2016, in their respective capacities as members of the SEALE SWAT team. (*Id. at* ¶ 10 and ¶ 9).

Ofc. Davis and Sgt. Kulak were two (2) of eleven (11) members of the SEALE SWAT present at 19409 Milan Drive, Maple Heights, Ohio to assist the CPD in the execution of a Search Warrant. (*Id. at* ¶ 13 and ¶ 12). The SWAT team's role in executing this, or any, search warrant is solely to secure the property and persons present at the location in order to turn the investigation over to the investigating law enforcement entity or entitities. (*Id. at* ¶ 19 and ¶ 18). The activities of Ofc. Davis and Sgt. Kulak consisted only of securing the property and persons at the location so that the CPD could conduct its search pursuant to the terms of the Search Warrant. (*Id.*).

B.    Search Warrant

The Search Warrant at issue in this case was obtained by the CPD. Defendant Detective Alfred Johnson is a member of the CPD gang unit and was investigating a street gang called the Heartless Felons. The subject search warrant was obtained by the CPD with the assistance of the Cuyahoga County Prosecutor's office. (See email correspondence dated April 11, 2016 and April 11, 2016 between Det. Johnson and the Cuyahoga County Prosecutor's Office attached as Exhibit D). Judge Michael Astrab of the Cuyahoga County Court of Common Pleas found probable cause existed for the issuance of the search warrant, as evidenced by the search warrant being signed by the Judge on April 12, 2018. (See Search Warrant, Exhibit A).

On April 14, 2016, SEALE SWAT was contacted, "paged out", to assist with a high risk search warrant by the CPD Gang Impact Unit. (Affid. of Kulak at ¶ 9 attached as Exhibit B; and

Affidavit of Davis at ¶ 8 attached as Exhibit C).  On April 15, 2016, at approximately 7:00 a.m., the SEALE SWAT team assisted the CPD in the execution of a CPD search warrant.  (*Id. at* ¶ 13 and ¶ 13).  Ofc. Davis, Sgt. Kulak and Defendant Officer Ron Dodge (of the Garfield Height Police Department) were the first three (3) members of the SWAT team to enter the home.  (*Id. at* ¶ 17 and ¶ 16).  The officers knocked (on the front door) and announced that they were police officer executing on a warrant.  (*Id. at* ¶ 14 and ¶ 13).  Upon no one from the home answering the door, the front door was breached.  (*Id. at* ¶ 15 and ¶ 14).  Upon the door being breached, Ofc. Davis deployed a Noise and Flash Diversionary Device (NFDD) into the threshold of the home.  (*Id. at* ¶ 16 and ¶ 15).  Ofc. Davis, Sgt. Kulak and Officer Dodge entered into the home following the NFDD.  (*Id. at* ¶ 17 and ¶ 16).  Following the deployment of the NFDD, Carr fired a single gunshot, aiming toward the front door, from which the officers just entered.  (See Andrew Carr Deposition at pp. 44-45, pertinent pages attached as Exhibit E).  After the Carr gunshot, the SEALE SWAT team completed securing the property.  Upon the property and persons present at the property being secured, SEALE SWAT turned the investigation over to the CPD. (Affid. of Kulak at ¶ 20 attached as Exhibit B; and Affidavit of Davis at ¶ 19 attached as Exhibit C).

    C.    <u>Arrest and Prosecution</u>

    Carr was arrested by the Maple Heights Police Department.  (See Andrew Carr Deposition at pp. 45, 54 pertinent pages attached as Exhibit E).  The MHPD charged Carr with three counts of felonious assault upon a peace officer.  On or about May 9, 2016, Mr. Carr was indicted on the three counts of felonious assault by the Cuyahoga County Grand Jury.  (See Indictment attached as Exhibit F).  Ofc. Davis and Sgt. Kulak did not arrest Carr.  (Affid. of Kulak at ¶ 23 attached as Exhibit B; and Affidavit of Davis at ¶ 22 attached as Exhibit C).  Ofc.

Davis and Sgt. Kulak did not testify before the Cuyahoga County Grand Jury. (*Id. at* ¶ 24 and ¶ 23). Ofc. Davis and Sgt. Kulak were never subpoenaed to testify in Carr's criminal case. (*Id. at* ¶ 25 and ¶ 24). Ofc. Davis and Sgt. Kulak were never consulted by the Cuyahoga County Prosecutor's Office during the pendency of Carr's criminal case, nor notified about the criminal case being dismissed without prejudice. (*Id. at* ¶ 26 and ¶ 25). Ofc. Davis and Sgt. Kulak's only involvement in Carr's criminal case was being identified as victims in the Indictment.

D. Complaint

Plaintiff's Complaint attempts to assert the following causes of action against Ofc. Davis and Sgt. Kulak:

- Count One: § 1983 claim premised on a search warrant obtained by CPD Detective Johnson that is alleged to lack probable cause to justify a search of the premises described in the search warrant (Compl. ECF#1 at ¶¶68-74)
- Count Two: The Court dismissed Count Two as to former Defendants Cleveland Police Department, Solon Police Department, and Garfield Heights Police Department (ECF#39, 40 and 41)
- Count Three: Civil Conspiracy claim premised on defendants alleged conspiracy to violate Plaintiff's civil rights (Compl. ECF#1 at ¶¶80-87)
- Count Four: False imprisonment claim premised on Plaintiff's arrest and subsequent confinement allegedly without probable cause (Compl. ECF#1 at ¶¶88-95)
- Count Five: Malicious prosecution claim for allegedly charging Plaintiff with criminal offense of felonious assault on a police officer (Compl. ECF#1 at ¶¶96-103)
- Count Six: § 1983 claim premised on Plaintiff's right to be free from unreasonable search and seizures premised on a search warrant obtained by Cleveland Police Detective Johnson that is alleged to lack probable cause to justify a search of the premises described in the search warrant (Compl. ECF#1 at ¶¶104-112)

As will be fully established below, all of Plaintiff's claims against the Solon Defendants must be dismissed as a matter of law.

III. **LAW AND ARGUMENT**

To prevail on claims brought pursuant to § 1983, a plaintiff bears the burden of establishing that a person acting under the color of law deprived the plaintiff of a right secured

by the United States Constitution or the laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). It is well-established that any injury caused merely by negligence does not constitute a "deprivation" of any constitutionally protected interest. *Collins v. City of Shaker Heights*, 503 U.S. 115 (1992); *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201-202 (1989). Indeed, to violate the Constitution, the complained of action must be committed knowingly or intentionally, as mere negligence or recklessness is insufficient. *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999).

As will be shown below, Plaintiff's constitutional rights were not violated. As a result, the Sgt. Kulak and Ofc. Davis are entitled to summary judgment on Plaintiff's claims as a matter of law.

A.    Plaintiff's § 1983 claims fail as a matter of law as Sgt. Kulak and Ofc. Davis have qualified immunity for their respective police actions

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 2081, 179 L.Ed.2d 1149, 1157 [132 S.Ct. 1245] (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the

legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citation omitted).

It has been established in this Circuit that "[a]s a general rule, mere presence at the scene of [the alleged constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Warren v. Tankersley*, No. 1:14-CV-1006, 2015 WL 5567103, at *8 (N.D.Ohio Sept. 21, 2015), citing *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir.2010).

  1. Plaintiff's § 1983 claims fail as a matter of law as Sgt. Kulak and Ofc. Davis have qualified immunity as the search warrant in question was facially sufficient in indicia of probable cause.

In cases involving alleged Fourth Amendment violations, The U.S. Supreme Court has set a high threshold for establishing an exception to the rule of immunity. In *Messerschmidt v. Millender*, 565 U.S. 535 (2012). The Court provided:

> Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, **the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or in "objective good faith."** *United States v. Leon*, 468 U.S. 897, 922-923, 104 S.Ct. 3405, 82 L.Ed.2d 677. Nonetheless, that fact does not end the inquiry into objective reasonableness. The Court has recognized **an exception allowing suit when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."** *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271. The shield of immunity" otherwise conferred by the warrant, 475 U.S., at 345, 106 S.Ct. 1092, 89 L.Ed.2d 271, will be lost, for example, **where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,"** *Leon*, 468 U.S., at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677. The threshold for establishing this exception is high. "[I]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.*, 468 U.S., at 921, 104 S.Ct. 3405, 82 L.Ed.2d 677. Pp. ___ - ___, 182 L.Ed.2d, at 58-59.

*Messerschmidt at* 536 [emphasis added].

In the instant matter, Plaintiff alleges that the search warrant drafted by Det. Johnson lacked probable cause to justify the search of the Premises as the target of the search, Michael Menefield, was not located at the Premises. (Compl. ECF#1 at ¶¶ 53-54). However, this investigative information is beyond the face of the search warrant. Plaintiff is improperly seeking to impute investigative information beyond the facial content of the search warrant to members of the regional SWAT unit. On its face, the Search Warrant was sufficient and contains no obvious defect. The facially sufficient warrant, issued by a Judge of the Cuyahoga County Court of Common Pleas, suffices to provide immunity to Sgt. Kulak and Ofc. Davis for their roles in assisting the CPD, as member of the SEALE SWAT unit, in the execution of the Search Warrant.

    2.    Plaintiff's § 1983 claims fail as a matter of law as Sgt. Kulak and Ofc. Davis, as rank and file member of the SEALE SWAT unit, have no responsibility to review of search warrant.

Above and beyond the argument as set forth in section 1. above, Sgt. Kulak and Ofc. Davis have no individual responsibility to review the Search Warrant. Sgt. Kulak and Ofc. Davis are rank and file member of the SEALE SWAT unit. Neither officer acted in the capacity of the SWAT Team Commander with regard to the Search Warrant at issue in this litigation. (Affid. of Kulak at ¶ 11 attached as Exhibit B; and Affidavit of Davis at ¶ 10 attached as Exhibit C). The function of reviewing the search warrant is handled by the SEALE Team Commander who serves as the liaison between SEALE SWAT unit and the Cleveland Police Department. (*Id. at ¶* 12 and ¶ 11). Any other procedure for review of search warrants, particularly by a multijurisdictional SWAT unit, would be impractical, unworkable, and unnecessary.

"Even if a warrant is so lacking in probable cause that official reliance is unreasonable, not **all** officers executing the search are liable for the constitutional deficiency." *KRL v. Estate of*

*Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008). Police "officers' roles can vary widely" during the course of a search so that the Court must consider and distinguish what's reasonable for an individual officer is dependent on that officer's role in the search." *Id.* citing *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1026 (9th Cir. 2002), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004).

"Officers who plan and lead a search `must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way.'" *Id.* (citing *Leon*, 468 U.S. at 922–23, 104 S.Ct. 3405). "Line officers, however, do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid.'" *Id.* at 1028 (citing *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir.1986)). "Thus, even if a warrant is so lacking in probable cause that official reliance is unreasonable, line officers who do not read the warrant are still entitled to qualified immunity if they inquire as to the `nature and scope' of the warrant, and rely on representations made by their superiors. *See id.* at 1028." *KRL*, 512 F.3d at 1190. Here, Ofc. Davis and Sgt. Kulak followed the direction of their SEALE SWAT Team Commander in assisting the Cleveland Police is executing the instant warrant.

It is further importance to note, in ascertaining the reasonableness of Ofc. Davis and Sgt. Kulak actions, that as members of the SEALE SWAT unit, they were "paged out" to the event less than twenty-four (24) hours prior to participating therein. Furthermore, the reason that SWAT was called in to assist the CPD is that the search warrant was identified as a high risk warrant where fire arms were likely to be, and actually were, present. Line officers like Ofc. Davis and Sgt. Kulak, especially when said officers are two (2) of the first three (3) SWAT

members to be entering a premises, must be permitted to follow the directions of their superior officers who run the operation.

3.    Plaintiff's § 1983 claims fail as a matter of law there was no violation of the "knock and announce" rule by Sgt. Kulak and Ofc. Davis.

