# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **ANDREW CARR.** | ) **CASE NO. 1:17-CV-620** |
| | ) |
| **Plaintiff,** | ) **JUDGE DONALD C. NUGENT** |
| | ) |
| **v.** | ) <u>**DEFENDANT ALFRED JOHNSON'S**</u> |
| | ) <u>**MOTION FOR SUMMARY**</u> |
| **ALFRED JOHNSON**, *et al.*, | ) <u>**JUDGMENT AND DEFENDANTS**</u> |
| | ) <u>**ALFRED JOHNSON, THE CITY OF**</u> |
| **Defendants.** | ) <u>**CLEVELAND AND CLEVELAND**</u> |
| | ) <u>**POLICE DEPARTMENT'S MOTION**</u> |
| | ) <u>**FOR SUMMARY JUDGMENT ON**</u> |
| | ) <u>**THE REMAINING SOLON POLICE**</u> |
| | ) <u>**DEFENDANTS' CROSS CLAIMS**</u> |

Defendant Alfred Johnson respectfully moves this Honorable Court for summary judgment on all of Plaintiff's claims. As explained in the attached Memorandum in Support, Plaintiff cannot advance any claim beyond the summary judgment stage; and the facts presented in this matter do not provide a basis to prove a single alleged violation of federal or state law. In addition, Johnson is entitled to qualified and state law immunity from Plaintiff's claims. Defendants Alfred Johnson, the City of Cleveland and Cleveland Police Department further move for summary judgment on the remaining Solon Police Officers' Cross Claims because the remaining Solon Police Officers' Cross Claims are derivative of Plaintiff's Complaint and therefore must suffer the same fate as Plaintiff's claims. A memorandum of law in support of this motion is attached hereto and incorporated fully herein.

Respectfully submitted,

BARBARA A. LANGHENRY (0038838)
Director of Law

<u>/s John P. Bacevice Jr.</u>
JOHN P. BACEVICE JR. (0087306)
Assistant Director of Law

ELENA N. BOOP (0072907)
Chief Assistant Director of Law
Department of Law, Cleveland City Hall
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Telephone No.:  (216) 664-2800
Facsimile No.:   (216) 664-2663
jbacevice@city.cleveland.oh.us
eboop@city.cleveland.oh.us
*Counsel for Defendant Alfred Johnson*


/s/ Janeane R. Cappara
JANEANE R. CAPPARA (0072031)
Assistant Director of Law
Department of Law, Cleveland City Hall
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Telephone No.:  (216) 664-2800
Facsimile No.:   (216) 664-2663
jcappara@city.cleveland.oh.us

*One of the Attorneys for Cross Claim Defendant
City of Cleveland and Cleveland Police Department*

**PAGE**

TABLE OF AUTHORITIES.................................................................................................iv

MEMORANDUM IN SUPPORT.........................................................................................1

I.     STATEMENT OF THE CASE..................................................................í í 1

II.    STATEMENT OF THE FACTSí í í í í í ...........................................1

III.   LAW AND ARGUMENTí í í í í í .........................................................4

      A.    Standard for Motions For Summary Judgment .....................................4

      B.    Detective Johnson is entitled to summary judgment because the warrant
           was supported by probable cause and, thus, Plaintiff cannot demonstrate
           the existence of a constitutional violationí í í í í í í í í í í í í ..í .5

      C.    Even if this court finds the warrant was not supported by probable cause,
           Detective Johnson is entitled to qualified immunity because detective
           Johnsonøs reliance on the warrant was objectively reasonable; and there
           is no evidence of a *Franks* violationí í í í í í í í í í í í í í í ....9

           i.     Detective Johnsonøs reliance on the warrant, found to be
                 Sufficient by a county prosecutor and a state court judge,
                 was objectively reasonableí í í í í í í í í í í í í í í í ........9

           ii.    There is no evidence that Detective Johnson made false
                 statements or intentionally withheld information
                 material to the determination of probable cause
                 constituting a *Franks* violationí í í í í í í í í í í í í í í ..13

      D.    Johnson is immune from liability for all of Plaintifføs asserted state
           claims pursuant to O.R.C. 2744(A)(6)í í í í í í í í í í í í í ..í ...16

      E.    The Cross Claims must also fail as a matter of lawí í í í í í í í í .....17

IV.   CONCLUSIONí í í í í í í í í í í í í í í í í í í í í í í í í í .í í 20

**Cases**                                                             **Page**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) í í í í í í í í í .......................5

*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)í í í í ..í ..í í .14,15

*Brown v. Illinois,* 422 U.S. 610, 95 S.Ct. 2265 (1975)í í í í í í í í í í í í í .í .10

*Burchett v. Kiefer,* 310 F.3d 937 (6th Cir. 2002)............................................................................4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) í í í í í í í í í í í .í í í .. ............4,5

*City of Los Angeles v. Heller,* 475 U.S. 796 (1996)í í í í í í í í í í í í í í í .í í ..17

*Donta v. Hooper,* 774 F.2d 716 (6th Cir. 1985)í í í í í í í í í í í í í í í í .........14

*Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351........................................16

