## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW CARR | ) | CASE NO. 1:17-cv-00620 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| DETECTIVE ALFRED JOHNSON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANT PATROLMAN RON DODGE's MOTION FOR SUMMARY JUDGMENT

---

Now comes Defendant Patrolman Ron Dodge who, pursuant to Fed. Civ. R. 56, hereby moves this Honorable Court for an Order granting him qualified immunity and summary judgment in his favor on Plaintiff's Complaint. A Memorandum in Support is attached hereto and incorporated herein by reference.

Respectfully submitted,

*/s/ John D. Latchney*

_____

John D. Latchney (0046539)
O'Toole, McLaughlin, Dooley
& Pecora Co., LPA
5455 Detroit Road
Sheffield, Ohio 44054
Telephone: (440) 930-4001
Facsimile: (440) 934-7205
Email: jlatchney@omdplaw.com
*Attorney for Defendant Patrolman Ron Dodge*

## TABLE OF AUTHORITIES

**Cases**

*Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999) .................................................. 6

*Ash v. Ash,* 72 Ohio St.3d 520, 522, 651 N.E.2d 945 (1995) ...................................... 17

*Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) ................................................. 17

*Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) ............................................. 13

*Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) ............................................... 5

*Bradigan v. Strongsville City Schs*, 2007-Ohio-2773, ¶28 (8th Dist.), <u>discr. app. over'd</u>, 115 Ohio St.3d 1475, 2007 Ohio 5735, 875 N.E.2d 628 ................................................. 14, 15

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) ...................... 13

*Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) ................... 12

*Buster v. City of Cleveland*, No. 1:09-cv-1953, 2010 U.S. Dist. LEXIS 4696, *26 (N.D.Ohio Jan. 21, 2010)…..……………………………………………………………13

*Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) .................................................. 11

*Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. Tenn. 2000) ............................. 12

*Collins v. City of Shaker Heights*, 503 U.S. 115 (1992) ............................................... 5

*Collins v. Nagle,* 892 F.2d 489, 495 (6th Cir.1989) ..................................................... 8

*Collyer v. Darling*, 78 F.3d 211, 233 (6th Cir. 1996) ................................................. 13

*Davis v. Clark Cty. Bd. of Comm'rs*, 2013 Ohio 2758, ¶20 (12th Dist.) ........................... 3, 14, 16

*DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201-202 (1989) ............ 5

*Devenpeck v. Alford,* 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ...................... 16

*Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) .................................................... 12

*Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) ....................................................... 13

*Fox v. Mich. State Police Dep't*, 173 Fed. Appx. 372, 376 (6th Cir. 2006) ................................ 13

*Gill v. Kovach*, 729 F. Supp. 2d 925, 932 (N.D.Ohio 2010) ....................................................... 16

*Gordon v. Louisville/Jefferson County Metro Gov't*, 486 Fed. Appx. 534 (6th Cir. 2012) ............ 5

*Guerra v. Sutton,* 783 F.2d 1371, 1375 (9th Cir.1986) .................................................................... 8

*Halasah v. City of Kirtland, Ohio*, 574 F. App'x 624, 631 (6th Cir. 2014) .................................. 17

*Hicks v. Bryan Med. Grp., Inc.*, 287 F. Supp.2d 795, 813 (N.D.Ohio 2003) .............................. 13

*Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ............................. 6

*Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984) .................................................................... 12

*Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 419, 1995 Ohio 61, 650 N.E.2d 863 (1995) ......................................................................................................................... 14

*Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) ...................... 12

*KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008)....................................................... 8

*Kush v. Rutledge*, 460 U.S. 719, 726 (1983)................................................................................. 13

*Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) ........................................................................ 11

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 ......................................... 6

*May v. County of Trumbull*, 1997 WL 651662, at *4 (6th Cir. 1997) .......................................... 12

*Mays v. City of Dayton*, 134 F.3d. 809, 813 (6th Cir. 1998) ............................................................ 5

*McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1035 n. 2 (11th Cir.2000) ...................... 13

*McLeod v. Benjamin*, 2016 WL 6947546 (W.D.Mich. 2016) ........................................................ 9

*Messerschmidt v. Millender*, 565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) ............ 5, 6, 9

*Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ....................... 16

*Moreno v. Metro. Gen. Hosp.*, 210 F.3d 372 (6th Cir. 2000) ....................................................... 12

iii

*Palmer v. Town of Jonesborough*, No. 2:08-CV-345, 2009 WL 1255780, at *6 (E.D.Tenn. May 1, 2009)..................................................................................................................... 15

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 800, 818 (2009)........................................ 5

*Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018).................................................... 7

*Purnell v. City of Akron*, 925 F.2d 941, 948-49, n.6 (6th Cir. 1991)............................... 12

*Ramirez* [*v. Butte-Silver Bow Cty., 298 F.3d 1022, 1026 (9th Cir. 2002), aff'd sub nom. Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)* ...................... 8

*Rogers v. Barbera,* 170 Ohio St. 241 syllabus ¶1, 164 N.E.2d 162 (1960)................................. 16

*Rush v. City of Mansfield*, 771 F. Supp.2d 827, 861 (N.D.Ohio 2011) ..................... 7, 15

*Sanders v. Jones*, 728 F. App'x 563, 565 (6th Cir. 2018) ............................................. 17