Ofc. Davis, Sgt. Kulak and Ofc. Dodge were the first three (3) members of the SWAT team to enter the home. (*Id. at* ¶ 17 and ¶ 16). The officers knocked (on the front door) and announced that they were police officer executing on a warrant. (*Id. at* ¶ 14 and ¶ 13). Upon no one from the home answering the door, the front door was breached. (*Id. at* ¶ 15 and ¶ 14). Upon the door being breached, Ofc. Davis deployed a Noise and Flash Diversionary Device (NFDD) into the threshold of the home. (*Id. at* ¶ 16 and ¶ 15). Ofc. Davis, Sgt. Kulak and Officer Dodge entered into the home following the NFDD. (*Id. at* ¶ 17 and ¶ 16).

"At its core, the 'knock and announce' rule serves to respect the sanctity of a person's home by affording notice to those inside so that they may open the door peaceably and without the needless destruction of property, as well as by avoiding the possibility of a violent confrontation if those inside mistook the police for intruders." *United States v. Spikes,* 158 F.3d 913, 925 (6th Cir.1998). The rule thus serves the important purposes of: "(1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) curbing the needless destruction of private property; and (3) protecting the individual's right to privacy in his or her house." *United States v. Dice,* 200 F.3d 978, 982 (6th Cir.2000)(citing *United States v. Bates,* 84 F.3d 790, 794 (6th Cir.1996)).

The law requires the officer to give "notice of his authority and purpose". "If the officer 'is refused admittance'—and failure to answer the door is a form of refusal, see *United States v. Markling,* 7 F.3d 1309 (7th Cir.1993)—then the door may be broken to execute the warrant. Notice tells the occupants who is at the door; the opportunity to open the door in response

enables the occupants to avert damage to their dwelling." *United States v. Bragg*, 138 F.3d 1194, 1195 (7th Cir. 1998). Refused admittance may result in justifiable damage to property.

Officers serving a warrant are not privy to the reasons admittance is being refused. However, the refusal justifies the necessity, as here, of forcefully breaching the entrance.

> "People refuse or fail to answer their doors for any number of reasons. The caller might be a nosy neighbor, a door-to-door salesman, a bill collector, an angry ex-girlfriend or boyfriend, or someone else whom the occupant wants to avoid. The occupant might be temporarily indisposed, as was Maher, who was on the telephone when the officers began to knock. Or, the occupant might consider it more important to complete whatever he or she is doing at the moment before answering the door. The announcement enables an occupant to discern the identity of the person at the door, realize that the door should be answered immediately, and avoid any consequences of failing to answer based on an incorrect assumption."

*United States v. Maher*, 185 F. Supp.2d 826, 830 (W.D. Mich. 2001). In the instant manner, the SEALE SWAT team had eleven (11) members present on the Premises. Additionally, police were present representing both the Cleveland Police Department and Maple Heights Police Department. Under these circumstances, the refusal to respond to the officers' knock was unreasonable and lead to the justified breach of the entrance.

Testimony from Derrick Carr, father of Plaintiff, who was present in the home during the execution of the warrant further details the notice provided and the necessity to breach the entrance. Plaintiff's father saw two men two men running past his kitchen window. (See Deposition of Derrick Carr at pp. 31-32, attached as Exhibit G). He then proceeded to his front window and saw men he "recognized as police officers" wearing camouflage. (See Deposition of Derrick Carr at pp. 39-40, attached as Exhibit G). The refusal to grant admittance objectively justified a breaching the entrance at the Premises.

11

B.     Plaintiff's Federal Malicious Prosecution Claim fails as a matter of law

Count Five of Plaintiff's Complaint attempts to allege a Malicious Prosecution claim under 42 USC § 1983 against Ofc. Davis and Sgt. Kulak.  To support a § 1983 claim of malicious prosecution:

> "A plaintiff must prove the following: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor."

*Gradisher v. City of Akron*, 794 F.3d 574 (6th Cir. 2015) *citing, Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014).  An officer cannot be held liable for malicious prosecution when he did not make the decision to prosecute. *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002).  In the case at hand, Plaintiff has failed to establish that any of the Defendants made, influenced or participated in the decision to prosecute.  Ofc. Davis and Sgt. Kulak had no involvement in Carr's arrest or prosecution.

C.     Plaintiff's False Imprisonment claim as a matter of law.

Ofc. Davis and Sgt. Kulak had no involvement in Carr's arrest, which lead to his time of imprisonment.  The Maple Heights Police Department and the Cuyahoga County Prosecutor's Office arrested, charged and prosecuted Mr. Carr.  Ofc. Davis and Sgt. Kulak only involvement in the matter was being identified as the victim of the crime charged.

Even if Ofc. Davis and Sgt. Kulak had been involved in Mr. Carr's arrest and prosecution, the claim would still fail as a matter of law.  It has long been held that a grand jury indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer. *Ex parte U.S.*, 53 S.Ct. 129 (1932); *See also, Cook v. McPherson*, 273 F.App'x. 421 (6th Cir. 2008); *Barnes v. Wright*, 449

F.3d 709, 716 (6th Cir.2006). As such, as a matter of law, Plaintiff's indictment is dispositive of his § 1983 malicious prosecution claim. *See also, Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005)(observing that an indictment is "prima facie evidence of probable cause and a plaintiff must bring forward substantial evidence to rebut this" to succeed on a malicious prosecution claim); *Hubbard v. Gross*, 199 F. App'x. 422, 441 (6th Cir. 2006) (holding that defendants were entitled to qualified immunity on plaintiff's malicious prosecution claim because plaintiff had been indicted). The only exception to this rule is if Plaintiff can provide evidence that his indictment was produced by fraud, perjury, the suppression of evidence or other inappropriate means. *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). There is no evidence of this in this case. Plaintiff's False Imprisonment claim fails as a matter of law.

      D.    <u>Plaintiff's Civil Conspiracy claim fails as a matter of law.</u>

           1.    Plaintiff's state Civil Conspiracy claim fails as a matter of law.

Plaintiff's civil conspiracy claim likewise fails as a matter of law A claim for civil conspiracy requires "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. [T]he underlying unlawful act must be a tort." *Bindra v. Fuenning*, 9th Dist. Summit No. 26489, 2013-Ohio-5722, ¶ 31, quoting *LaSalle Bank, N.A. v. Kelly*, 9th Dist. Medina No. 09CA0067-M, 2010-Ohio-2668, ¶ 33. A civil conspiracy is defined as "a malicious combination of two or more persons to injure another, in person or property, in a way not competent for one alone." *Minarik v. Nagy*, 8 Ohio App.2d 194, 196 (1963).

Ofc. Davis and Sgt. Kulak lone involvement with Mr. Carr was in their respective roles as members of the SEALE SWAT unit. As members of the SWAT unit, their only function that lead to any nexus of contact with Mr. Carr was to assist the Cleveland Police Department in

executing its search warrant by securing the property in which Mr. Carr was present. Ofc. Davis and Sgt. Kulak had no significant contact with the CPD or MHPD where opportunity to enter into scheme to injure Mr. Carr could have even been commenced. Ofc. Davis and Sgt. Kulak were paged out for the search serve less than twenty-four (24) hours from participating therein and completed their involvement in securing the property in a matter of minutes. Ofc. Davis and Sgt. Kulak primary contact with Mr. Carr was Mr. Carr shooting a firearm in their general direction. Plaintiff's Civil Conspiracy claim fails as a matter of law.

> 2.     Plaintiff's Federal Civil Conspiracy claim fails as a matter of law.

Although Plaintiff does not specify, Carr may be asserting a federal conspiracy claim. To establish a violation of § 1985(3), a plaintiff must allege the defendants conspired together for the purpose of depriving her of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based invidiously discriminatory animus. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). To succeed on this claim, a plaintiff must allege both that the alleged conspiracy was motivated by discriminatory animus against an identifiable protected class such as race or gender, and that the discrimination against the identifiable class was harmful. *Id.* Relative to a 42 U.S.C. § 1985 claim, a plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *Collyer v. Darling*, 78 F.3d 211, 233 (6th Cir. 1996)); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993). Carr does not, and cannot, allege either element. As such, his 42 U.S.C. § 1985 claim fails as a matter of law.

## IV.    CONCLUSION

Based upon the foregoing, there are no genuine issues of material fact and Defendants Officer Steven Davis and Sergeant Keith Kulak are entitled to judgment as a matter of law on all claims. Thus, summary judgment is appropriate and all Counts should be dismissed with prejudice.

Respectfully submitted,

/s/ Thomas G. Lobe
Thomas G. Lobe (0001346)
THOMAS G. LOBE CO., L.P.A.
1300 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113
(440) 725-5410
(216) 664-6999 *fax*
tomlobe@yahoo.com

/s/ Todd D. Cipollo
Todd D. Cipollo, Esq. (0069043)
TODD D. CIPOLLO CO., L.P.A.
1300 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio 44113
(216) 644-7450
(216) 664-6999 *fax*
tcipollo@cipollolaw.com
*Attorney for Defendants Davis and Kulak*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2018 a copy of the foregoing Motion for Summary Judge was served electronically to all parties, including those provided below. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

/s/ Todd D. Cipollo

Todd D. Cipollo, Esq.

# EXHIBIT A

STATE OF OHIO )               COURT OF COMMON PLEAS
                            ) SS:   CRIMINAL DIVISION
COUNTY OF CUYAHOGA )            SEARCH WARRANT

TO:   CHIEF OF POLICE OF THE CLEVELAND POLICE DEPARTMENT
AND/OR DETECTIVE ALFRED JOHNSON, BADGE # 60, A MEMBER
OF SAID DEPARTMENT, AND/OR CHIEF OF POLICE OF MAPLE
HEIGHTS POLICE DEPARTMENT, AND/OR ANY LAW
ENFORCEMENT OFFICERS AS AUTHORIZED.

WHEREAS: Affiant has exhibited probable cause necessary to search the below-

listed premises, curtilage, common storage areas and all persons therein, upon the

incorporated sworn affidavit, attached hereto as Exhibit A, wherein affiant avers that he

has probable cause to believe, and does believe, that on the premises known as 19409

Milan Drive, City of Maple Heights, Cuyahoga County, Ohio, and more particularly

described as a single family residential dwelling, with off-tan siding and white trim,

sitting on the north side of Milan, facing south, the numerals "19409" are posted

horizontal in black numerals which are affixed to the west of the front door, there is now

being unlawfully kept, concealed, and possessed the following:

Criminal Gang materials, firearms and records of illegal transactions,
articles of personal property, papers and documents tending to establish
the identity of persons in control of the premises, any and all evidence of
communications used in the furtherance of criminal gang activity,
including, but not limited to, computers and their contents, computer
disks and their contents, computer accessories and their contents, pagers
and their contents, cellular telephones and their contents, answering
machines and their contents, and answering machine tapes and their
contents, any and all other contraband, including, but not limited to,
money, firearms, and other weapons being illegally possessed therein; all
evidence of proceeds and proceeds from the illegal enterprise, including, but
not limited to bank checks and cancelled checks receipts, bank statements
and records, and all documents relative to funds and deposits such as
certificates of deposit and money market accounts, money drafts, money
orders, cashier's checks, current and cancelled passbooks, credit card
records, safety deposit box records, mortgages, loan documents, and all
general journals, cash receipts journals, cash disbursements journals and
sales journals, and any and all other records evidencing the obtaining,
secreting, transfer and/or concealment of money; any and all evidence,
including but not limited to articles of personal property, paper and
documents, tending to establish the identity of the person(s) in control of
said premises and/or enterprise and/or other co-conspirators; any and all
real estate deeds and documents tending to establish the transfer of real

property; any and all documents tending to establish the existence of a landlord/tenant relationship, commonly referred to as a lease agreement; any and all documents tending to establish a contract between the owner of real property, or a lessee of real property, and any government entity; any and all applications for government assistance; any and all evidence of communications used in the furtherance of said illegal enterprise; and any and all evidence of violation of the criminal gang law, theft laws and criminal tools laws of the State of Ohio, including, but not limited to, Ohio Revised Code Chapter 2923, or other fruits and instrumentalities of crimes at the present time unknown.

I am satisfied that there is probable cause to believe that the property described is being concealed on the above-described premises, its curtilage, common storage areas, and all persons present therein, and that grounds for issuance of this warrant exist.