*Fisk v. Dayton Police Department*, 2016 WL 3458215 (S.D. Ohio 2016)í í í í í í í ..í ..18

*Fox v. DiSoto*, 489 F.3d 227 (6th Cir. 2007)í í í í í í í í í í í í í í .í . .................9

*Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)í í 5,9,10,13,14,15,16

*Greene v. Reeves,* 80 F.3d 1101 (6th Cir. 1996)í í í í í í í í í í í í ...í í í í í í 7

*Hale v. Kart,* 396 F.3d 721 (6th Cir. 2005)...............................................................................6,16

*Heck v. Humphrey,* 512 U.S. 477 (1994)....................................................................................6

*Herring v. U.S.,* 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009)í í í í í í ...í í ....13

*Hill v. Alliance Police Department*, 2017 WL 89346 (N.D. Ohio 2017)í í í í í í í í ..18

*Hopson v. Daimler Chrysler Corp.,* 306 F.3d 427 (6th Cir. 2002)í í í í í í í í ..................4

*Jones v. City of Cincinnati,* 521 F.3d 555 (6th Cir. 2008)í í í í í í í í í í í í í í ..17

*Leavell v. City of Sandusky,* 2016 WL 5076083 (N.D. Ohio 2016)í í í í í í í í .í í í .18

*Lo-Ji Sales, Inc. v. New York*, 422 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)í í í ..í .10

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)í í í í í í .í ...10,12

*Mays v. City of Dayton,* 134 F.3d 809 (6th Cir. 1998)í í í í í í í ...í í í í .7,8,14,15

*Messerschmidt v. Millender,* 565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012)í í ..10,11

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)í í í í ....................................................................9

*Motorists Mut. Ins. Co. v. Huron Rd. Hosp. (1995)*, 73 Ohio St.3d 391, 653 N.E.2d 235.í ..í .19

*Pearson v. Callahan*, 555 U.S. 223 (2009)í í í í í í í í í í í í í í í í .í .í í 9

*Petty v. County of Franklin*, Ohio, 2007 WL 487003 (6th Cir. 2007)í í í í í í í í í 18

*Saucier v. Katz*, 533 U.S. 194 (2001)í í í í í í í í í í í í í ..................................9

*Schuler v. Village of Newcomerstown*, 2017 WL 1199170 (N.D. Ohio 2017)í í í .í í í .18

*Spencer v. Sutterfield,* 66 Fed.Appx. 569 (6th Cir. 2003)í í ..í í í í í í í í í í í 15

*Stewart v. Neil,* 2017 WL 1230468 (S.D. Ohio 2017)í í í í í í í í .í í í í í .í .18

*Travelers Indemn. Co. v. Trowbridge,* 41 Ohio St.2d 11, 321 N.E.2d 787 (1975)í í í í ...19

*U.S. v. Atkin,* 107 F.3d 1213 (6th Cir. 1997)í í í í í í í í í í í í í í í .15,16

*U.S. v. Bonds,* 12 F.3d 540 (6th Cir. 1993)í í í í í í í í í í í í í í í í í í í .15

*U.S. v. Eisner*, 297 F.2d 595 (6th Cir. 1962)í í í í í í í í í í í í í í ...í í .8

*U.S. v. Goff*, 6 F.3d 363 (6th Cir. 1993)í í í í í í í í í í í í í í í í í í í í 7

*U.S. v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)í í í í í í í ....í .9,10

*U.S. v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)í í í .í í ..í í í í .15

*Yancey v. Carroll County*, 876 F.2d 1238 (6th Cir. 1989)í í í í í í í í í í í í í .14

*Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)í í í í í ..8

**Rules and Statutes**

Fourteenth Amendmentí í í í í í í í í í í í í í .í í ..í í í í í ..í ..í í í 8

Fourth Amendmentí í í í í í í í í í í í í í í í í í í í í í í .8,9,10,14

42 U.S.C. § 1983 í í í í í í í í í í í í í í í í í í í í í í .................5,10,14

Fed. R. Civ. P. 56(e)..........................................................................................................5

Ohio Revised Code Chapter 2744í í í í í í í í í í í í ........................í í í í í .16

Ohio Revised Code § 2744(A)(6) í í í í í í í í í í í í í í í .í í í ......................16

Ohio Revised Code § 2744.03(A)(6) í í í í í í í í í í í í í í í .í í í ..................16

Ohio Revised Code § 2744.03(A)(6)(a)-(c) ............................................................16

**MEMORANDUM IN SUPPORT**

## I.     STATEMENT OF THE CASE

Plaintiff filed this action on March 24, 2017 naming a number of Defendants including Detective Alfred Johnson[1], the City of Cleveland and Cleveland Police Department. Plaintiff asserts a "civil rights violation" that apparently is a claim of unreasonable search and seizure, failure to train against the City, civil conspiracy, false arrest/imprisonment, malicious prosecution in violation of state law, and violation of Plaintiff's right to be free from unreasonable search and seizure.