*Sappington v. Bartee,* 195 F.3d 234, 237 (5th Cir.1999)............................................... 16

*Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002)............................... 17

*Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) ........................................................ 5

*Snyder v. United States*, 990 F. Supp.2d 818, 829 (S.D.Ohio), *aff'd,* 590 F. App'x 505 (6th Cir. 2014).................................................................................................................... 15

*Thacker v. City of Columbus,* 328 F.3d 244 (6th Cir.2003)............................................ 15

*Tinch v. City of Dayton*, 1996 WL 77445, at *1 (6th Cir. 1996) ................................... 12

*U.S. v. Banks*, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) ........................... 11

*U.S. v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013) ....................................................... 7

*United States v. Allen,* 211 F.3d 970, 973 (6th Cir.2000)............................................... 6

*United States v. Anderson,* No. 07cr0023, 2007 WL 4732033, at *5, 2007 U.S. Dist. LEXIS 45137, at *17 (N.D.Ohio June 21, 2007) ............................................................... 7, 16

*United States v. Bates,* 84 F.3d 790, 794 (6th Cir.1996) ............................................... 10

*United States v. Bragg*, 138 F.3d 1194, 1195 (7th Cir. 1998) ...................................... 10

*United States v. Dice,* 200 F.3d 978, 982 (6th Cir.2000) ................................................................. 9

*United States v. Favors*, 75 F. App'x 377, 381 (6th Cir. 2003) ...................................................... 11

*United States v. Finch,* 998 F.2d 349 (6th Cir.1993) ...................................................................... 11

*United States v. Gatewood,* 60 F.3d 248, 250 (6th Cir.1995) ........................................................ 11

*United States v. Laughton,* 409 F.3d 744, 752 (6th Cir.2005) ......................................................... 7

*United States v. Leon*, 468 U.S. 897, 922-923, 104 S.Ct. 3405, 82 L.Ed.2d 677 ........................... 6

*United States v. Maher*, 185 F. Supp.2d 826 (W.D.Mich. 2001) ............................................... 3, 10

*United States v. Markling,* 7 F.3d 1309 (7th Cir.1993) .................................................................. 10

*United States v. Meade*, 110 F.3d 190, 193 (1st Cir.1997) .............................................................. 8

*United States v. Spikes,* 158 F.3d 913, 925 (6th Cir.1998) ........................................................ 9, 11

*United States v. Terry,* 522 F.3d 645, 647 (6th Cir.2008) ............................................................... 6

*United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).................. 8

*Vasquez–Palafox v. United States,* No. 3:12 CV 2380, 2013 WL 1500472, at *3 (N.D.Ohio Apr. 10, 2013)........................................................................................................................................ 15

*Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).................................... 15

*Walter v. ADT Sec. Sys.*, 2007 Ohio 3324, ¶36 (10th Dist.) ......................................................... 14

*Warth v. Seldin*, 422 U.S. 490, 499 (1975) ................................................................................... 12

*Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) ........................................................... 17

*Williams v. Aetna Fin. Co*., 83 Ohio St.3d 464, 475, 1998 Ohio 294, 700 N.E.2d 859 (1995).... 14

*Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)......................................................... 7

**Statutes**

42 U.S.C. § 1985 ................................................................................................................ 12, 13

42 U.S.C. § 1985(2) ................................................................................................................ 13

42 U.S.C. § 1985(3) ................................................................................................................ 13

R.C. § 5313.02(C) ................................................................................................................... 12

R.C. Chapter 167 ....................................................................................................................... 1

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  Introduction

Carr's First Cause of Action alleges an unspecified civil rights violation predicated upon an allegedly illegal search of the premises based upon a lack of probable cause.  Plaintiff attempts to tie the other Defendants to the alleged conduct of Defendant Johnson described in Complaint ¶¶ 69-72.  The Sixth Cause of Action is essentially a more specific restatement of the First Cause of Action and alleges that Carr's Fourth Amendment rights were violated because the search warrant for his father's home lacked probable cause.  *Id.*, PageID#s 13-14.[1]  Given the inter-related nature of these two Causes of Action, it makes sense to discuss them together.

Plaintiff's Third Cause of Action alleges a civil conspiracy to violate his civil rights and to commit the intentional tort of malicious prosecution.  Carr's Fourth Cause of Action is for false arrest and false imprisonment.  *Id.*, PageID#s 11-12.  The Fifth Cause of Action is a state law claim for malicious prosecution, which is based upon Plaintiff being charged with felonious assault of a police officer.  *Id.*, PageID#s 12-13.  For the reasons which follow, Defendant Officer Dodge is entitled to qualified immunity and, ergo, summary judgment on Plaintiff's Complaint against him.

## II.  Statement of Facts/Allegations

The Southeast Area Law Enforcement Task Force ("SEALE") is a multi-jurisdictional law enforcement task force, authorized by R.C. Chapter 167, covering the southeastern suburbs of Cuyahoga County, which includes the Police Departments of Bedford Heights, Garfield Heights, Maple Heights ("MHPD"), Oakwood Village, Solon, and Walton Hills.  SEALE provides mutual aid and has a special weapons and tactics ("SWAT") team.  *Ronald Dodge Declaration.*

---

[1]     Plaintiff also asserts a *Monell* claim against various Police Departments who are no longer Defendants in the case *sub judice*.  Doc. 40, PageID# 181.  In any event, the Second Cause of Action fails to state a claim against any of the individually named police officer Defendants.