THEREFORE: You are hereby commanded in the name of the State of Ohio, with the necessary and proper assistance, to serve this warrant and search forthwith within three days of the date hereof for the property specified, making the search in the day and night season. If the named property or any part thereof be found within this premises, you are commanded to seize it, leaving a copy of this warrant and a receipt for the property taken, to prepare a written inventory of the property seized, to return this warrant to the undersigned or any Judge of the Court of Common Pleas, and to bring the property found on such search forthwith before said Judge, or some other judge or magistrate of the county having cognizance thereof.

Given my hand this ____ day of April 2016.

_____
Judge, Court of Common Pleas
Cuyahoga County, Ohio

| | | |
|---|---|---|
| **STATE OHIO** | ) | **COURT OF COMMON PLEAS** |
| | ) | **CRIMINAL DIVISION** |
| **COUNTY OF CUYAHOGA** | ) | |

## AFFIDAVIT FOR SEARCH WARRANT

Before me, a Judge of the Court of Common Pleas, Cuyahoga County, Ohio, personally appeared the undersigned Detective Alfred Johnson, Badge #60, who, being first duly sworn, deposes and states that he is a member of the Cleveland Police Department, Narcotics Unit, and that his training and experience include the following: six years with the Cleveland Police Department; training and experience in the detection, recognition, packaging, and selling of controlled substances and dangerous drugs; and over one hundred (100) arrests of persons connected with violations of the State Drug Laws. Affiant has received training in the investigation of felony and misdemeanor offenses, including but not limited to, criminal gang activity and computer usage as evidence of said crimes, during his basic training and subsequent experience as police officer. Said training includes the following: Regional Gang Investigation on August 19, 2010, Ohio Peace Officer Training Commission: Regional Gang Investigation on January 10, 2011 Ohio Peace Officer Training Commission: Ohio gang investigator Specialist on April 26-28, 2011, Multijurisdictional Counter Drug Task Force: Criminal Street Gangs Introduction/ Gangs: secret codes, signs and symbols on August 25, 2010, Multijurisdictional Counter Drug Task Force: Interviews and Body Language Eye accessing on Aug 26, 2011, Bureau of Justice Assistance: BJA Gangs 101 24 hours on November 10-12, 2010,Ohio

Peace Officer Training Commission: F.B.I. Counterterrorism Awareness Briefing on May 18, 2012, Northeast Counterdrug Training Center: Technologies Against Police and Prosecutors on July 18-19, 2012, Northeast Counterdrug Training Center: Street Gangs Course on August 14-16, 2012, Summit County Gang Task Force Akron Police: Outlaw Motorcycle Gangs; Local Bath Salt Problems and Methamphetamine Labs, Cleveland Police Detective Academy: On June 10-11, 2013.

Affiant avers he has conducted and/or participated in investigations into felony offenses, which were resultant in state prosecutions, including, but not limited to prosecutions of members of the street gangs "8 Ave." and "Lakeshore Boys" and other crimes involving computers and computer usage to access social media websites as evidence of said crimes.

Affiant has good cause to believe, and does believe, that on the premises known as 19409 Milan Drive, City of Maple Heights, Cuyahoga County, Ohio, and more particularly described as a single family residential dwelling, with off tan siding with white trim, sitting on the north side of Milan, facing south, the numerals "19409" are posted horizontal in black numerals which are affixed to the west of the front door, there is now being unlawfully kept, concealed, and possessed the following:

> Criminal Gang materials, firearms and records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of criminal gang activity, including, but not limited to, computers and their contents, computer disks and their contents, computer accessories and their contents, pagers and their contents, cellular telephones and their contents, answering machines and their contents, and answering machine tapes and their contents,

4

any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein; all evidence of proceeds and proceeds from the illegal enterprise, including, but not limited to bank checks and cancelled checks receipts, bank statements and records, and all documents relative to funds and deposits such as certificates of deposit and money market accounts, money drafts, money orders, cashier's checks, current and cancelled passbooks, credit card records, safety deposit box records, mortgages, loan documents, and all general journals, cash receipts journals, cash disbursements journals and sales journals, and any and all other records evidencing the obtaining, secreting, transfer and/or concealment of money; any and all evidence, including but not limited to articles of personal property, paper and documents, tending to establish the identity of the person(s) in control of said premises and/or enterprise and/or other co-conspirators; any and all real estate deeds and documents tending to establish the transfer of real property; any and all documents tending to establish the existence of a landlord/tenant relationship, commonly referred to as a lease agreement; any and all documents tending to establish a contract between the owner of real property, or a lessee of real property, and any government entity; any and all applications for government assistance; any and all evidence of communications used in the furtherance of said illegal enterprise; and any and all evidence of violation of the criminal gang law, theft laws and criminal tools laws of the State of Ohio, including, but not limited to, Ohio Revised Code Chapter 2923, and or other fruits and instrumentalities of crimes at the present time unknown.

The facts upon which affiant bases such beliefs are as follows:

1. Affiant avers he has knowledge of a violent criminal gang known to its members and the community as the "Heartless Felons." Said criminal gang operates in Northeast Ohio, centering in the City of Cleveland but extending to Ashtabula, Ohio, and Canton, Ohio, with members of its organization actively committing crimes in order to obtain money to further the activities of members of the organization.

2. Affiant avers that he has personal investigative knowledge of the existence of the "Heartless Felons" deriving from interviews of confidential informants as well as through a review of law enforcement records of the activities of members of the "Heartless Felons" inside and outside of Ohio penitentiary facilities. Affiant avers said organization is a formal or informal organization of three or more persons with one of its primary activities being the commission of felony offenses, under the common name of "Heartless Felons," known to its members, several of which have tattoos of "H" on one hand and "F" on the other, or "Heartless" tattooed on their body, and members of said organization have individually or

collectively engaged in a pattern of criminal gang activity, as proscribed by R.C. 2923.41 and/or 2923.42. Said organization has rules and regulations known to its members as well as a hierarchy of leadership.

3. Affiant avers that in or around February 2014, members of the Cleveland Police Department, Gang Impact Unit, while monitoring social media for gang threats discovered several post appeared with images of firearms associated with a Facebook account named "milezave_felon8631." Knowing the name is identifying the criminal gang the Heartless Felons with the last portion being the numerical position of "HFCA" in the alphabet, an investigation was opened.

4. Affiant avers that during February 2014, using various databases, affiant was able to identify the individual in the above Instagram account and discovered that the individual was Daryl Patton, Jr. A search of the Cuyahoga County Clerk of Courts records revealed that Patton was under indictment for having weapons under disability, making his possession of a firearm illegal. Affiant was also able to obtain a current address for Patton of 8812 Walker Avenue in the City of Cleveland, Cuyahoga County, Ohio.

5. Affiant avers on February 28, 2014 at 1815 hrs., at 8815 Walker Avenue, Cleveland, members of the Cleveland Gang Impact Unit conducted a consent search of said address with the written consent of Heavin Unique Burns, S.S.N. 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 , girlfriend and roommate of Daryl Patton, Jr.

6. Affiant avers that during the above search, a fully automatic firearm and boots covered in Heartless Felons gang writing were recovered.

7. Affiant avers on March 17, 2014 at 1425 hrs., near the intersection of East 9th Street and Prospect Avenue, Cleveland, Ohio, Det. Robinson and members of the Cleveland Gang Impact Unit arrested Daryl Patton, Jr. with a loaded .38 caliber, 5-shot RG 31 handgun.

8. Affiant avers that on May 29, 2014 at 0916 hrs., officers responded to 6204 Fullerton Avenue, Cleveland, Cuyahoga County, Ohio, for a report of a shooting in the area of Fullerton Ave. After further investigation Randy Ingram, Rakeem Ingram and Emmanuel Martin were arrested in connection with the shooting. A weapon was recovered at the time of the arrests. There were NIBIN (National Integrated Ballistic Information Network) hits connected the recovered weapon to an Officer Involved shooting incident (RMS 14-155755).

9. Affiant avers that on May 19, 2014, at approximately 1249 hrs., at 5614 Fleet in the City of Cleveland, while responding to a report of males shooting, an officer involved shooting occurred. Involved in this incident was Johnathan Lee, a/k/a John Gotti (RMS#2014-143307).

10. Affiant avers On August 1, 2014 at approximately 0215 hrs., a call for a large fight at the Executive Lounge a/k/a Club XL, at 1122 Prospect Avenue in the City of Cleveland, members of the Gang Impact Unit responded and were able to identify Daryl Patton, Jr. walking with other males to a vehicle. Having knowledge that Daryl Patton, Jr. carries weapons and is associated with the Heartless Felons, officers suspected that there would be weapons inside the vehicle. A traffic stop revealed 2 handguns and an additional holster without a firearm. In case number CR-14-588008-A, Da'sjuan Demetrius Scruggs was charged with carrying concealed weapons (2x), improperly handling firearms in a motor vehicle, and tampering with evidence. **Michael Menefield** was also arrested and pled guilty to IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE 2923.16(B), a fourth degree felony, on January 6, 2015, in case CR-14-588008-B.

11. Affiant avers the Michael Menefield served his prison term and was released from prison on September 21, 2015.

12. Affiant avers that Michael Menefield, DOB 11/28/1992, SSN 301943502, listed his address as 19409 Milan Drive, Maple Heights, Cuyahoga County, Ohio 44137.

13. Affiant avers that continued monitoring of social media revealed Michael Menefield having an Instagram account of "_mikey_216" and posting on the same Instagram account, on September 21 2015 15:33:41 hrs., a picture of himself leaving prison in prison attire. On October 22, 2015 15:00:55 hrs., a video of Michael Menefield was posted on the same Instagram account showing the convicted felon firing what appears to be an AK-47.

14. Affiant avers that on November 12, 2015, at approximately 7:15 am, members of the Cleveland Gang Unit and SEALE arrived at 15609 Steinway Avenue, Cleveland, Cuyahoga County, Ohio to execute an arrest warrant for Marvin Linder, who was charged in a one-count secret indictment (CR-15-600962) with Participating in a Criminal Gang. Affiant further avers that Marvin Linder was believed to be the current head of the Heartless Felons sect in Maple Heights, the one of the most violent gangs in the city.

15. Affiant avers that several weapons were recovered during the execution of a subsequent search warrant of 15609 Steinway Avenue, Cuyahoga County, Ohio. One of the weapons seized was an AK-47. Information received through a Confidential Informant (CI) states the AK-47 was obtained from Michael Menefield and that Michael Menefield supplies weapons for members of Maple Hts Heartless Felons.

16. Affiant avers that on Apr 09 2016 13:02:09 hrs on the Instagram account "_mikey_216" a video was posted of Michael Menefield driving a vehicle

with four (4) different handguns in his lap and a handful of folded U.S. currency.

17. Affiant avers that on Apr 09 2016 at 13:37:52 hrs., a video was posted on the Instagram account "_mikey_216" of Michael Menefield shooting a firearm at a gun range.

18. Affiant avers that he has personal investigative knowledge that members of the Heartless Felons consistently promote the activities of the gang through various social media forums including Youtube, Facebook, Twitter and Instragram, all of which can be accessed by and have content uploaded from mobile devices.

19. In the experience of affiant, persons who are criminal gangs frequently keep records of criminal gang activity, including computers and computer files and discs, and evidence of communications used in the furtherance of gang activities, including, but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes. In the experience of affiant, persons who are criminal gang members frequently keep weapons, such as firearms, on or about their person, or within their possession, for use against law enforcement officials, as well as other citizens.

20. Based on these facts, affiant avers that he has probable cause to believe, and does believe, that the above described items will be found within the above-described premises, curtilage, common and storage areas and persons present therein.

21. In the experience of affiant, firearms and criminal gang materials are frequently carried or concealed by people who are present at locations where weapons are used, possessed, kept, or being sold and the size weapons and gang materials can be small, making them easy to conceal on one's person.

22. It is also affiant's experience that criminal gang houses will be occupied by numerous individuals. Some persons will be involved with the criminal gang activity, some with the job of protecting the premises and some the collection of the monies generated from the illegal activity. It is also affiant's experience and training that those who are members of a criminal gang will usually not permit those who are unaware or uninvolved in criminal gang activity within the premise where the activity is conducted. It is therefore necessary to search all persons located in the premises.

23. Affiant avers that it is urgently necessary that the above-described premises be searched in the night season forthwith to prevent the above property from being concealed or removed, and for the safety of the executing officers.