The City of Cleveland, Cleveland Police Department, Solon Police Department and the City of Garfield Heights each filed a Motion to Dismiss Plaintiff's Complaint that was granted by this Court on July 3, 2017. (ECF # 38, 39, and 40). The City and Cleveland Police Department remain defendants by way of the Cross Claim filed by Defendants Solon Police Officer Steven Davis and Solon Sergeant Keith E. Kulak.[2]

The parties conducted discovery; and Defendant Alfred Johnson and Cross Claim Defendants City of Cleveland and Cleveland Police Department now file this motion for summary judgment as a matter of law.

## II.     STATEMENT OF FACTS

Michael Menefield was arrested in 2014 for improperly handling firearms in a motor vehicle while in the company of Daryl Patton Jr. and Deshawn Scruggs. (Exhibit A, Hearing Testimony of Alfred Johnson at 31:19 – 32:13.) Daryl Patton Jr. was under investigation by the Cleveland Police Gang Unit as a potential member of the street gang known as the Heartless Felons. (Ex. A at 28:24 – 29:17.) Following Menefield's arrest in the company of Patton Jr., the

---

[1] Detective Johnson has since been promoted to the rank of Sergeant, but he will be referred to as Detective Johnson for the sake of consistency.
[2] The Solon Police Department is no longer a party because it was dismissed.

Gang Unit also began to investigate Menefield as a potential member of the Heartless Felons. (Ex. A at 28:20 – 29:17; Exhibit B, Declaration of Alfred Johnson at ¶ 3.) Detective Alfred Johnson has been assigned to the Cleveland Police Gang Impact Unit since 2013 and has significant training and experience investigating gang members and gang related criminal activity. (Ex. A at 24:10 – 25:13; Ex. B at ¶ 2.)

Michael Menefield pled guilty to the 2014 crime in early 2015 and was sentenced to prison. (Ex. A at 32:17 – 33:1.) Following Menefield's release from prison, the Gang Impact Unit investigated Menefield as a possible Heartless Felon, which included monitoring his social media accounts. (Ex. A at 34:2-11; Ex. B at ¶ 4-7.) A confidential informant told Detective Johnson that Menefield was trafficking in guns with the Heartless Felons and continued to live at 19409 Milan Drive. (Ex A at 35: 6-24; Ex. B at ¶ 5-7.) Detective Johnson saw two social media posts showing Menefield in possession of weapons, tending to corroborate the confidential informant's allegations. (Ex. A at 34:2-11 and 36:23 – 37:25; Ex. B. at ¶ 7.) Detective Johnson then ran Michael Menefield's name through Distributive Factual Analysis Criminal Threat Solutions database (DFACTS) which reviews all public records related to a person and gives information including but not limited to addresses associated with electric bills, phone bills, Ohio Adult Parole Authority, as well as associated phone numbers, names of neighbors and relatives, and effective dates of address used including what address or addresses are considered current. (Ex. A at 38:5 – 39:1; Ex. B at ¶ 7.) Detective Johnson also checked Menefield's current address with Ohio Law Enforcement Gateway (OLEG), Law Enforcement Automated Data System (LEADS), the Ohio Department of Rehabilitation and Corrections (ODRC), and the Bureau of Motor Vehicles (BMV). (Ex. B at ¶ 7.) All of these sources listed Menefield's current address as 19409 Milan Drive, Maple Heights, Ohio. (Ex. A at 38:5 – 39:1; Ex. B at ¶ 7.) Michael

Menefield's mother, Sharon Taylor-Carr, confirmed in a subsequent deposition that Menefield still received mail at 19409 Milan at the time of Plaintiff's arrest and that Menefield used the 19409 Milan address with his bank account, vehicle registration, and driver's license. (Exhibit E, Deposition of Sharon Taylor-Carr at 29:14 – 30:20.)

Detective Johnson then surveilled 19409 Milan, but did not observe Menefield. (Ex. B at ¶ 8.) Detective Johnson then drafted a search warrant and an accompanying affidavit for criminal gang material, weapons and other criminal tools at 19409 Milan Drive in Maple Heights, Ohio. (Ex. B at ¶ 9.) Detective Johnson then sent the drafts to Assistant Cuyahoga County Prosecutor Greg Ochocki for review. (Ex. B at ¶ 10.) It is common practice for prosecutors to review affidavits in Cuyahoga County. (Exhibit C, Deposition of Judge Michael Astrab at 11:6-10.) Detective Johnson incorporated Assistant Prosecutor Ochocki's suggested revision and brought the documents to the Cuyahoga County Common Pleas Court for judicial review and approval. (Ex. B at ¶ 10.)

When bringing the documents to Cuyahoga Common Pleas Court, it was Detective Johnson's intention to present the documents to the first Common Pleas Judge he encountered. (Ex. B at ¶ 11.) Detective Johnson came across Judge Michael Astrab. (Ex. B at ¶ 11.) While Judge Astrab does not recall the specifics of this warrant, it was his practice to review warrants in person and he never did a telephonic search warrant. (Ex. C at 13:12-23 and 30:21-25.) Judge Astrab was impartial in his review and did not allow any history with the Heartless Felons or Detective Johnson impact his decision. (Ex. C at 19:19 – 20:24; 24:18-23; and 46:11-17.) Judge Astrab found probable cause and signed the search warrant. (Ex. B at ¶ 12; Ex. C at 16:4-8; 16:22 – 17:3; 17:4-7; 28:14-17; 42:1-2; 42:10-11; 42:16-17; 43:2-4; and 43:12-13; Exhibit D, Search Warrant for 19409 Milan Drive, Maple Heights, Ohio.)