1

Dodge has been a member of the SEALE team for over eleven (11) years. *Dodge Declaration*. The SEALE team Commander is Robert Soltis. *Id.* Keith Kulak is the Fire Team Boss. *Id.* Nick Rossi is the Entry Team Leader. *Id.* Typically, the SEALE team meets before deployment. *Id.* That was true in this case as well. *Id.*

The Search Warrant at issue in this case was obtained by the CPD. Defendant Detective Alfred Johnson is a member of the CPD gang unit and was investigating a street gang called the Heartless Felons. The subject search warrant was obtained by the CPD with the assistance of the Cuyahoga County Prosecutor's Office ("CCPO"). Cuyahoga County Court of Common Pleas Judge Michael Astrab found probable cause existed for the issuance of the search warrant, which was signed by the Judge on April 12, 2016. See *Search Warrant, Exhibit A*.

On April 14, 2016, the SEALE team members were advised by the Commander that the City of Cleveland Police Department ("CPD"), had requested assistance from SEALE regarding the CPD's interest executing a search warrant of the premises located at 19409 Milan Drive, Maple Heights, Ohio ("the Premises"). *Dodge Declaration*. The pre-deployment meeting included a briefing on the nature of the criminal investigation and a discussion of the premises to be searched. *Id.* A Google Maps printout of the premises was provided to the team members which contained the address of the premises and a photo of the house. *Id.*

On April 15, 2016, at approximately 7:00 a.m., there were eleven (11) SEALE team members at the scene with the word "POLICE" on the front of their camouflaged uniforms. There were additional police officers present who were wearing all navy blue, bulletproof vests, and either had a badge displayed or the word "POLICE" on the back of their uniforms. *Id.*

At the scene, Officer Dodge was to be the first man into the Premises. Officer Rick Cramer was typically in charge of performing the "knock and announce" because he was the loudest

member of the team.  If the residents did not or refused to answer, Officer James Seawright was responsible for deploying the battering ram.  *Dodge Declaration*.

Officer Rick Cramer loudly and repeatedly performed the "knock and announce" at the Premises by indicating that they were the police and they had a search warrant.  *Rick Cramer Declaration.*  This process took 8 to 10 seconds.  *Dodge Declaration.*  As noted, when property owner Derrick Carr (Plaintiff's father), looked out the window, he saw a number of men in camouflage.  *Derrick Carr depo.* at 39, l. 17-19.  In fact, there were eleven of them, holding semi-automatic weapons, with the word "police" across the front of their uniforms.  *Dodge Declaration.*  Derrick Carr "recognized them to be police officers" *Carr depo.* at 40, l. 4-5.[2]

Despite Officer Cramer's repeated banging and yelling, no one answered the front door.  *Dodge Declaration.*  The officers could see people looking at them through the windows.  After about 20 to 25 seconds after Cramer stopped performing the banging and yelling, Officer Dodge called for a breach of the front door.  *Id.*  Officer Seawright used the battering ram to knock in the door and, after the NFDD was deployed, Officer Dodge was the first man in.  *Id.*

Upon the door being breached, Ofc. Davis deployed a Noise and Flash Diversionary Device (NFDD) into the threshold of the home.  Officers Davis, Sgt. Kulak and Dodge entered into the home following the NFDD.  *Dodge Declaration.*  Following the deployment of the NFDD, Carr

---

[2]    As the district court observed in *United States v. Maher*, 185 F. Supp.2d 826 (W.D.Mich. 2001), "People refuse or fail to answer their doors for any number of reasons. The caller might be a nosy neighbor, a door-to-door salesman, a bill collector, an angry ex-girlfriend or boyfriend, or someone else whom the occupant wants to avoid. The occupant might be temporarily indisposed, as was Maher, who was on the telephone when the officers began to knock. Or, the occupant might consider it more important to complete whatever he or she is doing at the moment before answering the door." *Id*. at 830.  This wasn't such a case.  When Derrick Carr saw a number of men in camouflage standing on his porch, who he recognized to be police officers, he knew or should have known they weren't there to sell girl scout cookies.

fired a single gunshot, aiming toward the front door, from which the officers just entered.  See *Andrew Carr Depo. at 44-45*).  After the Carr gunshot, the SEALE team completed securing the property.  Upon the property and persons present at the property being secured, SEALE turned the investigation over to the CPD.  *Dodge Declaration.*

Overall, SEALE's sole involvement in the execution of the Search Warrant is limited to securing the property and persons present at the location.  *Id.*  Once the property and location are secured by the members of the SEALE team, the investigating police entity (here CPD), involved completes its search pursuant to the terms of the warrant.  *Id.*  The SEALE team members had no involvement in CPD search of the Premises, nor would SEALE team members investigate or arrest for any crime that might occur at the location of the execution of the search warrant.  *Id.*  Any crime that may occur at the location of the execution of the warrant is under the jurisdiction of the municipal police force of that location.  In the instant matter, the MHPD would have jurisdiction and responsibility to investigate and charge any crime committed at said location.