24. In the experience of affiant, individuals involved in illegal gang activities can observe police officers prior to the execution of a daytime search warrant. Affiant avers that individuals involved in illegal gang activities will often carry weapons while in the commission of criminal offenses, and will often use the weapons against police when alerted to their presence. For that reason, affiant avers that execution of the warrant during the night season will assist in the preservation of officer safety.

25. Affiant avers that in his experience, individuals involved in criminal gang activity, when alerted to police presence, can easily destroy evidence prior to the execution of a search warrant. For that reason, affiant avers that execution of the warrant during the night season will aid in avoiding unnecessary destruction of criminal gang evidence.

FURTHER AFFIANT SAYETH NAUGHT.

Alfred Johnson, Detective
Cleveland Police Department
Gang Impact Unit

Sworn to before me and subscribed in my presence this _____ day of April, 2016.

JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

# EXHIBIT B

STATE OF OHIO                :      SS

COUNTY OF CUYAHOGA     :

KEITH KULAK, being duly sworn according to law, hereby deposes and states as follows:

1. Affiant is currently employed by the City of Solon Police Department at a sergeant.

2. Affiant has been a peace officer since 3/1999.

3. Affiant has been employed by the Solon Police Department since 8/9/200.

4. Affiant was promoted to the rank of sergeant on 5/25/2015.

5. Affiant is a member of the Southeast Area Law Enforcement Network's (hereinafter, "SEALE") Special Weapons and Tactics (hereinafter "SWAT") unit.

6. Affiant receives special training as a member of the SEALE SWAT unit including, but not limited to eight hours per month for team practice.

7. The purpose and intent of SEALE SWAT is to serve as a specialized, flexible unit, activated to assist member departments in the containment, de-escalation and ultimate control of all situations beyond the capabilities of a traditional on-duty police officer.

8. Affiant, as a member of the SEALE SWAT unit, routinely serves warrants within the jurisdictions of SEALE member municipalities.

9. Affiant, as a member of the SEALE SWAT unit, was contacted, "paged out", to assist with a high risk search warrant by the Cleveland Police Department's Gang Impact Unit on April 14, 2016.

10. Affiant was a member of the SEALE SWAT unit that assisted the Cleveland Police Department in the execution of its Search Warrant at 19409 Milan Drive, Maple Heights, Ohio ("the Premises ") on April 15, 2016.

11. Affiant did not acted in the capacity of the SWAT Team Commander with regard to the April 15, 2016 Search Warrant.

12. The function of reviewing the April 15, 2016 search warrant is handled by the SEALE Team Commander who served as the liaison between SEALE SWAT unit and the Cleveland Police Department.

13. Affiant was one (1) of eleven (11) members of the SEALE SWAT present the Premises on April 15, 2016, at approximately 7:00 a.m., to assist the CPD in the execution of a Search Warrant.

14. On April 15, 2016, at approximately 7:00 a.m., members of the SEALE SWAT unit knocked (on the front door) of the Premises and announced that they were police officer executing on a warrant.

15. Upon no one from the home answering the door, members of the SEALE SWAT unit breached the front door.

16. Upon the door being breached, Ofc. Davis deployed a Noise and Flash Diversionary Device (NFDD) into the threshold of the home.

17. Affiant, Ofc. Davis, and Officer Dodge were the first members of the SEALE SWAT unit to entered into the home following the NFDD.

18. Affiant heard a gunshot from inside the home immediately upon entering into the home.

19. Affiant and the other members of the SEALE SWAT unit's sole involvement in the execution of any search warrant, and in particular the search warrant identified in ¶10 above, is limited to securing the property and persons present at the location.

20. Once Affiant and the other members of the SEALE SWAT unit secure the property and location identified in the search warrant, the investigating police entity involved completes its search pursuant to the terms of the warrant.

21. Affiant had no involvement in the search of the Premises on April 15, 2016.

22. Affiant had no involvement investigating any crime that occurred at the Premises on April 15, 2016.

23. The Maple Height Police Department, and not Affiant nor the Solon Police Department, investigated and arrested Andrew Carr on April 15, 2016.

24. Affiant did not testify before the Cuyahoga County Grand Jury on Mr. Carr's criminal case.

25. Affiant was never subpoenaed to testify in Carr's criminal case.

26. Affiant was never consulted by the Cuyahoga County Prosecutor's Office during the pendency of Carr's criminal case, nor notified about the criminal case being dismissed without prejudice.

27. Affiant only involvement in Carr's criminal case was being identified as victims in the Indictment.

AFFIANT FURTHER SAYETH NAUGHT.

_____
KEITH KULAK

SWORN TO BEFORE ME and subscribed in my presence on this $\underline{13}$ day of September, 2018.

_____
NOTARY PUBLIC

**MICHELLE DINDA**
**Notary** Public, Cuyahoga County, Ohio
**My Commission** Expires March 25, 2020

# EXHIBIT C

STATE OF OHIO  Stark        :       SS
COUNTY OF CUYAHOGA  MAPD    :

STEVEN DAVIS, being duly sworn according to law, hereby deposes and states as follows:

1. Affiant is currently employed by the City of Solon Police Department at a sergeant.

2. Affiant has been a peace officer since 4/07/2008.

3. Affiant has been employed by the Solon Police Department since 4/07/2008.

4. Affiant is a member of the Southeast Area Law Enforcement Network's (hereinafter, "SEALE") Special Weapons and Tactics (hereinafter "SWAT") unit.

5. Affiant receives special training as a member of the SEALE SWAT unit including, but not limited to: 8 hours per month for team practice and 4 hours per quarter for sniper practice.

6. The purpose and intent of SEALE SWAT is to serve as a specialized, flexible unit, activated to assist member departments in the containment, de-escalation and ultimate control of all situations beyond the capabilities of a traditional on-duty police officer.

7. Affiant, as a member of the SEALE SWAT unit, routinely serves warrants within the jurisdictions of SEALE member municipalities.

8. Affiant, as a member of the SEALE SWAT unit, was contacted, "paged out", to assist with a high risk search warrant by the Cleveland Police Department's Gang Impact Unit on April 14, 2016.

9. Affiant was a member of the SEALE SWAT unit that assisted the Cleveland Police Department in the execution of its Search Warrant at 19409 Milan Drive, Maple Heights, Ohio ("the Premises ") on April 15, 2016.

10. Affiant did not acted in the capacity of the SWAT Team Commander with regard to the April 15, 2016 Search Warrant.

11. The function of reviewing the April 15, 2016 search warrant is handled by the SEALE Team Commander who served as the liaison between SEALE SWAT unit and the Cleveland Police Department.

12. Affiant was one (1) of eleven (11) members of the SEALE SWAT present the Premises on April 15, 2016, at approximately 7:00 a.m., to assist the CPD in the execution of a Search Warrant.

13. On April 15, 2016, at approximately 7:00 a.m., members of the SEALE SWAT unit knocked (on the front door) of the Premises and announced that they were police officer executing on a warrant.

14. Upon no one from the home answering the door, members of the SEALE SWAT unit breached the front door.

15. Upon the door being breached, Affiant deployed a Noise and Flash Diversionary Device (NFDD) into the threshold of the home.

16. Affiant, Sgt. Kulak, and Officer Dodge were the first members of the SEALE SWAT unit to entered into the home following the NFDD.

17. Affiant heard a gunshot from inside the home immediately upon entering into the home.

18. Affiant and the other members of the SEALE SWAT unit's sole involvement in the execution of any search warrant, and in particular the search warrant identified in ¶10 above, is limited to securing the property and persons present at the location.

19. Once Affiant and the other members of the SEALE SWAT unit secure the property and location identified in the search warrant, the investigating police entity involved completes its search pursuant to the terms of the warrant.

20. Affiant had no involvement in the search of the Premises on April 15, 2016.

21. Affiant had no involvement investigating any crime that occurred at the Premises on April 15, 2016.

22. The Maple Height Police Department, and not Affiant nor the Solon Police Department, investigated and arrested Andrew Carr on April 15, 2016.

23. Affiant did not testify before the Cuyahoga County Grand Jury on Mr. Carr's criminal case.

24. Affiant was never subpoenaed to testify in Carr's criminal case.

25. Affiant was never consulted by the Cuyahoga County Prosecutor's Office during the pendency of Carr's criminal case, nor notified about the criminal case being dismissed without prejudice.

26. Affiant only involvement in Carr's criminal case was being identified as victims in the Indictment.

AFFIANT FURTHER SAYETH NAUGHT.

_____
STEVEN DAVIS

SWORN TO BEFORE ME and subscribed in my presence on this 13 day of September, 2018.

2



NOTARY PUBLIC

# EXHIBIT D

**Mallamad, Shawn**

| | |
|---|---|
| **From:** | Johnson, Alfred |
| **Sent:** | Monday, April 11, 2016 1:45 PM |
| **To:** | 'gochocki@prosecutor.cuyahogacounty.us' |
| **Subject:** | search warrant |
| **Attachments:** | 19409 Milan Michael Menefield.docx |

Call back 2163101419 when available

STATE OF OHIO )  CRIMINAL DIVISION
 ) SS:
COUNTY OF CUYAHOGA )  <u>SEARCH WARRANT</u>

TO:  Chief of Police of the Cleveland Police Department and/or Detective Alfred Johnson, Badge # 60, and/or any law enforcement officers as authorized.

WHEREAS: Affiant has exhibited probable cause necessary to search the below-listed premises, curtilage, common storage areas and all persons therein, upon the incorporated sworn affidavit, attached hereto as Exhibit A, wherein affiant avers that he has probable cause to believe, and does believe, that on the premises known as 19409 Milan DR, City of Maple Hts, Cuyahoga County, Ohio, and more particularly described as a single Family residential dwelling, with off tan siding with white trim, sitting on the North side of Milan. facing South, the numerals "19409" are posted horizontal in black numerals which are affixed to the West of the front door, there is now being unlawfully kept, concealed, and possessed the following:

> Criminal Gang materials, firearms and records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of criminal gang activity, including, but not limited to, computers and their contents, computer disks and their contents, computer accessories and their contents, pagers and their contents, cellular telephones and their contents, answering machines and their contents, and answering machine tapes and their contents, any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein; all evidence of proceeds and proceeds from the illegal enterprise, including, but not limited to bank checks and cancelled checks receipts, bank statements and records, and all documents relative to funds and deposits such as certificates of

deposit and money market accounts, money drafts, money orders, cashier's checks, current and cancelled passbooks, credit card records, safety deposit box records, mortgages, loan documents, and all general journals, cash receipts journals, cash disbursements journals and sales journals, and any and all other records evidencing the obtaining, secreting, transfer and/or concealment of money; any and all evidence, including but not limited to articles of personal property, paper and documents, tending to establish the identity of the person(s) in control of said premises and/or enterprise and/or other co-conspirators; any and all real estate deeds and documents tending to establish the transfer of real property; any and all documents tending to establish the existence of a landlord/tenant relationship, commonly referred to as a lease agreement; any and all documents tending to establish a contract between the owner of real property, or a lessee of real property, and any government entity; any and all applications for government assistance; any and all evidence of communications used in the furtherance of said illegal enterprise; and any and all evidence of violation of the criminal gang law, theft laws and criminal tools laws of the State of Ohio, including, but not limited to, Ohio Revised Code Chapters 2923 or other fruits and instrumentalities of crimes at the present time unknown.

I am satisfied that there is probable cause to believe that the property described is being concealed on the above-described premises, its curtilage, common storage areas, and all persons present therein, and that grounds for issuance of this warrant exist.

THEREFORE: You are hereby commanded in the name of the State of Ohio, with the necessary and proper assistance, to serve this warrant and search forthwith within three days of the date hereof for the property specified, making the search in the day and night season. If the named property or any part thereof be found within this premises, you are commanded to seize it, leaving a copy of this warrant and a receipt for the property taken, to prepare a written inventory of the property seized, to return this warrant to the undersigned or any Judge of the Court of Common Pleas, and to bring the property found on such search forthwith before said Judge, or some other judge or magistrate of the county having cognizance thereof.

Given my hand this _____ day of April , 2016.