Prior to executing the search warrant Detective Johnson again surveilled 19409 Milan Drive and observed a male matching the appearance of Michael Menefield, although due to the covert nature of surveillance he was not able to get a close enough look to confirm with certainty it was in fact Menefield. (Ex. A at 48:11-2; 49:19-25; 52:17 ó 53:23; Ex. B at ¶ 13.) On April 15, 2016 the search warrant was executed by police officers from departments other than Cleveland. Although Detective Johnson was at the scene, he did not execute the warrant, nor did he arrest Plaintiff Carr. Plaintiff Carr was arrested because he fired a single round at the other officers lawfully executing a search warrant. Criminal gang tools, multiple firearms as well as mail addressed to Michael Menefield were seized as a result of the search and are still in the custody of the Cleveland Division of Police Property Unit. (Ex. B at ¶ 14.) While the criminal proceedings against Plaintiff were ultimately dismissed without prejudice at the Stateøs election, the search warrant was never invalidated by the trial court judge and it stands as valid today. (Exhibit F, Certified Copies of Court Docket and Final Judgment Entry Dismissing the Case Without Prejudice.)

## III.   LAW AND ARGUMENT

### A.   <u>Standard for Motions for Summary Judgment</u>

A court must grant summary judgment where there remain no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the party opposing the motion, that conclusion is adverse to the non-moving party. *Burchett v. Kiefer*, 310 F.3d 937, 941 (6th Cir. 2002); *Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002). Summary judgment õis properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole.ö *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The materiality of a fact is determined by reference to substantive law. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby*, 477 U.S 242, 248 (1986).

Even assuming all disputed facts in Plaintiff Carr's favor, Detective Johnson cannot be held liable as a matter of law. The facts in the record do not provide a basis to maintain a single alleged violation of federal or state law by Johnson. The warrant challenged by Plaintiff was supported by probable cause as a matter of law; thus, Plaintiff cannot demonstrate a constitutional violation. Even if this court were to find that the warrant was not supported by probable cause, Detective Johnson is entitled to qualified immunity because Detective Johnson's reliance on the validity of the warrant signed by the judge was objectively reasonable and there is no evidence of a *Franks* violation.[3] Additionally, Johnson is entitled to statutory immunity under the Ohio Revised Code as to all state claims.

**B. <u>Detective Johnson is entitled to summary judgment because the warrant was supported by probable cause and, thus, Plaintiff cannot demonstrate the existence of a constitutional violation.</u>**

Plaintiff bears the burden to establish a claim pursuant to 42 U.S.C. 1983 and, first and foremost, demonstrate a violation of his constitutional rights. Only two of the six causes of action stated in Plaintiff's complaint appear to state, albeit vaguely, a constitutional violation. The underlying assumption for both claims is that the warrant for 19409 Milan lacked probable

---

[3] *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)

cause.  Should this court find that the warrant was supported by probable cause, the inquiry ends here, and Detective Johnson is entitled to a judgment in his favor as a matter of law.

Plaintiff's attack on the warrant is essentially a collateral attack on the probable cause determination, a decision which stands, made by Judge Astrab.  As the Supreme Court has stated:

> [w]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477 at 487 (1994).

While Plaintiff in this matter is not a state prisoner, *Heck* should apply to this matter. Criminal tools, including firearms, seized by the Cleveland Police as part of an ongoing investigation into the Heartless Felons gang are currently in State custody under the authority of the warrant that is the center of this case.  A decision in favor of Plaintiff here would stand "in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck* at 484 quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991).  The Court specifically states a desire that "[t]his requirement —avoids parallel litigation over the issues of *probable cause* and guilt." *Heck* at 484 quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991) (Emphasis added).  This Court should likewise refrain from collateral attack on the probable cause determination made by Judge Astrab.

Should the court proceed to scrutinize the warrant and, necessarily, the probable cause determination made by Judge Astrab, probable cause determination is a purely legal question that falls outside the province of the jury. *Hale v. Kart*, 396 F.3d 721 at 728 (6th Cir. 2005).  In

determining whether a warrant is supported by probable cause, the court must pay "great deference" to the issuing magistrate's determination as to probable cause and recognize that such a finding should not be set aside unless **arbitrarily exercised**. *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998), citing *U.S. v. Goff*, 6 F.3d 363, 366 (6th Cir. 1993).