Officer Dodge's actions relevant to the instant lawsuit involve *only* securing the property at the Premises in his role as a SEALE team member.  The entirety of Officer Dodge's interaction with Plaintiff Andrew Carr consisted solely of Plaintiff firing a gun in his direction.  Once the property was secured, the SEALE team turned the search over to the CPD and any criminal investigation on the Premises over to the MHPD.  *Ronald Dodge Declaration*.

### III.  Law and Argument

### Qualified immunity generally

As a threshold matter, "[e]ach defendant's liability must be assessed individually based on his own actions."  **Error! Bookmark not defined.***Gordon v. Louisville/Jefferson County Metro Gov't*, 486 Fed. Appx. 534 (6th Cir. 2012), citing **Error! Bookmark not defined.***Binay v.*

4

*Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). "[A]s a general rule, mere presence at the scene of [the alleged constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Warren v. Tankersley*, No. 1:14-CV-1006, 2015 WL 5567103, at *8 (N.D.Ohio Sept. 21, 2015), <u>citing</u> *Binay,* 601 F.3d at 650.

For acts taken in the course of official duties, a public official presumptively receives immunity for such acts. **Error! Bookmark not defined.***Mays v. City of Dayton*, 134 F.3d. 809, 813 (6th Cir. 1998). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 1244–45, 182 L. Ed.2d 47 (2012). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." **Error! Bookmark not defined.***Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 800, 818 (2009).

    **A.**     **Officer Dodge is entitled to qualified immunity regarding Plaintiff's claim that his participation in a search of the premises violated the Fourth Amendment where a neutral detached judge reviewed the affidavit and issued the warrant.**

To prevail on claims brought pursuant to § 1983, a plaintiff bears the burden of establishing that a person acting under the color of law deprived the plaintiff of a right secured by the United States Constitution or the laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). It is well-established that any injury caused merely by negligence does not constitute a "deprivation" of any constitutionally protected interest. *Collins v. City of Shaker Heights*, 503 U.S. 115 (1992); *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201-202 (1989). Indeed, to violate the Constitution, the complained of action must be committed knowingly or intentionally, as mere negligence or recklessness is insufficient. *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999).

In cases involving alleged Fourth Amendment violations, The U.S. Supreme Court has set

a high threshold for establishing an exception to the rule of immunity.  In *Messerschmidt v.*

*Millender,* 565 U.S. 535 (2012).  The Court provided:

> Where the alleged Fourth Amendment violation involves a search or seizure
> pursuant to a warrant, **the fact that a neutral magistrate has issued a**
> **warrant is the clearest indication that the officers acted in an objectively**
> **reasonable manner, or in "objective good faith."**[3]  *United States v. Leon,*
> 468 U.S. 897, 922-923, 104 S.Ct. 3405, 82 L.Ed.2d 677. Nonetheless, that
> fact does not end the inquiry into objective reasonableness. The Court has
> recognized **an exception allowing suit when "it is obvious that no**
> **reasonably competent officer would have concluded that a warrant**
> **should issue."** *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89
> L.Ed.2d 271. The  shield of immunity" otherwise conferred by the warrant,
> 475 U.S., at 345, 106 S.Ct. 1092, 89 L.Ed.2d 271, will be lost, for example,
> **where the warrant was "based on an affidavit so lacking in indicia of**
> **probable cause as to render official belief in its existence entirely**
> **unreasonable,**" *Leon*, 468 U.S., at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677. The
> threshold for establishing this exception is high. "[I]n the ordinary case, an
> officer cannot be expected to question the magistrate's probable-cause
> determination" because "[i]t is the magistrate's responsibility to determine
> whether the officer's allegations establish probable cause and, if so, to issue
> a warrant comporting in form with the requirements of the Fourth
> Amendment." *Id.*, 468 U.S., at 921, 104 S.Ct. 3405, 82 L.Ed.2d 677.

*Messerschmidt at* 536 [emphasis added].  In the context of searches and seizures, "police officers

are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal

search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief

---

[3]     "[R]eviewing courts are to accord the magistrate's determination 'great deference,'"
*United States v. Terry,* 522 F.3d 645, 647 (6th Cir.2008) (quoting *Illinois v. Gates,* 462 U.S. 213,
236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quotations and alterations omitted)), and should avoid
"line-by-line scrutiny [of the underlying affidavit]...." *Gates,* 462 U.S. at 246 n. 14, 103 S.Ct. 2317.
Thus, "[s]o long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would
uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates,* 462 U.S. at
236, 103 S.Ct. 2317 (quotations omitted). We have "long held that an issuing magistrate's
discretion should only be reversed if it was arbitrarily exercised." *United States v. Allen,* 211 F.3d
970, 973 (6th Cir.2000).

in the existence of probable cause is unreasonable." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018), <u>citing</u> *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989).

In conducting this inquiry, we look to whether the executing officers "reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact." *U.S. v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013), <u>citing</u> *United States v. Laughton,* 409 F.3d 744, 752 (6th Cir.2005). "Once the warrant was issued, the officers had no reason to suspect the warrant was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon,* 468 U.S. at 923, 104 S.Ct. 3405, and thus that the warrant was not "properly issued." *Laughton,* 409 F.3d at 752. It did not matter at that point whether in fact there actually was probable cause. *Id.*" *Kinison* at 686.