_____
Judge, Court of Common Pleas
Cuyahoga County, Ohio

COURT OF COMMON PLEAS

STATE OF OHIO  )  CRIMINAL DIVISION
  ) SS:
COUNTY OF CUYAHOGA  )  AFFIDAVIT FOR SEARCH WARRANT

Before me, a Judge of the Court of Common Pleas, Cuyahoga County, Ohio, personally appeared the undersigned Detective Alfred Johnson, Badge #60, who, being first duly sworn, deposes and states that he is a member of the Cleveland Police Department, Narcotics Unit, and that his training and experience include the following: six years with the Cleveland Police Department; training and experience in the detection, recognition, packaging, and selling of controlled substances and dangerous drugs; and over one hundred (100) arrests of persons connected with violations of the State Drug Laws. Affiant has received training in the investigation of felony and misdemeanor offenses, including but not limited to, criminal gang activity and computer usage as evidence of said crimes, during his basic training and subsequent experience as police officer. Said training includes the following: Regional Gang Investigation on August 19, 2010, Ohio Peace Officer Training Commission: Regional Gang Investigation on January 10, 2011 Ohio Peace Officer Training Commission: Ohio gang investigator Specialist on April 26-28, 2011, Multijurisdictional Counter Drug Task Force: Criminal Street Gangs Introduction/ Gangs: secret codes, signs and symbols on August 25, 2010, Multijurisdictional Counter Drug Task Force: Interviews and Body Language Eye accessing on Aug 26, 2011, Bureau of Justice Assistance: BJA Gangs 101 24 hours on November 10-12, 2010,Ohio Peace Officer Training Commission: F.B.I. Counterterrorism Awareness Briefing on May 18, 2012, Northeast Counterdrug Training Center: Technologies Against Police and Prosecutors on July 18-19, 2012, Northeast Counterdrug Training Center: Street Gangs Course on August 14-16, 2012, Summit County Gang Task Force Akron Police: Outlaw Motorcycle Gangs; Local Bath Salt Problems and Methamphetamine Labs, Cleveland Police Detective Academy: On June 10-11, 2013.

Affiant avers he has conducted and/or participated in investigations into felony offenses, which were resultant in state prosecutions, including, but not limited to prosecutions of members of the street gangs "8 Ave." and "Lakeshore Boys" and other crimes involving computers and computer usage to access social media websites as evidence of said crimes.

Affiant has good cause to believe, and does believe, that on the premises known as 19409 Milan DR, City of Maple Hts, Cuyahoga County, Ohio, and more particularly described as a single Family residential dwelling, with off tan siding with white trim, sitting on the North side of Milan. facing South, the numerals "19409" are posted horizontal in black numerals which are affixed to the West of

the front door, there is now being unlawfully kept, concealed, and possessed the following::

Criminal Gang materials, firearms and records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of criminal gang activity, including, but not limited to, computers and their contents, computer disks and their contents, computer accessories and their contents, pagers and their contents, cellular telephones and their contents, answering machines and their contents, and answering machine tapes and their contents, any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein; all evidence of proceeds and proceeds from the illegal enterprise, including, but not limited to bank checks and cancelled checks receipts, bank statements and records, and all documents relative to funds and deposits such as certificates of deposit and money market accounts, money drafts, money orders, cashier's checks, current and cancelled passbooks, credit card records, safety deposit box records, mortgages, loan documents, and all general journals, cash receipts journals, cash disbursements journals and sales journals, and any and all other records evidencing the obtaining, secreting, transfer and/or concealment of money; any and all evidence, including but not limited to articles of personal property, paper and documents, tending to establish the identity of the person(s) in control of said premises and/or enterprise and/or other co-conspirators; any and all real estate deeds and documents tending to establish the transfer of real property; any and all documents tending to establish the existence of a landlord/tenant relationship, commonly referred to as a lease agreement; any and all documents tending to establish a contract between the owner of real property, or a lessee of real property, and any government entity; any and all applications for government assistance; any and all evidence of communications used in the furtherance of said illegal enterprise; and any and all

evidence of violation of the criminal gang law, theft laws and criminal tools laws of the State of Ohio, including, but not limited to, Ohio Revised Code Chapter 2923, and or other fruits and instrumentalities of crimes at the present time unknown.

The facts upon which affiant bases such beliefs are as follows:

1. Affiant avers that there is a violent criminal gang known to its members and the community as the "Heartless Felons." Said criminal gang operates in Northeast Ohio, centering in the City of Cleveland but extending to Ashtabula, Ohio and Canton, Ohio, with members of its organization actively committing crimes in order to obtain money to further the activities of members of the organization.

2. Affiant avers that he has personal investigative knowledge of the existence of the "Heartless Felons" deriving from interviews of confidential informants as well as through reviewing law enforcement records of the activities of members of the "Heartless Felons" inside and outside of Ohio penitentiary facilities. Said organization is a formal or informal organization of three or more persons with one of its primary activities being the commission of felony offenses, under the common name of "Heartless Felons" known to its members several of which have tattoos of "H" on one hand and "F" on the other, or "Heartless" tattooed on their body, and members of said organization have individually or collectively engaged in a pattern of criminal gang activity, as proscribed by R.C. 2923.41, 42. Said organization has rules and regulations known to its members as well as a hierarchy of leadership.

3. Affiant avers that members of the Cleveland Police Department, Gang Impact Unit, while monitoring social media for gang threats several post appeared with images of firearms associated with a Facebook account named "milezave_felon8631". Knowing the name is claiming the criminal gang the heartless felons with the last portion being the numerical position of "HFCA" in the alphabet an investigation was opened.

4. Affiant avers that during February 2014 using various databases, Affiant was able to identify the individual in the above Instagram account and discovered that the individual was Daryl Patton, Jr. A search of the Cuyahoga County clerk of courts revealed that Patton was under indictment for having weapons under disability, making his possession of a firearm illegal. Affiant was also able to obtain a current address of 8812 walker in the City of Cleveland.

5. Affiant avers on February 28, 2014 at 1815 hrs, at 8815 Walker in the City of Cleveland, members of the Cleveland gang impact unit conducted a consent search of said address with the written consent of Heavin Unique Burns 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 , girlfriend and roommate of Daryl Patton, Jr.

6. Affiant avers that during the above search, a fully automatic firearm and boots covered in Heartless Felons gang writing were recovered.

7. Affiant avers on March 17, 2014 at 1425 hrs at East 9th and Prospect, Det. Robinson and members of the Cleveland Gang Impact Unit arrested Daryl Patton, Jr. with a .38 caliber 5 shot RG 31 handgun loaded.

8. Affiant avers that on May 29, 2014 at 0916 hrs at 6204 officers responded to a report of a shooting in the area of Fullerton Ave, City of Cleveland. After further investigation Randy Ingram, Rakeem Ingram and Emmanuel Martin were arrested in connection with the shooting. A weapon was recovered at the time of the arrests. There were NIBIN (National Integrated Ballistic Information Network) hits connected the recovered weapon to an Officer Involved shooting incident 14-155755.

9. Affiant avers that on May 19, 2014 at approximately 1249 hrs at 5614 Fleet in the City of Cleveland, while responding to males shooting, an officer involved shooting occurred. Involved in this incident was Johnathan Lee aka John Gotti. (RMS#2014-143307)

10. Affiant avers On August 1, 2014 at approximately 021 5hrs a call for a large fight at the Executive Lounge aka Club XL of 1122 Prospect in the City of Cleveland, members of the gang impact unit responded and were able to identify Daryl Patton, Jr. walking with other males to a vehicle. Having knowledge that Daryl Patton, Jr. carries weapons and is a part of the Heartless Felons officers suspected that there would be weapons inside the vehicle. A traffic stop revealed 2 handguns and an additional holster without a firearm. In case number CR-14-588008-A, Da'sjuan Demetrius Scruggs was charged with carrying concealed weapons (2x), improperly handling firearms in a motor vehicle, and tampering with evidence. **Michael Menefield** was also arrested and pled guilty to IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE 2923.16 B F4 on January 6, 2015 in case CR-14-588008-B.

11. Affiant avers the Michael Menefield served his prison term and was released September 21, 2015 from prison.

12. Affiant avers that Michael Menefield DOB 11/28/1992, SSN 301943502, listed his address as 19409 Milan, Maple Hts, Ohio 44137.

13. Affiant avers that continued monitoring of social media revealed Michael Menefield having an Instagram account of "_mikey_216" and posting on Sep 21 2015 15:33:41Hrs, a picture of himself leaving prison in prison attire. On Oct 22 2015 15:00:55Hrs, a video of Michael Menefield was posted on the same account showing the convicted felon firing what appears to be an AK-47.

14. Affiant avers that on November 12, 2015, at approximately 7:15am arrived at 15609 Steinway Avenue, Cuyahoga County, Ohio to execute an arrest warrant for Marvin Linder, who is a charged in a one-count secret indictment (CR-15-600962) with Participating in a Criminal Gang. Affiant further avers that Marvin Linder is currently the head of the Heartless Felons sect in Maple Heights, the most violent gang in the city.

15. Affiant avers that several weapons were recovered during a subsequent search warrant of 15609 Steinway Avenue, Cuyahoga County, Ohio. One of the weapons was an AK-47. Information received through a CI states the AK-47 was obtained from Michael Menefield and that Michael Menefield supplies weapons for members of Maple Hts Heartless Felons.

16. Affiant avers that on Apr 09 2016 13:02:09Hrs on the Instagram "_mikey_216" was a video of Michael Menefield driving a vehicle with (4) different handguns in his lap and a handful of folded U.S. currency.

17. Affiant avers that on Apr 09 2016 13:37:52Hrs on the Instagram "_mikey_216" was a video of Michael Menefield shooting a firearm at a gun range, concluding without a doubt that it was a firearm.

18. Affiant avers that there is a violent criminal gang known to its members and the community as the "Heartless Felons." Said criminal gang operates in Northeast Ohio, centering in the City of Cleveland but is extending to Ashtabula, Ohio and Canton, Ohio, with members of its organization actively committing crimes in order to obtain money to further the activities of members of the organization.

19. Affiant avers that he has personal investigative knowledge of the existence of the "Heartless Felons" deriving from interviews of confidential informants as well as through reviewing law enforcement records of the activities of members of the "Heartless Felons" inside and outside of Ohio penitentiary facilities. Said organization is a formal or informal organization of three or more persons with one of its primary activities being the commission of felony offenses, under the common name of "Heartless Felons" known to its members several of which have tattoos of "H" on one hand and "F" on the other, or "Heartless" tattooed on their body, and members of said organization have individually or collectively

engaged in a pattern of criminal gang activity, as proscribed by R.C. 2923.41, 42. Said organization has rules and regulations known to its members as well as a hierarchy of leadership which orders "missions" or assignments to be carried out, including illegal activity such as Aggravated Robberies, Drug Trafficking, and Felonious Assaults.

20. Affiant avers that he has personal investigative knowledge that members of the Heartless Felons consistently promotes the activities of the gang through various social media forums including youtube, facebook, twitter and instragram, all of which can be accessed by and have content uploaded from a mobile device.

21. In the experience of affiant, persons who are criminal gangs frequently keep records of criminal gang activity, including computers and computer files and discs, and evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes. In the experience of affiant, persons who are criminal gang members frequently keep weapons, such as firearms, on or about their person, or within their possession, for use against law enforcement officials, as well as other citizens.

22. Based on these facts, affiant avers that he has probable cause to believe, and does believe, that the above described items will be found within the above-described premises, curtilage, common and storage areas and persons present therein.

23. In the experience of affiant, firearms and criminal gang material are frequently carried or concealed by people who are present at locations where weapons are used, possessed, kept, or being sold and the size weapons can be are small, making them easy to conceal on one's person.

24. It is also affiant's experience that criminal gang houses will be occupied by numerous individuals. Some persons will be involved with the criminal gang activity, some with the job of protecting the premises and some the collection of the monies generated from the illegal activity. It is also affiant's experience and training that those who are members of a criminal gang will usually not permit those who are unaware or uninvolved in criminal gang activity within the premise where the activity is conducted. It is therefore necessary to search all persons located in the premises.

25. Affiant avers that it is urgently necessary that the above-described premises be searched in the night season forthwith to prevent the above property from being concealed or removed, and for the safety of the executing officers.