This case is unique because the record here has the benefit of Judge Astrab's sworn and undisputed deposition testimony. Judge Astrab testified under oath that he found sufficient probable cause supported the warrant and that his decision was independent and unbiased. (Ex. C at 16:4-8; 16:22 – 17:3; 17:4-7; 19:19 – 20:24; 24:18-23; 28:14-17; 42:1-2; 42:10-11; 42:16-17; 43:2-4; 43:12-13; and 46:11-17.) Furthermore, Judge Astrab's probable cause determination was never invalidated in subsequent criminal proceedings. Therefore, in making its evaluation, the Court should be mindful of Judge Astrab's actions and must only invalidate Judge Astrab's finding if the Court is convinced that his decision was arbitrarily exercised.

Probable cause for a search warrant exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Id.*, citing *Greene v. Reeves*, 80 F.3d 1101 (6th Cir. 1996).

Plaintiff here essentially contends that the affidavit used to obtain the search warrant does not establish a sufficient nexus between Michael Menefield, a convicted felon and suspected business associate of the Heartless Felons gang, and 19409 Milan, the address subject to the warrant. Plaintiff would have this Court view this issue in a vacuum, to the exclusion of the totality of circumstances. The fundamental flaw in Plaintiff's analysis is that it fails to recognize that the subject of the search was evidence of a crime – not the criminal actor himself. Detective

Johnson established in his affidavit, and Judge Astrab rightfully concluded, that under the totality of circumstances evidence of a crime would be located at the subject address.

The U.S. Supreme Court has found that a State is not prevented by the Fourth and Fourteenth Amendments from issuing a warrant to search for evidence simply because the owner or possessor of the place to be searched is not reasonably suspected of criminal involvement. *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). The critical element in a reasonable search is not that the property itself is suspected of crime but that there is reasonable cause to believe that the "things" to be searched for and seized are located on the property to which entry is sought. *Id.* All that a magistrate must find in order to issue a warrant is probable cause that evidence of a crime would be found at the site to be searched. *Mays*, supra at 814, citing *U.S. v. Eisner*, 297 F.2d 595 (6th Cir. 1962).

In this case, at the time Detective Johnson signed the affidavit, a reasonable person would believe that an offense has been committed and the evidence of said offense (to wit, evidence of gang activity, weapons, criminal tools, etc.) would be found at 19409 Milan. This is supported by Menefield's drug-related criminal history, the fact that he was a criminal co-defendant with a known Heartless Felons gang member, his social media activity and the fact that multiple law enforcement databases listed 19409 Milan as his address, including the Ohio Adult Parole Authority, Ohio Law Enforcement Gateway (OHLEG), Law Enforcement Automated Data System (LEADS), the Ohio Department of Rehabilitation and Corrections (ODRC), and the Bureau of Motor Vehicles (BMV).

The affidavit, at the time of signing, and the warrant itself were supported by sufficient probable cause. Further, there is no evidence that Judge Astrab's probable cause determination

was so arbitrary as to invalidate and set aside his judicial determination.  As such, Plaintiff's civil rights claims against Detective Johnson fail as a matter of law.

**C.** **Even if this court finds the warrant was not supported by probable cause, Detective Johnson is entitled to qualified immunity because detective Johnson's reliance on the warrant was objectively reasonable; and there is no evidence of a *Franks* violation.**

Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511 at 526 (1985).  "The protection of qualified immunity applies regardless of whether the government official's error is – a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223 at 231 (2009) (internal citations omitted).

In determining whether qualified immunity applies, a two part test is applied.  The steps are not required to be taken in order. *Id.*  First, a court must determine whether the acts violated a constitutional right.  Second, the court must determine if at the time of the actions, the constitutional right was "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001).  It is important to note at the outset that the ultimate determination of Johnson's entitlement to immunity in this matter is evaluated based on what a reasonable officer would believe or understand at the time of the event given the facts known to that officer, not a review of the situation in 20/20 hindsight. *Fox v. DiSoto*, 489 F.3d 227 at 236 (6th Cir. 2007).

**i.** **Detective Johnson's reliance on the warrant, found to be sufficient by a county prosecutor and a state court judge, was objectively reasonable.**

The United States Supreme Court in *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), addressed the Fourth Amendment exclusionary rule in the context of evidence obtained by police officers acting in reliance on a search warrant issued by a neutral magistrate but ultimately found to be invalid.  The Court held that a police officer's reliance on a

magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable. However, suppression would be an adequate remedy if the magistrate was misled by information in the affidavit that the affiant knew was false or would have known to be false but for his reckless disregard for the truth. Suppression would also be appropriate if the magistrate wholly abandoned his detached and neutral judicial role. Nor would an officer's objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render the official believe in its existence entirely unreasonable." *Leon* at 922, citing *Brown v. Illinois*, 422 U.S. at 610-611, 95 S.Ct., at 2265-2266 (1975), *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), *Lo-Ji Sales, Inc. v. New York*, 422 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979).

The U.S. Supreme Court in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) held that the same standard of objective reasonableness as was applied in the context of a suppression hearing in *Leon* defines the analysis in the context of qualified immunity from 42 U.S.C. §1983 actions. The U.S. Supreme Court held that only where the warrant application is so lacking in indicia of probable cause as to render the official belief in its existence unreasonable, will the shield of immunity be lost.