Plaintiff alleges that the search warrant drafted by Det. Johnson lacked probable cause to justify the search of the Premises as the target of the search, Michael Menefield, was not located at the Premises. Doc. 1, PageID# 7, Compl. ¶¶ 53-54. However, this investigative information would improperly require an officer to have to look beyond the contents of the facially sufficient warrant. On its face, the Search Warrant was sufficient and signed by a Cuyahoga County Common Pleas Judge.

**B.     Plaintiff's § 1983 claims fail as a matter of law as Officer Dodge, as a rank and file member of SEALE, have no responsibility to review either the search warrant or underlying affidavit.**

"[A]n officer generally is entitled to rely on a report from another officer under the 'collective knowledge' doctrine or 'fellow officer' rule ...." *Rush v. City of Mansfield*, 771 F. Supp.2d 827, 861 (N.D.Ohio 2011), <u>citing</u> *United States v. Anderson,* No. 07cr0023, 2007 WL 4732033, at *5, 2007 U.S. Dist. LEXIS 45137, at *17 (N.D.Ohio June 21, 2007), citing *Collins v. Nagle,* 892 F.2d 489, 495 (6th Cir.1989). "[L]aw enforcement officials cooperating in an

investigation are entitled to rely upon each other's knowledge of facts." *Rush, id.,* <u>citing</u> *United States v. Meade*, 110 F.3d 190, 193 (1st Cir.1997) (<u>citing</u> *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

"Even if a warrant is so lacking in probable cause that official reliance is unreasonable, not all officers executing the search are liable for the constitutional deficiency." *KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008). "For example, in *Ramirez* [*v. Butte-Silver Bow Cty., 298 F.3d 1022, 1026 (9th Cir. 2002), aff'd sub nom. Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)*], we recognized that "officers' roles can vary widely" and "[w]hat's reasonable for a particular officer depends on his role in the search." *KRL*, *id.* <u>citing</u> *Ramirez*, 298 F.3d at 1027. "Officers who plan and lead a search `must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way.'" *Id.* (citing *Leon,* 468 U.S. at 922–23, 104 S.Ct. 3405). "Line officers, however, `do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid.'" *Id.* at 1028 (citing *Guerra v. Sutton,* 783 F.2d 1371, 1375 (9th Cir.1986)). "Thus, even if a warrant is so lacking in probable cause that official reliance is unreasonable, line officers who do not read the warrant are still entitled to qualified immunity if they inquire as to the `nature and scope' of the warrant, and rely on representations made by their superiors. *See id.* at 1028." *KRL*, 512 F.3d at 1190.

As the foregoing case law establishes, Officer Dodge did not have an obligation to independently review the search warrant or underlying affidavit. Officer Dodge was not a commander or team leader. The function of reviewing the search warrant is handled by the SEALE Team Commander, Soltis, who served as the liaison between SEALE and the CPD. Any other procedure for review of search warrants would be impractical, unworkable, and unnecessary.

Indeed, Officer Dodge was but one of eleven members of the SEALE team who participated in the execution of the warrant. Under Plaintiff's theory of the case, all eleven individual SEALE team members would be required to conduct his own investigation into whether the warrant on its face contained sufficient indicia of probable cause, in the short window in which SEALE operates, to determine the validity of another law enforcement entity's warrant. Under this theory, SEALE would never be able to serve a warrant. No court has expanded § 1983 to such an unreasonable interpretation. See *Messerschmidt v. Millender*, 565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012); *McLeod v. Benjamin*, 2016 WL 6947546 (W.D.Mich. 2016) (*Messerschmidt* suggests that officers [within the same department] must review the warrant itself for "glaring deficiencies," but need not read the underlying affidavit. *Id.* at 1250).[4]

2. There was no violation of the "knock and announce" rule.

"At its core, the 'knock and announce' rule serves to respect the sanctity of a person's home by affording notice to those inside so that they may open the door peaceably and without the needless destruction of property, as well as by avoiding the possibility of a violent confrontation if those inside mistook the police for intruders." *United States v. Spikes,* 158 F.3d 913, 925 (6th Cir.1998). The rule thus serves the important purposes of: "(1) reducing the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) curbing the needless destruction of private property; and (3) protecting the individual's right to privacy in his or her house." *United States v. Dice,* 200 F.3d 978, 982 (6th Cir.2000)(citing *United States v. Bates,* 84 F.3d 790, 794 (6th Cir.1996)). "The announcement enables an occupant to discern the

---

[4] As the *McLeod* court further noted in fn. 3: "It is the magistrate's responsibility to read the affidavit and make a judgment. This Court cannot determine what Defendant fellow officers are supposed to do when he or she reads the affidavit for truthfulness—cross examine the affiant, bring in new evidence, demand further investigation before following orders, contradict the conclusions of the affiant—what?"

identity of the person at the door, realize that the door should be answered immediately, and avoid any consequences of failing to answer based on an incorrect assumption." *United States v. Maher*, 185 F. Supp.2d 826, 830 (W.D.Mich. 2001). If the officer "is refused admittance"—and failure to answer the door is a form of refusal, see *United States v. Markling,* 7 F.3d 1309 (7th Cir.1993)— then the door may be broken to execute the warrant. *United States v. Bragg*, 138 F.3d 1194, 1195 (7th Cir. 1998).