26. In the experience of affiant, individuals involved in illegal drug transactions can observe police officers prior to the execution of a daytime search warrant. Affiant avers that individuals involved in illegal drug transactions will often carry weapons while in the commission of drug offenses, and will often use the weapons against police when alerted to their presence. For that reason, affiant avers that execution of the warrant during the night season will assist in the preservation of officer safety.

27. Affiant avers that in his experience, individuals involved in criminal gang activity, when alerted to police presence, can easily destroy evidence prior to the execution of a search warrant. For that reason, affiant avers that execution of the warrant during the night season will aid in avoiding unnecessary destruction of criminal gang evidence.


FURTHER AFFIANT SAYETH NAUGHT.


_____
Alfred Johnson, Detective
Cleveland Police Department
Gang Impact Unit


Sworn to before me and subscribed in my presence this _____ day of

April, 2016.


_____
JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

**Johnson, Alfred**

| | |
|---|---|
| **From:** | Ochocki, Gregory <gochocki@prosecutor.cuyahogacounty.us> |
| **Sent:** | Monday, April 11, 2016 4:24 PM |
| **To:** | Johnson, Alfred |
| **Subject:** | RE: search warrant |
| **Attachments:** | Johnson, Alfred_19409 Milan_Michael Menefield.docx |

Detective Johnson —

Attached please find a revised copy of your Search Warrant. Give me a call if you have questions or need anything further.
Thanks for your patience.

Greg Ochocki

Gregory J. Ochocki
Assistant Prosecuting Attorney
Cuyahoga County Prosecutor's Office
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113
(216) 698-4688
Email: gochocki@prosecutor.cuyahogacounty.us

**From:** Johnson, Alfred [mailto:AJohnson4@city.cleveland.oh.us]
**Sent:** Monday, April 11, 2016 1:45 PM
**To:** Ochocki, Gregory
**Subject:** search warrant

Call back 2163101419 when available

| STATE OF OHIO | ) | COURT OF COMMON PLEAS |
| | ) SS: | CRIMINAL DIVISION |
| COUNTY OF CUYAHOGA | ) | SEARCH WARRANT |

**TO: CHIEF OF POLICE OF THE CLEVELAND POLICE DEPARTMENT AND/OR DETECTIVE ALFRED JOHNSON, BADGE # 60, A MEMBER OF SAID DEPARTMENT, AND/OR CHIEF OF POLICE OF MAPLE HEIGHTS POLICE DEPARTMENT, AND/OR ANY LAW ENFORCEMENT OFFICERS AS AUTHORIZED.**

WHEREAS: Affiant has exhibited probable cause necessary to search the below-listed premises, curtilage, common storage areas and all persons therein, upon the incorporated sworn affidavit, attached hereto as Exhibit A, wherein affiant avers that he has probable cause to believe, and does believe, that on the premises known as 19409 Milan Drive, City of Maple Heights, Cuyahoga County, Ohio, and more particularly described as a single family residential dwelling, with off-tan siding and white trim, sitting on the north side of Milan, facing south, the numerals "19409" are posted horizontal in black numerals which are affixed to the west of the front door, there is now being unlawfully kept, concealed, and possessed the following:

> Criminal Gang materials, firearms and records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of criminal gang activity, including, but not limited to, computers and their contents, computer disks and their contents, computer accessories and their contents, pagers and their contents, cellular telephones and their contents, answering machines and their contents, and answering machine tapes and their contents, any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein; all evidence of proceeds and proceeds from the illegal enterprise, including, but not limited to bank checks and cancelled checks receipts, bank statements and records, and all documents relative to funds and deposits such as certificates of deposit and money market accounts, money drafts, money orders, cashier's checks, current and cancelled passbooks, credit card records, safety deposit box records, mortgages, loan documents, and all general journals, cash receipts journals, cash disbursements journals and sales journals, and any and all other records evidencing the obtaining, secreting, transfer and/or concealment of money; any and all evidence, including but not limited to articles of personal property, paper and documents, tending to establish the identity of the person(s) in control of said premises and/or enterprise and/or other co-conspirators; any and all real estate deeds and documents tending to establish the transfer of real

property; any and all documents tending to establish the existence of a landlord/tenant relationship, commonly referred to as a lease agreement; any and all documents tending to establish a contract between the owner of real property, or a lessee of real property, and any government entity; any and all applications for government assistance; any and all evidence of communications used in the furtherance of said illegal enterprise; and any and all evidence of violation of the criminal gang law, theft laws and criminal tools laws of the State of Ohio, including, but not limited to, Ohio Revised Code Chapter 2923, or other fruits and instrumentalities of crimes at the present time unknown.

I am satisfied that there is probable cause to believe that the property described is being concealed on the above-described premises, its curtilage, common storage areas, and all persons present therein, and that grounds for issuance of this warrant exist.

THEREFORE: You are hereby commanded in the name of the State of Ohio, with the necessary and proper assistance, to serve this warrant and search forthwith within three days of the date hereof for the property specified, making the search in the day and night season. If the named property or any part thereof be found within this premises, you are commanded to seize it, leaving a copy of this warrant and a receipt for the property taken, to prepare a written inventory of the property seized, to return this warrant to the undersigned or any Judge of the Court of Common Pleas, and to bring the property found on such search forthwith before said Judge, or some other judge or magistrate of the county having cognizance thereof.

Given my hand this _____ day of April 2016.

_____
Judge, Court of Common Pleas
Cuyahoga County, Ohio

**STATE OHIO** )    **COURT OF COMMON PLEAS**
                             )    **CRIMINAL DIVISION**
**COUNTY OF CUYAHOGA** )

### AFFIDAVIT FOR SEARCH WARRANT

Before me, a Judge of the Court of Common Pleas, Cuyahoga County, Ohio, personally appeared the undersigned Detective Alfred Johnson, Badge #60, who, being first duly sworn, deposes and states that he is a member of the Cleveland Police Department, Narcotics Unit, and that his training and experience include the following: six years with the Cleveland Police Department; training and experience in the detection, recognition, packaging, and selling of controlled substances and dangerous drugs; and over one hundred (100) arrests of persons connected with violations of the State Drug Laws. Affiant has received training in the investigation of felony and misdemeanor offenses, including but not limited to, criminal gang activity and computer usage as evidence of said crimes, during his basic training and subsequent experience as police officer. Said training includes the following: Regional Gang Investigation on August 19, 2010, Ohio Peace Officer Training Commission: Regional Gang Investigation on January 10, 2011 Ohio Peace Officer Training Commission: Ohio gang investigator Specialist on April 26-28, 2011, Multijurisdictional Counter Drug Task Force: Criminal Street Gangs Introduction/ Gangs: secret codes, signs and symbols on August 25, 2010, Multijurisdictional Counter Drug Task Force: Interviews and Body Language Eye accessing on Aug 26, 2011, Bureau of Justice Assistance: BJA Gangs 101 24 hours on November 10-12, 2010,Ohio

Peace Officer Training Commission: F.B.I. Counterterrorism Awareness Briefing on May 18, 2012, Northeast Counterdrug Training Center: Technologies Against Police and Prosecutors on July 18-19, 2012, Northeast Counterdrug Training Center: Street Gangs Course on August 14-16, 2012, Summit County Gang Task Force Akron Police: Outlaw Motorcycle Gangs; Local Bath Salt Problems and Methamphetamine Labs, Cleveland Police Detective Academy: On June 10-11, 2013.

Affiant avers he has conducted and/or participated in investigations into felony offenses, which were resultant in state prosecutions, including, but not limited to prosecutions of members of the street gangs "8 Ave." and "Lakeshore Boys" and other crimes involving computers and computer usage to access social media websites as evidence of said crimes.

Affiant has good cause to believe, and does believe, that on the premises known as 19409 Milan Drive, City of Maple Heights, Cuyahoga County, Ohio, and more particularly described as a single family residential dwelling, with off tan siding with white trim, sitting on the north side of Milan, facing south, the numerals "19409" are posted horizontal in black numerals which are affixed to the west of the front door, there is now being unlawfully kept, concealed, and possessed the following:

> Criminal Gang materials, firearms and records of illegal transactions, articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, any and all evidence of communications used in the furtherance of criminal gang activity, including, but not limited to, computers and their contents, computer disks and their contents, computer accessories and their contents, pagers and their contents, cellular telephones and their contents, answering machines and their contents, and answering machine tapes and their contents,

any and all other contraband, including, but not limited to, money, firearms, and other weapons being illegally possessed therein; all evidence of proceeds and proceeds from the illegal enterprise, including, but not limited to bank checks and cancelled checks receipts, bank statements and records, and all documents relative to funds and deposits such as certificates of deposit and money market accounts, money drafts, money orders, cashier's checks, current and cancelled passbooks, credit card records, safety deposit box records, mortgages, loan documents, and all general journals, cash receipts journals, cash disbursements journals and sales journals, and any and all other records evidencing the obtaining, secreting, transfer and/or concealment of money; any and all evidence, including but not limited to articles of personal property, paper and documents, tending to establish the identity of the person(s) in control of said premises and/or enterprise and/or other co-conspirators; any and all real estate deeds and documents tending to establish the transfer of real property; any and all documents tending to establish the existence of a landlord/tenant relationship, commonly referred to as a lease agreement; any and all documents tending to establish a contract between the owner of real property, or a lessee of real property, and any government entity; any and all applications for government assistance; any and all evidence of communications used in the furtherance of said illegal enterprise; and any and all evidence of violation of the criminal gang law, theft laws and criminal tools laws of the State of Ohio, including, but not limited to, Ohio Revised Code Chapter 2923, and or other fruits and instrumentalities of crimes at the present time unknown.

The facts upon which affiant bases such beliefs are as follows:

1. Affiant avers he has knowledge of a violent criminal gang known to its members and the community as the "Heartless Felons." Said criminal gang operates in Northeast Ohio, centering in the City of Cleveland but extending to Ashtabula, Ohio, and Canton, Ohio, with members of its organization actively committing crimes in order to obtain money to further the activities of members of the organization.

2. Affiant avers that he has personal investigative knowledge of the existence of the "Heartless Felons" deriving from interviews of confidential informants as well as through a review of law enforcement records of the activities of members of the "Heartless Felons" inside and outside of Ohio penitentiary facilities. Affiant avers said organization is a formal or informal organization of three or more persons with one of its primary activities being the commission of felony offenses, under the common name of "Heartless Felons," known to its members, several of which have tattoos of "H" on one hand and "F" on the other, or "Heartless" tattooed on their body, and members of said organization have individually or

5

collectively engaged in a pattern of criminal gang activity, as proscribed by R.C. 2923.41 and/or 2923.42. Said organization has rules and regulations known to its members as well as a hierarchy of leadership.

3. Affiant avers that in or around February 2014, members of the Cleveland Police Department, Gang Impact Unit, while monitoring social media for gang threats discovered several post appeared with images of firearms associated with a Facebook account named "milezave_felon8631." Knowing the name is identifying the criminal gang the Heartless Felons with the last portion being the numerical position of "HFCA" in the alphabet, an investigation was opened.

4. Affiant avers that during February 2014, using various databases, affiant was able to identify the individual in the above Instagram account and discovered that the individual was Daryl Patton, Jr. A search of the Cuyahoga County Clerk of Courts records revealed that Patton was under indictment for having weapons under disability, making his possession of a firearm illegal. Affiant was also able to obtain a current address for Patton of 8812 Walker Avenue in the City of Cleveland, Cuyahoga County, Ohio.

5. Affiant avers on February 28, 2014 at 1815 hrs., at 8815 Walker Avenue, Cleveland, members of the Cleveland Gang Impact Unit conducted a consent search of said address with the written consent of Heavin Unique Burns, S.S.N. 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 , girlfriend and roommate of Daryl Patton, Jr.

6. Affiant avers that during the above search, a fully automatic firearm and boots covered in Heartless Felons gang writing were recovered.

7. Affiant avers on March 17, 2014 at 1425 hrs., near the intersection of East 9th Street and Prospect Avenue, Cleveland, Ohio, Det. Robinson and members of the Cleveland Gang Impact Unit arrested Daryl Patton, Jr. with a loaded .38 caliber, 5-shot RG 31 handgun.