The U.S. Supreme Court has previously held that where the alleged Fourth Amendment violation involves a search pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner. *Messerschmidt v. Millender*, 565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012), citing *Leon*, supra. Only where it is obvious that no reasonably competent officer would have concluded that a warrant should issue, is the shield of qualified immunity breached. *Id*., citing *Malley*. This shield conferred by the warrant is so strong, and the threshold for establishing an exception to it

is so high, that an officer cannot be expected to question the magistrate's probable cause determination unless the affidavit is so lacking in indicia of probable cause as to render the official belief in its validity **entirely unreasonable**. *Id.* at ¶ (a) of syllabus.

In this matter, Detective Johnson took the initial step of seeking legal advice from Assistant Cuyahoga County Prosecutor Ochocki. Prosecutor Ochocki was acting in his official capacity as a prosecutor. Johnson accepted Ochocki's advice and incorporated the suggested changes into his affidavit. Johnson then had an in-person meeting with Judge Astrab who also found probable cause. Because the meeting was in person, Judge Astrab was free to pose any questions or initiate a discussion with Detective Johnson. Considering the steps Johnson took to seek the advice and approval of not one but two legal professionals, it is certainly objectively reasonable that, as a non-attorney, he relied on their legal assessment.

The U.S. Supreme Court has found that a police officer who relied on advice of a prosecuting attorney and an independent magistrate did not act unreasonably in relying on their probable cause determinations. *Messerschmidt v. Millender*, 565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012). In *Messerschmidt*, the U.S. Supreme Court reversed the two lower courts and resurrected qualified immunity to the officers who were relying on a search warrant. The Court's analysis of qualified immunity and "objective reasonableness" in this context is therefore particularly on point.

In *Messerschmidt,* a victim of a domestic dispute reported to investigating officers that her boyfriend attacked her and pointed a sawed-off shotgun at her and threatened to kill her. She reported that he might be staying at a home of his former foster mother and mentioned that he had ties to the Mona Park Crips gang. Based on this information and subsequent investigation, the officer drafted an application for a search warrant for that address. The affidavit for the

warrant described the incident with the girlfriend and explained why the officer believed there was probable cause for the search. The scope of the warrant included broad categories of firearms, firearm-related material and gang-related material. The District Court found that the warrant was unconstitutionally broad and that the officer's reliance on the warrant was not objectively reasonable. The Ninth Circuit Court of Appeals confirmed. The U.S. Supreme Court reversed.

The Court found that, even if the affidavit for the warrant only mentioned the incident with the suspect's girlfriend where he threatened her with a gun, it was not entirely unreasonable for the officer to conclude that the suspect may own more than one gun. It was also not entirely unreasonable for the officer to conclude that the attack on the girlfriend was not motivated by the soured romantic relationship but by his motivation to prevent her from disclosing the details of his gang-related activity to the authorities. The court further reasoned that, even if this was a purely domestic dispute, a reasonable officer could still believe that gang-related paraphernalia would be found at the residence based on his control of the residence or his connection to other evidence found there.

Further, the Supreme Court was critical of the Court of Appeals for not giving weight to the fact that the warrant had been reviewed and approved by the officer's superiors, a deputy district attorney, and a neutral magistrate; and the court outright rejected the proposition that the officers somehow had an independent responsibility to ensure there was at least a colorable argument for probable cause. *Id*. at 554. Although the Supreme Court acknowledged, as it did in *Malley*, that a magistrate's approval of the application does not translate into an automatic grant of qualified immunity, it further reasoned:

> [B]y holding in *Malley* that a magistrate's approval does not automatically render an officer's conduct reasonable, we did not suggest that approval by a magistrate

or review by others is irrelevant to the objective reasonableness of the officer's determination that the warrant was valid. Indeed, we expressly noted that we were not deciding "whether [the officer's] conduct in [that] case was in fact objectively reasonable." The fact that the officers secured these approvals is certainly pertinent in assessing whether they could have held a reasonable belief that the warrant was supported by probable cause.

*Id*. at 554-555, citations omitted.

Further, in conducting his investigation, Detective Johnson relied on multiple law enforcement databases to confirm the Menefield's address, which would lead a reasonable officer to conclude that someone who lives or even stays at the address would probably keep evidence of a crime at that location. The U.S. Supreme Court has previously found an officer's reliance on law enforcement databases objectively reasonable, even if the database ends up yielding incorrect or outdated information and results in an erroneous arrest of a suspect. *Herring v. U.S.,* 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). The Court found that to trigger the exclusionary rule and suppress the evidence, the police conduct had to be sufficiently deliberate to meaningfully deter it, and sufficiently culpable that such deterrence would be worth the price paid by the justice system. *Id*. at 144.

Detective Johnson's thorough investigation, reliance on his extensive experience in the field, reliance on multiple law enforcement databases, reliance on Cuyahoga County Assistant Prosecutor and on Judge Astrab was objectively reasonable. There is no evidence in the record that Detective Johnson's actions in obtaining the warrant and reliance on the prosecutor and Judge Astrab were entirely unreasonable. Therefore, Detective Johnson is entitled to a judgment in his favor on the basis of qualified immunity.