Plaintiff alleges that the individually named Defendants, including Dodge, did not perform the traditional "knock and announce" before entering the premises. *Doc. 1, PageID# 5, Compl. ¶ 23*. SEALE team member, Officer Rick Cramer, was typically in charge of performing the "knock and announce" because he was the loudest member of the team. If the residents did not or refused to answer, Officer James Seawright was responsible for deploying the battering ram. Officer Dodge's role was to be the first man into the Premises. *Dodge Declaration.*

Officer Rick Cramer loudly and repeatedly performed the "knock and announce" at the Premises by indicating that they were the police and they had a search warrant. This process took 8 to 10 seconds. *Rick Cramer Declaration; Dodge Declaration*. As noted, when property owner Derrick Carr (Plaintiff's father), looked out the window, he saw a number of men in camouflage. *Derrick Carr depo.* at 39, l. 17-19. In fact, there were eleven of them, holding semi-automatic weapons, with the word "police" across the front of their uniforms. *Dodge Declaration.* Derrick Carr "recognized them to be police officers" *Carr depo.* at 40, l. 4-5.[5]

---

[5]     As the district court observed in *United States v. Maher*, 185 F. Supp.2d 826 (W.D.Mich. 2001), "People refuse or fail to answer their doors for any number of reasons. The caller might be a nosy neighbor, a door-to-door salesman, a bill collector, an angry ex-girlfriend or boyfriend, or someone else whom the occupant wants to avoid. The occupant might be temporarily indisposed, as was Maher, who was on the telephone when the officers began to knock. Or, the occupant might consider it more important to complete whatever he or she is doing at the moment before answering the door." *Id*. at 830. This wasn't such a case. When Derrick Carr saw a number of men in

Despite Officer Cramer's repeated banging and yelling, no one answered the front door. *Dodge Declaration.* The officers could see people looking at them through the windows. After about 20 to 25 seconds after Cramer stopped performing the banging and yelling, Officer Dodge called for a breach of the front door. *Id.* Officer Seawright used the battering ram to knock in the door and, after the NFDD was deployed, Officer Dodge was the first man in. *Id.*

Reasonableness is the key and even relatively short waits have been held to be reasonable. *U.S. v. Banks*, 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003)(officers' 15-to-20-second wait before forcible entry satisfied the Fourth Amendment); *United States v. Favors*, 75 F. App'x 377, 381 (6th Cir. 2003)(assuming a wait between 15 and 30 seconds, the wait was not unreasonably short, <u>citing</u> *United States v. Finch,* 998 F.2d 349 (6th Cir.1993)(holding no violation of knock and announce rule where the officers waited only 5 to 10 seconds before forcing entry); *Spikes,* 158 F.3d at 925 (15 to 30 seconds); *United States v. Gatewood,* 60 F.3d 248, 250 (6th Cir.1995)(10 seconds). The wait here was reasonable.

Otherwise, Plaintiff lacks standing to assert claims of his father Derrick Carr. Standing is a threshold issue for bringing a claim in federal court and must be present at the time the complaint is filed. *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013).

A plaintiff "generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interest of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A plaintiff may assert his "own legal rights and interests," but generally, a litigant may

---

camouflage standing on his porch, who he recognized to be police officers, he knew or should have known they weren't there to sell girl scout cookies.

not sue to protect the constitutional rights of a third party. *Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004).

"In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. Tenn. 2000); *Moreno v. Metro. Gen. Hosp.*, 210 F.3d 372 (6th Cir. 2000). "Accordingly, only the purported victim…may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress…or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook* at 357. See also *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984); *Purnell v. City of Akron*, 925 F.2d 941, 948-49, n.6 (6th Cir. 1991); *May v. County of Trumbull*, 1997 WL 651662, at *4 (6th Cir. 1997)(*per curiam*); *Tinch v. City of Dayton*, 1996 WL 77445, at *1 (6th Cir. 1996)(*per curiam*). Specifically, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

Derrick Carr, Plaintiff's father, owned the house [purportedly under a land contract; however same was never filed with the Cuyahoga County Recorder as required by R.C. § 5313.02(C)]. It was Derrick Carr, a non-plaintiff, who suffered the property damage to the door/entrance—not Andrew Carr.

**B.** **Dodge is entitled to judgment as a matter of law on Plaintiff's Third Cause of Action for civil conspiracy.**

1. Plaintiff fails to state a claim under 42 U.S.C. § 1985.

A plaintiff must plead his **Error! Bookmark not defined.**§ 1985 civil conspiracy claim with particularity. **Error! Bookmark not defined.***Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) ("Claims of conspiracy must be pled with some specificity...."); **Error! Bookmark not**

**defined.** *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)("[P]leading requirements governing civil conspiracies are relatively strict").[6]

Carr alleges "Defendants wrongfully and tortuously conspired to violate the civil rights of Plaintiff by conspiring to execute a warrant without probable cause upon his premises." Doc. 1, PageID# 10, Compl. ¶ 81. Although Plaintiff does not specify, presumably, to the extent Carr is asserting a federal conspiracy claim, it must be predicated upon 42 U.S.C. § 1985(3).[7]