8. Affiant avers that on May 29, 2014 at 0916 hrs., officers responded to 6204 Fullerton Avenue, Cleveland, Cuyahoga County, Ohio, for a report of a shooting in the area of Fullerton Ave. After further investigation Randy Ingram, Rakeem Ingram and Emmanuel Martin were arrested in connection with the shooting. A weapon was recovered at the time of the arrests. There were NIBIN (National Integrated Ballistic Information Network) hits connected the recovered weapon to an Officer Involved shooting incident (RMS 14-155755).

9. Affiant avers that on May 19, 2014, at approximately 1249 hrs., at 5614 Fleet in the City of Cleveland, while responding to a report of males shooting, an officer involved shooting occurred. Involved in this incident was Johnathan Lee, a/k/a John Gotti (RMS#2014-143307).

10. Affiant avers On August 1, 2014 at approximately 0215 hrs., a call for a large fight at the Executive Lounge a/k/a Club XL, at 1122 Prospect Avenue in the City of Cleveland, members of the Gang Impact Unit responded and were able to identify Daryl Patton, Jr. walking with other males to a vehicle. Having knowledge that Daryl Patton, Jr. carries weapons and is associated with the Heartless Felons, officers suspected that there would be weapons inside the vehicle. A traffic stop revealed 2 handguns and an additional holster without a firearm. In case number CR-14-588008-A, Da'sjuan Demetrius Scruggs was charged with carrying concealed weapons (2x), improperly handling firearms in a motor vehicle, and tampering with evidence. **Michael Menefield** was also arrested and pled guilty to IMPROPERLY HANDLING FIREARMS IN A MOTOR VEHICLE 2923.16(B), a fourth degree felony, on January 6, 2015, in case CR-14-588008-B.

11. Affiant avers the Michael Menefield served his prison term and was released from prison on September 21, 2015.

12. Affiant avers that Michael Menefield, DOB 11/28/1992, SSN 301943502, listed his address as 19409 Milan Drive, Maple Heights, Cuyahoga County, Ohio 44137.

13. Affiant avers that continued monitoring of social media revealed Michael Menefield having an Instagram account of "_mikey_216" and posting on the same Instagram account, on September 21 2015 15:33:41 hrs., a picture of himself leaving prison in prison attire. On October 22, 2015 15:00:55 hrs., a video of Michael Menefield was posted on the same Instagram account showing the convicted felon firing what appears to be an AK-47.

14. Affiant avers that on November 12, 2015, at approximately 7:15 am, members of the Cleveland Gang Unit and SEALE arrived at 15609 Steinway Avenue, Cleveland, Cuyahoga County, Ohio to execute an arrest warrant for Marvin Linder, who was charged in a one-count secret indictment (CR-15-600962) with Participating in a Criminal Gang. Affiant further avers that Marvin Linder was believed to be the current head of the Heartless Felons sect in Maple Heights, the one of the most violent gangs in the city.

15. Affiant avers that several weapons were recovered during the execution of a subsequent search warrant of 15609 Steinway Avenue, Cuyahoga County, Ohio. One of the weapons seized was an AK-47. Information received through a Confidential Informant (CI) states the AK-47 was obtained from Michael Menefield and that Michael Menefield supplies weapons for members of Maple Hts Heartless Felons.

16. Affiant avers that on Apr 09 2016 13:02:09 hrs on the Instagram account "_mikey_216" a video was posted of Michael Menefield driving a vehicle

with four (4) different handguns in his lap and a handful of folded U.S. currency.

17. Affiant avers that on Apr 09 2016 at 13:37:52 hrs., a video was posted on the Instagram account "_mikey_216" of Michael Menefield shooting a firearm at a gun range.

18. Affiant avers that he has personal investigative knowledge that members of the Heartless Felons consistently promote the activities of the gang through various social media forums including Youtube, Facebook, Twitter and Instragram, all of which can be accessed by and have content uploaded from mobile devices.

19. In the experience of affiant, persons who are criminal gangs frequently keep records of criminal gang activity, including computers and computer files and discs, and evidence of communications used in the furtherance of gang activities, including, but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes. In the experience of affiant, persons who are criminal gang members frequently keep weapons, such as firearms, on or about their person, or within their possession, for use against law enforcement officials, as well as other citizens.

20. Based on these facts, affiant avers that he has probable cause to believe, and does believe, that the above described items will be found within the above-described premises, curtilage, common and storage areas and persons present therein.

21. In the experience of affiant, firearms and criminal gang materials are frequently carried or concealed by people who are present at locations where weapons are used, possessed, kept, or being sold and the size weapons and gang materials can be small, making them easy to conceal on one's person.

22. It is also affiant's experience that criminal gang houses will be occupied by numerous individuals. Some persons will be involved with the criminal gang activity, some with the job of protecting the premises and some the collection of the monies generated from the illegal activity. It is also affiant's experience and training that those who are members of a criminal gang will usually not permit those who are unaware or uninvolved in criminal gang activity within the premise where the activity is conducted. It is therefore necessary to search all persons located in the premises.

23. Affiant avers that it is urgently necessary that the above-described premises be searched in the night season forthwith to prevent the above property from being concealed or removed, and for the safety of the executing officers.

24. In the experience of affiant, individuals involved in illegal gang activities can observe police officers prior to the execution of a daytime search warrant. Affiant avers that individuals involved in illegal gang activities will often carry weapons while in the commission of criminal offenses, and will often use the weapons against police when alerted to their presence. For that reason, affiant avers that execution of the warrant during the night season will assist in the preservation of officer safety.

25. Affiant avers that in his experience, individuals involved in criminal gang activity, when alerted to police presence, can easily destroy evidence prior to the execution of a search warrant. For that reason, affiant avers that execution of the warrant during the night season will aid in avoiding unnecessary destruction of criminal gang evidence.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Alfred Johnson, Detective
Cleveland Police Department
Gang Impact Unit


Sworn to before me and subscribed in my presence this _____ day of April, 2016.

_____
JUDGE
COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

# EXHIBIT E

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION

 3                      -  -  -

 4   Andrew Carr,              )
                               )
 5             Plaintiff,      )
                               )
 6        vs.                  )  Case No: 1:17-CV-00620
                               )  Judge Nugent
 7   Detective Alfred Johnson, )
     et al.,                   )
 8                             )
               Defendants.     )
 9

10                      -  -  -

11

12        Deposition of Andrew Carr, the plaintiff

13   herein, called by the Defendant Detective Alfred

14   Johnson for cross-examination pursuant to the

15   Federal Rules of Civil Procedure, taken before

16   Constance Versagi, Notary Public in and for the

17   State of Ohio, at Burke Lakefront Airport, 1501

18   Marginal Road, Cleveland, Ohio on Thursday, August

19   23, 2018, commencing at 10:00 a.m.

20                      -  -  -

21

22

23

24

25
```

```
 1   APPEARANCES:

 2   On behalf of the Plaintiff:

 3          Carli R. Citraro, Esq.
            Raemarie C. Rini, Esq.
 4          Patituce & Associates, LLC
            26777 Lorain Road
 5          Suite 1
            North Olmsted, OH  44070
 6          440-471-7784
            Ccitraro@patitucelaw.com

 7

 8

 9   On behalf of the Defendant Det. Alfred Johnson:

10          John P. Bacevice, Esq.
            Janine Cappara, Esq.
11          Assistant Directors of Law
            City of Cleveland
12          Law Department
            601 Lakeside Avenue
13          Room 106
            Cleveland, Ohio  44114
14          216-664-2800
            Jbacevice@city.cleveland.oh.us

15

16

17   On behalf of the Defendants Officers Steven Davis
     and Keith Kulak and City of Solon:
18
            Thomas G. Lobe, Esq.
19          1300 Rockefeller Building
            614 Superior Ave, W
20          Cleveland, Ohio  44113
            440-725-5410
21          Tomlobe@yahoo.com

22

23

24

25
```

```
 1   APPEARANCES:

 2   On behalf of the Defendant Patrolman Ron Dodge:

 3         John Latchney, Esq.
             O'Toole, McLaughlin, Dooley & Pecora
 4         5455 Detroit Road
             Sheffield Village, OH  44504
 5         440-930-4001
             Jlatchney@omdplaw.com

 6

 7

 8   On behalf of the Defendant Southeast Area Law
     Enforcement Network:
 9
             Brian Borla, Esq.
10         Hanna, Campbell & Powell
             3737 Embassy Parkway
11         Suite 100
             Akron, OH  44333
12         330-670-7300
             Bborla@hcplaw.net
13

14

15                         -  -  -

16

17

18

19

20

21

22

23

24

25
```

```
 1   A   Yeah, because I heard get on the ground.  Then
 2       I went upstairs, put it down.  Then I came
 3       back downstairs with my hands up.  I got on
 4       the floor.  That is when I was dragged out.
 5   Q   You said you initially fired because you
 6       believed the house was being broken into?
 7   A   Correct.
 8   Q   You put the weapon down, you seemed to comply.
 9       Is it because you realized these were police?
10   A   I realized it wasn't no ordinary person.
11   Q   You didn't know who it was, but you chose to
12       start to comply with the orders?
13   A   Correct.
14   Q   How long did all of this take?  I imagine it
15       was very quick?
16   A   Yes, it was real quick.
17   Q   Did you just fire one round?
18   A   Yes.
19   Q   Do you know where the round hit?
20   A   At the time I did not know.  After coming
21       home, I seen it was in the front of the door.
22   Q   Where were you aiming?
23   A   Where were I aiming?
24   Q   Um-hum.
25   A   I just aimed and fired, sir.
```

```
 1   Q    You just said you aimed, where did you aim?
 2   A    It was smokey.  I aimed towards the door.
 3   Q    You didn't see a person, it was sort of like
 4        defensive?
 5   A    All I seen was smoke, and I just turned and
 6        fired.
 7   Q    The police car that you were put into, do you
 8        know the jurisdiction, or do you remember what
 9        city?
10   A    Maple Heights.
11   Q    Were you taken to Maple Heights police
12        station?
13   A    Yes.
14   Q    Tell me what happened?
15   A    We went in there and the detective asked me
16        what happened.  I told him.
17   Q    Then you were detained at Maple Heights,
18        correct?
19   A    Correct.
20   Q    How long were you detained at Maple Heights?
21   A    I think until Monday morning.
22   Q    What day of the week did this take place?
23   A    It was whatever day April 15th was.
24   Q    I understand that.  I'm asking you if you
25        remember what day of the week it was.  I know
```

```
 1   A   I'm not sure.

 2   Q   Did any Solon officer ever detain you?

 3   A   I'm not sure.

 4   Q   Did any Solon officer or its representative

 5       fingerprint you?

 6   A   No.

 7   Q   Did any Solon officer or anybody from the City

 8       of Solon transport you from the scene?

 9   A   No.

10   Q   Did any Solon officer, or any Solon

11       representative, interrogate you, if you know?

12   A   I don't think so.

13   Q   Did anybody in Solon ever even read you your

14       rights, if you know, your Miranda warnings, if

15       you know?

16   A   I'm not sure.

17   Q   Did anybody in Solon ever actually physically

18       incarcerate you, or was it done at a different

19       jail, like Maple Heights, or Cleveland, or

20       county?

21   A   Maple Heights.

22   Q   Did anybody in the City of Solon ever issue or

23       order a bond on you, if you know?