      **ii.**     **There is no evidence that Detective Johnson made false statements or intentionally withheld information material to the determination of probable cause constituting a *Franks* violation.**

13

Plaintiff claims that Defendant Johnson intentionally and unreasonably omitted material evidence in his affidavit for the search warrant. (ECF# 1, Plaintiff's Complaint at ¶ 70.) From the face of the complaint, Plaintiff does not appear to allege that Detective Johnson intentionally made false statements in his affidavit. Rather, it appears the complaint is that he allegedly omitted material evidence. This claim must also fail as a matter of law because the record contains no evidence of either an intentional omission or that any alleged intentional omission was material to the finding of probable cause. To the contrary, if any additional facts were omitted from the affidavit, they strengthen rather than weaken the judge's finding of probable cause.

The U.S. Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) defined the Fourth Amendment's guarantees in the context of warrants obtained under false pretenses. According to the Supreme Court, a search warrant must be voided and fruits of the search excluded from trial where, after a hearing, the trial court determines that 1) the affiant made false statements in the affidavit in support of a search warrant, that such statements were made knowingly and intentionally, or with reckless disregard for the truth, and 2) the false statement was necessary to the finding of probable cause. The 6th Circuit Court of Appeals has extended the *Franks* analysis to civil rights actions brought under 42 U.S.C. §1983. See *Donta v. Hooper*, 774 F.2d 716, 718 (6th Cir. 1985), *Yancey v. Carroll County*, 876 F.2d 1238 (6th Cir. 1989).

Plaintiff's assertion that Detective Johnson "knowingly and deliberately omitted material evidence" dangerously smacks of a *Brady* challenge, which does not apply in warrant context and only applies in the context of a criminal trial. See *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Sixth Circuit in *Mays v. City of Dayton*, 134 F.3d 809 (6th

Cir. 1998) was particularly concerned with the lower court's misguided analysis of similar import. In that case, the District Court found that because the affidavit in support of a warrant failed to include potentially exculpatory information, that constituted a triable issue of fact on whether a *Franks* violation occurred. The Court of Appeals found the lower court committed a clear error on what appeared to be an application of a *Brady* analysis in the context of a warrant application. *Id*. at 815. The Court emphasized that "affidavits in support of search warrants ‑are normally drafted by non-lawyers in the midst and haste of a criminal investigation." *Id*., citing *U.S. v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In the instant case, failure to include what Plaintiff deems to be exculpatory is not determinative of whether a *Franks* violation occurred.

Although the Sixth Circuit has found the *Franks* doctrine applicable to omissions of information from affidavits in *U.S. v. Bonds*, 12 F.3d 540 (6th Cir. 1993), affidavits with potentially material omissions are much less likely to merit a *Franks* hearing that those affidavits that allegedly contain false statements. *Mays*, supra, citing *U.S. v. Atkin*, 107 F.3d 1213 (6th Cir. 1997); *Spencer v. Sutterfield*, 66 Fed.Appx. 569 (6th Cir. 2003).

The Sixth Circuit in *Mays* further narrowed and clarified the standard for finding a *Franks* violation in situations involving omissions:

> [w]e reiterate that except in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.

*Id.* at 816.

Further, if Plaintiff does succeed in making a preliminary showing of a "deliberate falsehood" or "reckless disregard" in omitting information from the affidavit, the court must then

consider the affidavit including the omitted portions and determine whether probable cause exists. *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). See also *Hale v. Kart*, 396 F.3d 721, 726 (6th Cir. 2005) (finding that the mere allegation that the officer should have engaged in further investigation before seeking a warrant does not speak to the defendant's intent to mislead; rather, it only speaks to the thoroughness of his investigation).

Plaintiff in this case failed to make a strong preliminary showing that Detective Johnson excluded critical information from the affidavit or that the omission was **critical** to the finding of probable cause. The evidence on the record does not support the existence of triable issues of fact on Plaintiff's allegation of a *Franks* violation against Detective Johnson. Therefore, Detective Johnson is entitled to qualified immunity.

### D. **Johnson is immune from liability for all of Plaintiff's asserted state claims pursuant to O.R.C. 2744(A)(6).**

Johnson is also immune from all state law claims under Ohio Revised Code Chapter 2744. Ohio Revised Code Chapter 2744 specifically grants immunity to employees of political subdivisions for negligence claims arising out of the course and scope of the person's employment with the political subdivision. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 357. Specifically, R.C. § 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability unless one of the following exceptions applies:

i.    The employee's acts or omissions were manifestly outside the scope of his employment;

ii.   The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

iii.  Civil liability is expressly imposed by a section of the Revised Code.

Ohio Rev. Code § 2744.03(A)(6)(a)-(c).

At all times Johnson was acting within the scope of his employment and the record is devoid of any evidence that his actions or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner." Detective Johnson's investigation was entirely reasonable and approved by both the County Prosecutor's Office as well as the state court. There is simply no evidence of malicious purpose, bad faith, or a wanton or reckless manner. Defendant Johnson is immune from all of Plaintiff's state law claims.