To establish a violation of **Error! Bookmark not defined.** § 1985(3), a plaintiff must allege the defendants conspired together for the purpose of depriving her of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based invidiously discriminatory animus. **Error! Bookmark not defined.** *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). To succeed on this claim, a plaintiff must allege both that the alleged conspiracy was motivated by discriminatory animus against an identifiable protected class such as race or gender, and that the discrimination against the identifiable class was harmful. **Error! Bookmark not defined.** *Id.* Relative to a **Error! Bookmark not defined.** 42 U.S.C. § 1985 claim, a plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." **Error! Bookmark not**

---

[6] <u>See</u> <u>also</u> **Error! Bookmark not defined.** *Buster v. City of Cleveland*, No. 1:09-cv-1953, 2010 U.S. Dist. LEXIS 4696, *26 (N.D.Ohio Jan. 21, 2010) (dismissing conspiracy claim under **Error! Bookmark not defined.** § 1985 where plaintiff "ma[de] only conclusory allegations that the Defendants acted in concert and ... failed to include specific allegations" supporting the alleged conspiracy).

[7] Indeed, his claim could not be based upon 42 U.S.C. § 1985(2). "The phrase `court of the United States' in [42 U.S.C. § 1985(2)], refers only to Article III courts and certain federal courts created by act of Congress, but not to state courts." *Hicks v. Bryan Med. Grp., Inc.*, 287 F. Supp.2d 795, 813 (N.D.Ohio 2003), <u>citing</u> *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1035 n. 2 (11th Cir.2000); <u>see</u> <u>also</u> *Fox v. Mich. State Police Dep't*, 173 Fed. Appx. 372, 376 (6th Cir. 2006).

defined.*Kush v. Rutledge*, 460 U.S. 719, 726 (1983); **Error! Bookmark not defined.***Collyer v. Darling*, 78 F.3d 211, 233 (6th Cir. 1996)); **Error! Bookmark not defined.***Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993). Carr alleges neither element. As such, his 42 U.S.C. § 1985 claim fails as a matter of law.

2. <u>Plaintiff's state law claim for conspiracy fails</u>.

Carr also presents a state law claim that "Defendants conspired to maliciously prosecute Plaintiff, by providing false and misleading information in official reports and affidavits …." Doc. 1, PageID# 10, Compl. ¶82.[8] Thus, the underlying tort alleged is malicious prosecution.

A civil conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co*. (1995), 72 Ohio St.3d 415, 419, 1995 Ohio 61, 650 N.E.2d 863 (1995). Thus, to establish a claim of civil conspiracy, plaintiff must allege: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Id*.

In explaining the fourth element, Ohio courts have observed that "A claim for conspiracy cannot be made [the] subject of a civil action unless something is done which, in the absence of the conspiracy allegations, would give rise to ***an independent cause of action***." *Davis v. Clark Cty. Bd. of Comm'rs*, 2013 Ohio 2758, ¶20 (12th Dist.)(emphasis added). "[A]n underlying ***unlawful act is required*** before a civil conspiracy claim can succeed." *Davis*, <u>quoting</u> *Williams v. Aetna Fin. Co*., 83 Ohio St.3d 464, 475, 1998 Ohio 294, 700 N.E.2d 859 (1995). "[T]here must be a ***viable*** claim distinct from the conspiracy in order for the conspiracy claim to survive." *Bradigan v.*

---

[8] Plaintiff's Complaint also says "and by otherwise conspiring to violate his civil rights," but this is simply a duplication of the claim contained in Complaint ¶81 and it's subject to the same standards.

*Strongsville City Schs*, 2007-Ohio-2773, ¶28 (8th Dist.), <u>discr. app. over'd</u>, 115 Ohio St.3d 1475, 2007

Ohio 5735, 875 N.E.2d 628; *Walter v. ADT Sec. Sys.*, 2007 Ohio 3324, ¶36 (10th Dist.).

As explained in Section D herein, *infra*, Plaintiff's malicious prosecution claim against

Officer Dodge fails as a matter of law for a number of reasons.  "As such, **the failure of the**

**underlying claims results in the failure of the conspiracy claim**."  *Bradigan* at ¶28 (emphasis

added); <u>see</u> <u>also</u> *Dobra v. Rush Trucking Corp.*, 2007-Ohio-5855, ¶32 (8th Dist.).  There is none here.

### C. Dodge is entitled to judgment as a matter of law on Plaintiff's Fourth Cause of Action for false arrest/false imprisonment.

1. <u>Plaintiff fails to state a claim for false imprisonment</u>.

As a threshold matter, Plaintiff cannot sue any of the law enforcement officers for false

imprisonment.  "[T]he tort of false imprisonment concerns 'purely a matter between private

persons for a private end,' as opposed to a false arrest, which is an unlawful detention 'by reason

of an asserted legal authority to enforce the process of law'."  *Snyder v. United States*, 990 F.

Supp.2d 818, 829 (S.D.Ohio), *aff'd,* 590 F. App'x 505 (6th Cir. 2014), <u>citing</u> *Vasquez–Palafox v.*

*United States,* No. 3:12 CV 2380, 2013 WL 1500472, at *3 (N.D.Ohio Apr. 10, 2013).  Thus, the

false imprisonment claim fails as a matter of law.