24   A   I'm not sure.

25   Q   Again, did anybody in City of Solon or its
```

```
 1                        SIGNATURE PAGE
 2     In Re:        Andrew Carr vs. Detective Alfred Johnson,
 3                   et al.
 4     Case Number: 1:17-CV-00620
 5     Deponent:     Andrew Carr
 6     Date:         August 23, 2018
 7
 8     To the Reporter:
 9          I have read the entire transcript of my
10     Deposition taken in the captioned matter or the same
11     has been read to me.  I request that the following
12     changes be entered upon the record for the reasons
13     indicated.
14          I have signed my name to the Errata Sheet and the
15     appropriate Certificate and authorize you to attach
16     both to the original transcript.
17
18
19                        _____
                          Andrew Carr
20          Subscribed and sworn to before me this
21     _____day of _____, 2018.
22
23
24                        _____
                          Notary Public
25          My commission expires:_____.
```



# FINCUN-MANCINI
The Court Reporters

September 7, 2018

Mr. Andrew Carr
19409 Milan Drive
Maple Heights, Ohio 44137

        In re: **Andrew Carr**
        -v-    **Det. Alfred Johnson, et al.**
        **Case No. 1:17-CV-00620**

Dear Mr. Carr:

    Please be advised that the transcript of your deposition taken on August 23, 2018, in the above-captioned case is ready for your review and signature, pursuant to the Federal Rules of Civil Procedure.

    Our office is open during normal business hours Monday through Friday. Please contact us to arrange the completion of this task.

    The Federal Rules of Civil Procedure state that the transcript must be signed within 30 days, or it may be used without signature. Please advise us as soon as possible if you do not wish to sign your transcript so that we might proceed with further disposition.

    Thank you for your courtesies.

            Very truly yours,

            Fincun-Mancini Court Reporters

cc:   John Bacevice, Esq.      Carli Citraro, Esq.
      Thomas Lobe, Esq.       John Latchney, Esq.
      Brian Borla, Esq.

# EXHIBIT F

# Cuyahoga County Court of Common Pleas
## Criminal Court Division

| State of Ohio, | | A True Bill Indictment For |
|---|---|---|
| | Plaintiff | **Felonious Assault - F1** §2903.11(A)(2) |
| vs. Andrew J. Carr, | | |
| | Defendant | 2 Additional Count(s) |

| Dates of Offense (on or about) | The Term Of | | Case Number |
|---|---|---|---|
| April 15, 2016 | May of 2016 | | 605515-16-CR |

The State of Ohio, } SS.
Cuyahoga County

CR16605515-A    94057859

| **Count One** | Felonious Assault - F1 §2903.11(A)(2) |
|---|---|
| **Defendants** | Andrew J. Carr |
| **Date of Offense** | On or about April 15, 2016 |

*The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, do find and present, that the above named Defendant(s), on or about the date of the offense set forth above, in the County of Cuyahoga, unlawfully*

did knowingly cause or attempt to cause physical harm to P.O. Steven Davis by means of a deadly weapon or dangerous ordnance, to wit: firearm and/or handgun,.

FURTHERMORE, the victim is a peace officer.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

RECEIVED FOR FILING

MAY 0 9 2016

CUYAHOGA COUNTY CLERK OF
THE COURT OF COMMON PLEAS
By_____ Deputy

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

Page 1 of 3

| | |
|---|---|
| **Count Two** | **Felonious Assault - F1**<br>§2903.11(A)(2) |
| **Defendants** | Andrew J. Carr |
| **Date of Offense** | On or about April 15, 2016 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did knowingly cause or attempt to cause physical harm to P.O. Keith Kulak by means of a deadly weapon or dangerous ordnance, to wit: firearm and/or handgun,.

FURTHERMORE, the victim is a peace officer.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

| **Count Three** | **Felonious Assault - F1** |
|---|---|
| | §2903.11(A)(2) |
| **Defendants** | Andrew J. Carr |
| **Date of Offense** | On or about April 15, 2016 |

*The grand jurors, on their oaths, further find that the Defendant(s) unlawfully*

did knowingly cause or attempt to cause physical harm to P.O. Ronald Dodge by means of a deadly weapon or dangerous ordnance, to wit: firearm and/or handgun,.

FURTHERMORE, the victim is a peace officer.

### Firearm Specification - 1 year - §2941.141(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense.

### Firearm Specification - 3 year - §2941.145(A)

*The Grand Jurors further find and specify that*

the offender had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

*The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.*

_____
Foreperson of the Grand Jury

_____
Prosecuting Attorney

# EXHIBIT G

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF OHIO
 2                       EASTERN DIVISION

 3                         -  -  -

 4   Andrew Carr,              )
                              )
 5              Plaintiff,     )
                              )
 6        vs.                  )   Case No: 1:17-CV-00620
                              )   Judge Nugent
 7   Detective Alfred Johnson, )
     et al.,                   )
 8                            )
               Defendants.     )
 9

10                         -  -  -

11

12        Deposition of Derrick Carr, a witness herein,

13   called by the Defendant Detective Alfred Johnson for

14   cross-examination pursuant to the Federal Rules of

15   Civil Procedure, taken before Constance Versagi,

16   Notary Public in and for the State of Ohio, at Burke

17   Lakefront Airport, 1501 Marginal Road, Cleveland,

18   Ohio on Thursday, August 23, 2018, commencing at

19   12:03 p.m.

20                         -  -  -

21

22

23

24

25
```

```
 1  APPEARANCES:

 2  On behalf of the Plaintiff:

 3          Carli R. Citraro, Esq.
            Raemarie C. Rini, Esq.
 4          Patituce & Associates, LLC
            26777 Lorain Road
 5          Suite 1
            North Olmsted, OH  44070
 6          440-471-7784
            Ccitraro@patitucelaw.com
 7

 8

 9  On behalf of the Defendant Det. Alfred Johnson:

10          John P. Bacevice, Esq.
            Janine Cappara, Esq.
11          Assistant Directors of Law
            City of Cleveland
12          Law Department
            601 Lakeside Avenue
13          Room 106
            Cleveland, Ohio  44114
14          216-664-2800
            Jbacevice@city.cleveland.oh.us
15

16

17  On behalf of the Defendants Officers Steven Davis
    and Keith Kulak and City of Solon:
18
            Thomas G. Lobe, Esq.
19          1300 Rockefeller Building
            614 Superior Ave, W
20          Cleveland, Ohio  44113
            440-725-5410
21          Tomlobe@yahoo.com

22

23

24

25
```

```
1    APPEARANCES:

2    On behalf of the Defendant Patrolman Ron Dodge:

3         John Latchney, Esq.
          O'Toole, McLaughlin, Dooley & Pecora
4         5455 Detroit Road
          Sheffield Village, OH  44504
5         440-930-4001
          Jlatchney@omdplaw.com
6

7

8    On behalf of the Defendant Southeast Area Law
     Enforcement Network:
9
          Brian Borla, Esq.
10        Hanna, Campbell & Powell
          3737 Embassy Parkway
11        Suite 100
          Akron, OH  44333
12        330-670-7300
          Bborla@hcplaw.net
13

14

15                      - - -

16

17

18

19

20

21

22

23

24

25
```

1          At 20 to 7:00 I heard my front door

2    open.  So I went to the front door.  I looked

3    out.  Andrew was going up the street.  I

4    didn't call him.  He drove off.  I didn't call

5    out where he was going or anything.

6          I looked up the street he was going up.

7    I looked up to the west, there was a red truck

8    parked on the side of the street in front of

9    317.  At that point in time that was the only

10   vehicle on the street.

11         Because he went to the store, I went

12   back inside.  Started finish preparing myself

13   and stuff.  I heard him, I was in the kitchen

14   with the pipes running when he came back at I

15   would say 6:55.  He came back inside the

16   house.  He had a Red Bull in his hand.  He

17   walked upstairs to his room.  He went to the

18   convenient store, came back in, walked up the

19   steps.

20         At approximately two minutes after

21   there was -- my window was like to the left of

22   the kitchen window.  There was no window

23   curtains there.  I felt as if someone was

24   looking at me.  I turned around, I saw two men

25   running past my window.

My Desert Eagle .45 I obviously put it
at night right by my pillow. But I saw two
men run past my window. I didn't make out who
they were, anything. I wasn't going to go
outside to find out. I know I wasn't going
outside so I did not go back in the bedroom,
and take up the firearm.

I went to the front window, pulled the
curtains. I looked out. There were three men
standing on the steps. There was an older
gentleman standing at the bottom of the steps.
He was the person who saw me when I looked out
the window. He turned his firearm in my
direction.

At that point in time, when he turned
the firearm in my direction, my initial
thought was he's going to shoot me. I
proceeded to try and get on the floor. I
dived to my left.

Before I hit the floor, I heard
multiple gunshots going off. I started
hollering don't shoot, don't shoot.

Immediately as I hit the floor, someone
was standing in my back. There was a gun
resting against my lips. Looked like an M-16

```
 1          Andrew went out to Eastlake, because one of
 2          the officers took his CCW license from him.
 3          When he went out to Eastlake to have his CCW
 4          license renewed because it was at the house,
 5          it wasn't returned to him.  That's in
 6          September when he got out.  When he went to
 7          Eastlake, to the Sheriff's Department, they
 8          told him that they were not aware that his
 9          license had been suspended.  They would need
10          to do some checks and have it returned to him.
11               Probably a week later, he got a letter
12          from the Sheriff's Department, saying that his
13          gun license was suspended as of sometime in
14          October or something like that.
15   Q      The Lake County Sheriff?
16   A      Yes.
17   Q      The people you saw outside, the officers, how
18          were they dressed?
19   A      They were in camouflage.  If I was given an
20          opportunity to open the door, I would have.
21          Once that person turned the firearm on me, I
22          am about to be shot, I dive on the floor.  As
23          soon as I hit the floor, someone was standing
24          on my neck.
25   Q      Your testimony is that the clothing they were
```

| | | |
|---|---|---|
| 1 | | wearing did not say police on it? |
| 2 | A | Sir, I saw camouflage.  I wasn't standing |
| 3 | | there long enough to fully identify if it said |
| 4 | | police or not.  I recognized them to be police |
| 5 | | officers, but I was not given an opportunity |
| 6 | | to move from my front window, to open my door. |
| 7 | Q | I appreciate that.  In that first moment you |
| 8 | | did not have the opportunity.  You just |
| 9 | | reacted quickly? |
| 10 | A | Yes. |
| 11 | Q | I get that.  It was a while.  There were times |
| 12 | | you were outside speaking with them? |
| 13 | A | No, I recognized them as police officers. |
| 14 | Q | Eventually you did see they had police -- |
| 15 | A | Once they were standing on my neck, I realized |
| 16 | | that they were police officers.  The flash |
| 17 | | bang grenade was already going off.  There was |
| 18 | | smoke all over the house.  I was the only |
| 19 | | person downstairs at that time. |
| 20 | Q | Were you handcuffed? |
| 21 | A | Yes, I was. |
| 22 | Q | You were never charged with any crime? |
| 23 | A | No. |
| 24 | Q | You were released. |
| 25 | | You testified earlier that you retired |

```
 1                    SIGNATURE PAGE
 2    In Re:        Andrew Carr vs. Detective Alfred
 3                  Johnson, et al.
 4    Case Number: 1:17-CV-00620
 5    Deponent:     Derrick Carr
 6    Date:         August 23, 2018
 7
 8    To the Reporter:
 9         I have read the entire transcript of my
10    Deposition taken in the captioned matter or the same
11    has been read to me.  I request that the following
12    changes be entered upon the record for the reasons
13    indicated.
14         I have signed my name to the Errata Sheet and
15    the appropriate Certificate and authorize you to
16    attach both to the original transcript.
17
18
19                  _____
                    Andrew Carr
20         Subscribed and sworn to before me this
21    _____ day of _____, 2018.
22
23                  _____
                    Notary Public
24
25    My commission expires:_____.
```



# FINCUN-MANCINI
### The Court Reporters

September 5, 2018

Mr. Derrick Carr
19409 Milan Drive
Maple Heights, Ohio 44137

**In re: Andrew Carr**
**-v-    Det. Alfred Johnson, et al.**
**Case No. 1:17-CV-00620**

Dear Mr. Carr:

  Please be advised that the transcript of your deposition taken on August 23, 2018, in the above-captioned case is ready for your review and signature, pursuant to the Federal Rules of Civil Procedure.

  Our office is open during normal business hours Monday through Friday. Please contact us to arrange the completion of this task.

  The Federal Rules of Civil Procedure state that the transcript must be signed within 30 days, or it may be used without signature. Please advise us as soon as possible if you do not wish to sign your transcript so that we might proceed with further disposition.

  Thank you for your courtesies.

Very truly yours,

Fincun-Mancini Court Reporters

cc: John Bacevice, Esq.   Carli Citraro, Esq.
   Thomas Lobe, Esq.    John Latchney, Esq.
   Brian Borla, Esq.