**E. The Cross Claims must also fail as a matter of law.**

Solon Police Department, Officer Steven Davis and Sergeant Keith A. Kulak filed Cross Claims against Johnson, the City of Cleveland and Cleveland Police Department. These Cross Claims are derivative of Plaintiff's Complaint. That is to say, the Solon PD Defendants assert that if Plaintiff suffered any damages, then these damages were caused by Johnson and/or the City. Therefore, if the Solon PD Defendants are required to pay Plaintiff anything, they are entitled to indemnification and/or contribution from Johnson and the City of Cleveland.

As noted above, the City of Cleveland, Cleveland Police Department, Solon Police Department and the City of Garfield Heights each filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. This Court granted each of these motions on July 3, 2017. (ECF # 38, 39, and 40.) As a result, the Cross Claims asserted by Officer Davis and Sergeant Kulak are all that remain.

Again, the facts presented in this matter do not provide a basis to maintain a single alleged violation of federal or state law by Johnson. In addition, Johnson is entitled to qualified and state law immunity from Plaintiff's claims. In the absence of a constitutional violation by an officer, there can be no municipal liability. *Jones v. City of Cincinnati*, 521 F. 3d 555, 560 (6th Cir. 2008) (citing City of *Los Angeles v. Heller*, 475 U.S. 796, 799 (1996) (It is axiomatic

that there can be no municipal liability for the lawful conduct of the officers.). Without the requisite underlying constitutional violation by Johnson, neither Johnson nor the City can be liable for any Cross Claims.

Similarly, Plaintiff's Complaint failed to state any factual allegation, legal claim, or any other reference regarding the City of Cleveland and therefore was dismissed. Because Plaintiff's claims against the City failed, the remaining Solon Defendants' Cross Claims based on Plaintiff's Complaint must also fail.

Notably, the Cleveland Police Department is not *sui juris.* It is well recognized that a "police department" of an Ohio political subdivision is not *sui juris.* See, e.g., *Petty v. County of Franklin, Ohio*, 2007 WL 487003 (6th Cir. 2007); (Franklin County Sheriff's Office not sui juris); *Schuler v. Village of Newcomerstown*, 2017 WL 1199170 (N.D. Ohio 2017) (Newcomerstown Police Department is not *sui juris*); *Hill v. Alliance Police Department*, 2017 WL 89346 (N.D. Ohio 2017) (Alliance Police Department is not *sui juris*); Stewart v. Neil, 2017 WL 1230468 (S.D. Ohio 2017) (Hamilton County Sheriff's Office not *sui juris*); *Leavell v. City of Sandusky*, 2016 WL 5076083 (N.D. Ohio 2016) (Sandusky Police Department not *sui juris*); *Fisk v. Dayton Police Department*, 2016 WL 3458215 (S.D. Ohio 2016) (Dayton Police Department is not *sui juris*). Therefore, the remaining Solon PD Defendants' cross claim against the Cleveland Police Department fail as a matter of law.

Finally, neither Officer Davis nor Sergeant Kulak cite to any basis entitling them to indemnity or contribution. Although the two forms of reimbursement are similar, there is a distinct difference. Contribution, when it exists, is the right of a person who has been compelled to pay what another should pay in part to require partial (usually proportionate) reimbursement and arises from principles of equity and natural justice. Indemnity, on the other hand, arises

from contract, express or implied, and is a right of a person who has been compelled to pay what another should pay in full to require complete reimbursement. *Travelers Indemn. Co. v. Trowbridge*, 41 Ohio St.2d 11, 13-14, 321 N.E.2d 787 (1975) (citations omitted), overruled on other grounds in *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.* (1995), 73 Ohio St.3d 391, 653 N.E.2d 235. The remaining Solon Defendants' Cross Claims fail because they have not been compelled to pay anything to any party. In addition, they cite to no contract, express or implied, that requires these Cross Claim Defendants to pay anything in the event that the remaining Solon Defendants are found liable. As a result, the Solon Defendants' Cross Claims fail as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in favor of Alfred

Johnson, the City of Cleveland and Cleveland Police Department on all claims advanced by

Plaintiff and Cross-Claimants.

Respectfully submitted,

BARBARA A. LANGHENRY (0038838)
Director of Law

/s John P. Bacevice Jr.
JOHN P. BACEVICE JR. (0087306)
Assistant Director of Law
ELENA N. BOOP (0072907)
Chief Assistant Director of Law
Department of Law, Cleveland City Hall
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Telephone No.:  (216) 664-2800
Facsimile No.:   (216) 664-2663
jbacevice@city.cleveland.oh.us
eboop@city.cleveland.oh.us
*Counsel for Defendant Alfred Johnson*

/s/ Janeane R. Cappara
JANEANE R. CAPPARA (0072031)
Assistant Director of Law
Department of Law, Cleveland City Hall
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Telephone No.:  (216) 664-2800
Facsimile No.:   (216) 664-2663
jcappara@city.cleveland.oh.us

*One of the Attorneys for Cross Claim Defendants*
*City of Cleveland and Cleveland Police Department*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically on September 14, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

 s/ John P. Bacevice Jr.
John P. Bacevice Jr. (0087306)
Attorney for Defendant