2. <u>Since Officer Dodge did not arrest Carr, he can't be liable for false arrest</u>.

 Turning to the false arrest claim, such claims can be brought under either federal or state

law.[9] *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).  Where it is unclear

from the complaint whether a plaintiff intended to bring a federal or a state claim for false arrest,

addressing the standards for both types of claims is appropriate.  *Id.*

---

[9]     In Ohio, a claim for false arrest requires proof of (1) a detention of the person, and (2) an
unlawful detention. *Thacker v. City of Columbus,* 328 F.3d 244 (6th Cir.2003).

"It is axiomatic that a claim against an officer for false arrest must demonstrate, *inter alia,* that the officer took part in the arrest." *Snyder v. United States*, 990 F. Supp.2d 818, 829 (S.D.Ohio), *aff'd,* 590 F. App'x 505 (6th Cir. 2014); <u>see also</u> *Palmer v. Town of Jonesborough*, No. 2:08-CV-345, 2009 WL 1255780, at *6 (E.D.Tenn. May 1, 2009), <u>citing</u> *Sappington v. Bartee,* 195 F.3d 234, 237 (5th Cir.1999)(upholding a determination that if a defendant is not an arresting officer, then a § 1983 false arrest claim does not lie against him). "A false arrest claim under federal law requires a plaintiff to prove that ***the arresting officer*** lacked probable cause to arrest[10] the plaintiff."[11] *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)(emphasis added).

Plaintiff testified that he did not know which person or police department effected his arrest. Andrew Carr depo. at 39, l. 14-25. Derrick Carr believed Plaintiff was arrested by a City of Maple Heights Police Department Detective. Derrick Carr depo. at 34, l. 8-14.[12] In any event, Officer Dodge did <u>not</u> arrest Plaintiff. *Dodge Declaration.* There is no evidence to the contrary.

### D. Dodge is entitled to judgment as a matter of law on Plaintiff's Fifth Cause of Action for malicious prosecution under state law.

"To prevail on a claim of malicious prosecution, under both federal and state law, a plaintiff must establish the lack of probable cause." *Davis v. McKinney*, 422 F. App'x 442, 443 (6th Cir.

---

[10] "A warrantless arrest by a law officer is reasonable under the Fourth Amendment if, given the facts known to the officer, there is probable cause to believe that a crime has been or is being committed." *Gill v. Kovach*, 729 F. Supp. 2d 925, 932 (N.D.Ohio 2010), <u>citing</u> *Devenpeck v. Alford,* 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

[11] "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

[12] "When Andrew came down the steps, he handcuffed him and stuff. Then once the smoke started clearing, I think two or three officers came inside. One I recognized as being a detective from Maple Heights. I think he was the person who handcuffed Andrew and stuff. I was already handcuffed."

2011).  In Ohio, "the elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) **lack of probable cause**, and (3) termination of the prosecution in favor of the accused." *Rogers v. Barbera,* 170 Ohio St. 241 syllabus ¶1, 164 N.E.2d 162 (1960) (emphasis added).  All three elements must be shown in order for a private person who initiates or procures institution of criminal proceedings against another to be subject to liability. *Ash v. Ash,* 72 Ohio St.3d 520, 522, 651 N.E.2d 945 (1995).

"As a general rule, 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.'" *Sanders v. Jones*, 728 F. App'x 563, 565 (6th Cir. 2018), <u>citing</u> *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015)(<u>quoting</u> *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)); <u>see also</u> *McKinney* at 443.

On or about May 9, 2016, Carr was indicted by a Cuyahoga County grand jury for three counts of felonious assault—a violation of R.C. § 2903.11(A)(2).  <u>See</u> *Exhibit B*.  As such, Officer Dodge is entitled to judgment as a matter of law on this basis alone.

Additionally, Officer Dodge was not contacted by the Cuyahoga County Prosecutor regarding Plaintiff, had no role in the decision to prosecute Carr for felonious assault, and did not testify before the Cuyahoga County grand jury.  *Dodge Declaration*.  There is no evidence whatsoever to the contrary.  "We have long held that a police officer who did not make the decision to prosecute cannot be held liable for malicious prosecution." *Halasah v. City of Kirtland, Ohio*, 574 F. App'x 624, 631 (6th Cir. 2014), <u>citing</u> *Skousen v. Brighton High Sch*., 305 F.3d 520, 529 (6th Cir. 2002).  This is yet another independent basis upon which the state law malicious prosecution claim must be dismissed against Officer Dodge.

**IV.    Conclusion**

City of Garfield Heights Patrol Officer and SEALE team member Ron Dodge is entitled to qualified immunity. Accordingly, his Motion for Summary Judgment should be **granted** and Plaintiff's Complaint against him **dismissed with prejudice**.

Respectfully submitted,

*/s/ John D. Latchney*
_____
John D. Latchney (0046539)

## CERTIFICATE OF SERVICE

Counsel have been notified of this filing via the U.S. District Court's ECF System at the e-mail addresses listed on the system on this 14th day of September 2018.

*/s/ John D. Latchney*
_____

John D. Latchney (0046539)