IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| | ) | CASE NO. 1:17-cv-00620 |
| ANDREW CARR | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE: DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| DETECTIVE ALFRED JOHNSON, *et al* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORDANUM IN OPPOSITION TO DEFENDANT
ALFRED JOHNSON'S MOTION FOR SUMMARY JUDGMENT**

Now comes Plaintiff, Andrew Carr, by and through his undersigned counsel, who hereby submits this Memorandum in Opposition to Defendant Alfred Johnson's Motion for Summary Judgment and respectfully moves this Honorable Court for an order denying Defendant Alfred Johnson's Motion for Summary Judgment.

No reasonable jurist, or officer, would have found this search warrant to be founded upon probable cause where it fails to state a single criminal action happening within the address to be searched. Under these circumstances, Defendant Johnson is not entitled to qualified immunity nor immunity pursuant to R.C. 2744.03(A)(6).

WHEREFORE, Plaintiff prays this Honorable Court denying Defendant Alfred Johnson's Motion for Summary Judgment.

Respectfully submitted,

By: /s/ Joseph C. Patituce
Joseph C. Patituce (#0081384)
Megan M. Patituce (#0081064)
Patituce & Associates, LLC.
26777 Lorain Road, Suite 1
North Olmsted, Ohio 44070

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................ iii

I.      Introduction ............................................................................................................1

II.     Andrew Carr's civil rights were violated when Detective Johnson put an unconstitutional
        search of 19409 Milan Drive into motion ...........................................................1

        a.    Andrew Carr's claims are not a collateral attack because the State of Ohio
              dismissed the proceedings after hearing Detective Johnson's testimony ................2

        b.    There was no nexus between criminal activity and 19409 Milan Drive and the
              search warrant was facially defective ....................................................................3

III.    Defendant is simply not entitled to qualified immunity because no reasonably competent
        officer would have concluded the warrant should issue and, therefore, Defendant Johnson
        is not entitled to the shield of immunity ...........................................................8

IV.     Defendant Johnson's reckless and wanton conduct is not entitled to immunity pursuant to
        R.C. 2744.03(A)(6) ............................................................................................15

V.      Conclusion ............................................................................................................20

Certificate of Service ....................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)  .......................................9

*Anderson v. Creighton*, 483 U.S. 535, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ...........................9

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)  ...........................9

*Brady v. Maryland*, 373 U.S. 83 (1963)  .....................................................................................14

*Caruso v. State*, 136 Ohio App. 3d 616, 737 N.E.2d 563 (Ohio App. Ct. 2000)  ........................16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ......................................................................1

*Franks v. Delaware*, 438 U.S. 254 (1978) .............................................................................4, 12

*Fry v. Robinson*, 678 Fed. Appx. 313 (6th Cir. 2017)  ..................................................................1

*Gill v. Kovach*, 729 F.Supp.2d 925 (N.D.Ohio 2010)  ...................................................15, 16, 19

*Gray v. Cuyahoga Cty. Sheriff's Dep't*, 150 F.3d 579  (6th Cir. 1998) .......................................14

*Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977)  .......................................................16

*Heck v. Humphrey*, 512 U.S. 477 (1994)  .....................................................................................3

*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)  ..................................3, 4

*Kalain v. Smith*, 25 Ohio St.3d 157, 159 n.1, 25 Ohio B. 201, 495 N.E.2d 572 (1986) ......... 15-16

*Malley v. Briggs*, 475 U.S. 335 (1986)  ......................................................................................11

*Mays v. Dayton*, 134 F.3d 809 (1998)  .........................................................................................7

*Messerschmidt v. Millender*, 565 U.S. 535, 132 S.Ct. 1235 (2012)  ........................8, 9, 10, 11, 12

*Nathanson v. U.S.*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) .............................................4

*Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987)  .................................................15

*Sanders v. Jones*, 728 Fed.Appx. 563 (6th Cir. 2018) ...........................................................13, 14

*United States v. Besase*, 521 F.2d 1306 (6th Cir. 1975) ...............................................................7

*United States v. Brown*, 828 F.3d 375 (6th Cir.2016) ....................................................................4

*United States v. Carpenter*, 360 F.3d 591 (6th Cir.2004) .............................................................4

*United States v. Leon*, 468 U.S. 897, 914 (1984) ..........................................................................4

*Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) .........................7

## **CODE SECTIONS**

O.R.C. 2744.03 ....................................................................................................................15, 19, 20

O.R.C. 3314.07 ..................................................................................................................................15

O.R.C. 3746.24 ..................................................................................................................................15

## **OTHER AUTHORITIES**

Civ. R. 56 ...........................................................................................................................................1

OH Crim. R. 52...............................................................................................................................16

## I.    Introduction

Defendant Johnson is not entitled to summary judgment in this matter.  Civil Rule 56 provides that in cases where the movant can demonstrate that there is "no genuine dispute as to any material fact" the movant will be entitled to judgment as a matter of law.  The movant is entitled to such judgment where it can demonstrate that the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  *Id.*

In reviewing a movant's motion for summary judgment, the court "must view the facts and draw all reasonable inferences 'in the light most favorable' to the nonmoving party."  *Fry v. Robinson*, 678 Fed. Appx. 313 (6th Cir. 2017).  In this case, Defendant Johnson has moved for summary judgment on several grounds.  As to each claim, Defendant Johnson's Motion for Summary Judgment must fail.  Viewing the facts in the light most favorable to Andrew Carr, there are genuine disputes as to material facts.  Those disputes are set forth more fully *infra*, and, for those reasons, Defendant Johnson's Motion for Summary Judgment should be denied.

## II.    Andrew Carr's civil rights were violated when Detective Johnson put an unconstitutional search of 19409 Milan Drive into motion.

Defendant Johnson's position as to Andrew Carr's civil rights claim is two-fold: (1) the claim is barred as a collateral attack, and (2) that Defendant Johnson had probable cause to proceed. Both arguments are legally and factually flawed.

1

A. Andrew Carr's claims are not a collateral attack because the State of Ohio dismissed the proceedings after hearing Detective Johnson's testimony.

As to the alleged "collateral attack," Defendant Johnson claims that this case is "essentially a collateral attack on the probable cause determination" and should, therefore, be prohibited because it would "stand in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Def. Johnson Motion, p6. In support of his position, Defendant Johnson cites to *Heck v. Humphrey* and makes unfounded allegations regarding "criminal tools, including firearms, seized by the Cleveland Police as part of an ongoing investigation into the Heartless Felons gang." Def. Johnson Motion, p6. The whole of Defendant Johnson's argument is factually and legally disingenuous.

Defendant Johnson alleges a seizure of firearms seized as part of the ongoing Heartless Felons investigation. The truth is that law enforcement seized lawfully owned firearms which were registered to the Carrs and has refused to return the firearms, despite the fact that they have absolutely no evidence to support that they were illegally obtained or possessed. Defendant Johnson's allegation otherwise seeks to impart criminality where there was none. The search conducted as a result of Defendant Johnson's unconstitutional search warrant yielded no evidence that firearms were being supplied to or stored for the Heartless Felons gang at the 19409 Milan Drive home.

Likewise, Defendant Johnson's allegation that a ruling in favor of Andrew Carr would create "two conflicting resolutions" is unsupported. The indictment returned against Andrew Carr as a result of Defendant Johnson's unconstitutional search warrant were ultimately dismissed upon motion of the State after the State determined that Andrew Carr had a legitimate defense. Ex. A, Dismissal TR, p107. A verdict in favor of Andrew Carr would, in no way, create a conflict with the State's dismissal of the criminal charges.

2

Defendant Johnson cites to *Heck* arguing against "parallel litigation over the issues of probable cause and guilt." Def. Johnson Motion, p.6. In this case, Andrew Carr's guilt has been resolved in his favor. This is, in fact, the exact situation contemplated in *Heck*, wherein the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that" he is no longer the subject of a conviction regarding the underlying matter. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In this case, Andrew Carr was never convicted. As the Court set forth in *Heck*, he may proceed with his claims pursuant to §1983. As the instant case is not a collateral attack, Defendant Johnson's claim that he is entitled to summary judgment on that basis must fail.

> B. <u>There was no nexus between criminal activity and 19409 Milan Drive and the search warrant was facially defective.</u>

In this case, Defendant Johnson's search warrant was not supported by probable cause. The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In reviewing warrants, the determination of the judge or magistrate "should be paid great deference by reviewing courts" and reviewed in a common-sense manner. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A totality of the circumstances analysis should be utilized in determining whether the magistrate had a substantial basis to believe the search would lead to evidence of criminal acts. *Id.* at 236, 238. "The job of the magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit… there is a fair probability that contraband or

3

evidence of a crime will be found in a particular place." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir.2016), *citing Gates*, 462 U.S. at 238. "There must, in other words, be a *nexus* between the place to be searched and the evidence sought." *Id. citing United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004) (en banc). Conclusory statements are not sufficient. *Gates*, 462 U.S. at 239, *see also Nathanson v. U.S.*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*. There must be a "specific and concrete" connection as opposed to one that is vague or generalized. *Brown*, 828 F.3d at 382. "[C]ourts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued" to ensure that magistrates do not abdicate their role, because "whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the circumstances presented." *Gates*, 462 U.S. at 239; *Brown*, 828 F.3d at 382.

Deference to a magistrate's findings, however, "does not preclude inquire into the knowing or reckless falsity of the affidavit on which that determination was based." *United States v. Leon*, 468 U.S. 897, 914 (1984) *citing Franks v. Delaware*, 438 U.S. 254 (1978). The magistrate must be functioning in a "neutral and detached" manner and may "not serve merely as a rubber stamp for the police." *Id. citing Aguilar v. Texas*, 378 U.S. 108 (1964). Further, deference will not be paid when a warrant is "based on an affidavit that does not' provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.*, at 915 *citing Illinois v. Gates*, *supra*.

In support of his Motion for Summary Judgment, Defendant Johnson points to "facts" supporting the probable cause determination including: (1) Michael Menefield's drug-related

4

criminal history; (2) the fact that Michael Menefield was a co-defendant of a "known" Heartless Felons gang member; (3) Michael Menefield's social media activity; and (4) the fact that multiple law enforcement databases listed 19409 Milan as his address.  Def. Johnson Motion, p.8.  These "facts" however, are insufficient to establish probable cause.  First, and most glaringly, is that Defendant Johnson's facts are incredibly stale.  Michael Menefield's criminal conviction, which accounts for Defendant Johnson's first two points, originated in 2014.  Ex. B.

Defendant Johnson's third point, Michael Menefield's social media accounts, may be evidence that Michael Menefield was in illegal possession of a firearm, but not that he was running guns out of 19409 Milan Drive for the Heartless Felons Gang.  By Defendant Johnson's own admissions, the social media pictures in question were of Michael Menefield possessing firearms in a vehicle or at a shooting range, and there were no pictures of Michael Menefield in possession of any firearms at 19409 Milan Drive.  Ex. C., MTS TR, p65-66, 75, 76.  Further, Defendant Johnson could only establish, via the social media pictures, one day in 2016 in which Michael Menefield was in a possession of a firearm and, on that day, Michael Menefield was not at 19409 Milan Drive.  Ex. C., MTS TR, p74.

Finally, Defendant Johnson's assertion that multiple law enforcement databases indicated Michael Menefield resided at 19409 Milan Drive is disingenuous in that it omits the fact that those databases also listed additional addresses for Michael Menefield.  Defendant Johnson conceded that the databases also listed other addresses; that he did no investigation into those addresses; and that he did not disclose the existence of other addresses to Judge Astrab.  Ex. C., MTS TR, p.76, 78, 81-82.  Police agencies had Michael Menefield's addresses listed at a different address. Ex. C., MTS TR, pg. 40-41. Moreover, the Cuyahoga County Court of Common Pleas listed additional, different, addresses from the detective's "database".  Ex. C., MTS TR, p. 41-42.

Importantly the State of Ohio, in the matter below, stipulated that for the years 2012, 2014, and 2016 that Michael Menefield listed his address as 19321 Milan Drive in Maple Heights, not 19409 Milan Drive.  Ex. C., MTS TR, p. 67.  The Detective testified further that Michael Menefield did not live at 19409 Milan Drive.  Ex. C., MTS TR, p.71.  Shockingly, Detective Johnson testified that it is not uncommon for people he is investigating to use multiple different addresses.  Ex. C., MTS TR, p.72.  Detective Johnson armed with this information did not share any of it with Judge Astrab. Ex. C., MTS TR, p.76, 78, 81-82.  The trial court inquired, directly, on this matter in the following exchange:

> THE COURT: I have a question. Detective, I'm sure you've mentioned it but I just want to clarify it for my understanding. When was the last time period that you understood Michael Menefield was living at or you believe weapons were stored at 19409 -- the address we've been focusing on as a result of this search warrant?
>
> THE WITNESS: This had to be approximately January of 2016. Ex. C., MTS TR, p.78-79, 81-82.

The search warrant was obtained and executed in April 2016, four months after Detective Johnson last purportedly believed weapons to be found in the home.  The last time Detective Johnson spoke to his confidential informant was in "December 2015 or January 2016."  Ex. C., MTS TR, p. 81-82. Detective Johnson, and the other defendants, were aware that Michael Menefield might come out of another address on Milan and positioned units there accordingly.  Ex. C., MTS TR, p.88. The fact that they positioned themselves in front of another location demonstrates that they knew there was no connection to the address where this warrant was executed and they merely wanted to find Michael Menefield.

Defendant Johnson argues that, based on the totality of the circumstances, there was sufficient probable cause to support the warrant.  Defendant Johnson, however, notes that the only facts Judge Astrab considered were those within the affidavit.  Ex. C., MTS TR, p.78.  Detective

6

Johnson did not inform Judge Astrab that there were different addresses associated with Michael Menefield. Ex. C., MTS TR, p.58-59. That affidavit contained absolutely no evidence of criminal activity at 19409 Milan Drive. Detective Johnson concedes, and even agrees, that none of the illegal conduct described in the relevant portions of the search warrant occurred at 19409 Milan Drive. Ex. C., MTS TR, p. 60. It was premised upon social media picture of a guy who had previously committed a crime (Michael Menefield) in a vehicle and at a shooting range in possession of a firearm and the unreliable word of an undisclosed informant that the bad guy might live at 19409 Milan Drive. This is wholly insufficient "evidence" to constitute probable cause for the search of the home at 19409. In fact, Defendant Johnson conceded that his search warrant contained no information regarding firearms at 19409 Milan Drive. Ex. C., MTS TR, p.63-64, 65.

As noted by Defendant Johnson and the Sixth Circuit, "the specificity required by the Fourth Amendment is *not* as to the person against whom the evidence is to be used, but rather as to the place to be searched and the thing to be seized." *Mays v. Dayton*, 134 F.3d 809, 814 (1998) *citing United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975). In "reviewing an application, courts must bear in mind that search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *Id. citing Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). In the instant case, Defendant Johnson may have had probable cause for an arrest warrant for Michael Menefield, but, by his own admissions, he had no evidence regarding criminal activity at 19409 Milan Drive.

Detective Johnson places a huge amount of his faith, and his stake in this matter, into a confidential informant who is not relevant at all to the case before this Honorable Court because he failed to make any reference to the informant in his warrant, or to Judge Astrab. Ex. C., MTS

TR, p. 78.   However, for the sake of argument even if the confidential informant was to be considered Detective Johnson has already conceded that at the time of the warrant the confidential informant was not considered reliable.  Ex. C., MTS TR, p. 63.  Detective Johnson concedes that nothing contained in the search warrant indicates that any weapons, legal or illegal, were being stored at 19409 Milan Drive by Michael Menefield.  Ex. C., MTS TR, p 63-64. Detective Johnson concedes that there is not a single paragraph contained within the search warrant that indicates Michael Menefield had a firearm at the listed address.  Ex. C., MTS TR, p.65. There were no videos or other evidence showing that Michael Menefield had a firearm at the listed address in 2016.  Ex. C., MTS TR, p.66.

Reviewing the facts in the light most favorable to Andrew Carr, Defendant Johnson did not have probable cause for the search warrant of 19409 Milan Drive.  The affidavit, which is the only thing reviewed by Judge Astrab, contained, by Defendant Johnson's own admission, no evidence related to illegal firearms within the home located at 19409 Milan Drive.  Detective Johnson and other defendants intentionally placed other officers at other locations because they were looking for Michael Menefield. Truly, at the SWAT briefing Defendants made it clear they "were looking for Michael Menefield" but searching a 19409 Milan Drive.  Ex. C., MTS TR, p.92.  For these reasons, Defendant Johnson's Motion for Summary Judgment should be denied.

### III.   Defendant is simply not entitled to qualified immunity because no reasonably competent officer would have concluded the warrant should issue and, therefore, Defendant Johnson is not entitled to the shield of immunity.

Defendant Johnson's actions do not entitle him to qualified immunity in this case.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Messerschmidt v. Millender*, 565 U.S. 535, 546,

132 S.Ct. 1235, 182 L.Ed.2d 47 (2012). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Id. citing Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id. citing Anderson v. Creighton*, 483 U.S. 535, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

As to violations of the Fourth Amendment, the fact that a neutral magistrate signed the warrant is a factor in favor of an officer's "objective reasonableness," but not the end of the inquiry. *Id.* at 546-47. Where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," the "shield of immunity" is lost. *Id.* For example, where affidavits are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the shield of immunity will be lost. *Id.* at 547.

In this case, Defendant Johnson argues that his reliance upon the warrant was reasonable. This position is highly suspect as, by Defendant Johnson's own admission, there was no evidence listed within the warrant as to illegal firearms or other criminal activity within the home located at 19409 Milan Drive. p 63-64, 65.

Defendant Johnson points to the involvement of a prosecutor in the drafting of his warrant. Def. Johnson Motion, p11. Unlike in *Messerschmidt*, however, the prosecutor did not sign off on the warrant and affidavit. In *Messerschmidt*, the warrant was reviewed and signed off on by two superior officers and a deputy district attorney prior to being submitted to the magistrate for review. *Messerschmidt*, at 543. In this case, Defendant Johnson merely sought the advice of a prosecutor

and then "incorporated the suggested changes into his affidavit." Def. Johnson Motion, p11. The prosecutor did not sign off on the warrant prior to its submission to Judge Astrab. This is a stark contrast to the facts in *Messerschmidt*.

Defendant Johnson relies heavily on the *Messerschmidt* decision to support his claim of qualified immunity. The facts, however, are not as similar as Defendant Johnson postures. As noted, the officer in *Messerschmidt* sought the express approval of two superior officers and a deputy district attorney prior to submitting his warrant to the magistrate. That warrant included two affidavits. *Id.*, at 542. The first affidavit set forth the officer's experience and training. *Id*. The second affidavit set forth the facts of the underlying assault including the identification of the suspect, the firearm, and the suspect's location, as relayed by the identified victim. *Id.* Further, the officer set forth the "extensive background search on the suspect [which had] utilized departmental records, state computer records, and other police agency records" which led him to determine the location of the suspect. *Id.*

In contrast to the affidavits in *Messerschmidt*, Defendant Johnson's affidavit contained absolutely no facts as to criminal activity within the residence at 19409 Milan Drive. Defendant Johnson lists absolutely no facts that established criminal activity was happening around 19409 Milan Drive. Defendant Johnson listed absolutely no facts that establish that there were illegal firearms at 19409 Milan Drive. Ex. C., MTS TR, p65-66.

No reasonable police officer would have relied upon a magistrate's signature upon this search warrant. Ex. D., Stoughton Report. As described above at no place within the search warrant's twenty-five paragraphs is there any evidence of criminal activity occurring in the location to be searched. Ex. E, Search Warrant. Paragraphs one through ten of the search warrant all deal with unrelated conduct that happened in 2014, two full years before this warrant was

signed. Ex. C., MTS TR., p.57; Ex. E, Search Warrant. Paragraphs eleven through fifteen deal with conduct that purportedly occurred in 2015, a full year to five months prior to the search warrant being signed in this matter. Ex. C., MTS TR., p.57; Ex. E, Search Warrant. Paragraphs eighteen through twenty-five are generalized, boiler plate, statements that are contained in multiple other search warrants. Ex. C., MTS TR., p.57-58; Ex. E, Search Warrant. Paragraph sixteen, taken on its face, merely states that a video was posted on April 9, 2016, purportedly showing Michael Menefield driving a vehicle with weapons. Ex. E, Search Warrant, paragraph 16. This paragraph does not establish when the video was actually taken, nor does it show any nexus between the address to be searched and criminal conduct. Paragraph seventeen also alleges that Michael Menefield was at a shooting range at some point with a video posted on April 9, 2016. Ex. E, Search Warrant, paragraph 17. This paragraph does not establish when Michael Menefield was at a gun range, nor does it establish in any way that criminal conduct was occurring inside the location to be searched.

Ordinarily, an officer is not expected to question a neutral magistrate's determination as to probable cause. *Id.* However, the question remains as to "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Malley v. Briggs*, 475 U.S. 335, 345 (1986). In the alternative, "whether a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* "If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest." *Id.*

"[I]n an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it." *Id.* "But ours is not an ideal system, and it is possible that a magistrate,

11

working under docket pressures, will fail to perform as a magistrate should." *Id.*, at 345-46.  For these reasons, the United States Supreme Court has found "it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." *Id.,* at 346.

Judge Astrab was not a neutral magistrate as contemplated by *Franks* or *Messerschmidt*. As a preliminary matter Judge Astrab's daughter was a legitimate victim of the Heartless Felon gang's criminal enterprise; specifically, the group outrageously threatened his daughter's life.  Ex. C., MTS TR., p.44-46.  The Heartless Felons made one of the most horrific threat that any father can suffer through, they specifically named Judge Astrab's daughter and then threatened her.  Ex. C., MTS TR., p.44-46.  This threat came from a member of the Heartless Felons whom had actually been convicted of breaking into a female's home in Shaker Heights.  Ex. C., MTS TR., p.44-45; Ex. F, Astrab Depo.  The vast majority of the paragraphs in the search warrant in this matter involve allegations arising out of conduct of the Heartless Felons. Ex. E, Search Warrant. Detective Johnson was aware from his prior work on the matter in which Judge Astrab's daughter was threatened that the Heartless Felons were involved in both matters.  Ex. C., MTS TR., p.44-46.  No reasonable person, nor reasonable officer, would believe that Judge Astrab was a neutral and detached magistrate for the purpose of signing this warrant.

In evaluating whether or not a magistrate is neutral and detached we need to also look at whether or not a reasonable jurist would conclude that there is probable cause on the face of the warrant.  As described above not a single paragraph contained within the search warrant contains a shred of evidence that criminal activity happened within the walls of 19409 Milan Drive.  Ex. C., MTS TR., p.65-66; Ex. E, Search Warrant.

Defendant Johnson argues that he did not make false statements nor did he withhold material information.  Defendant Johnson concedes he left facts out, but claims those additional facts would have "strengthen[ed] rather than weaken[ed] the judge's finding of probable cause." Def. Johnson Motion, p14.  This, however, is unsupported by the facts in this case.

In this matter, as litigated below, there were two glaring problems with the search warrant (1) did the warrant even contain a shred of probable cause to believe there was a nexus between the home and criminal conduct; and (2) did Michael Menefield even live in the home listed in the search warrant.  Ex. C., MTS TR., p.63-66, 79.  Detective Johnson testified that he withheld important information relating to this second issue from Judge Astrab.  Ex. C., MTS TR., p.78. Detective Johnson testified clearly, and concisely, that Judge Astrab only had what was contained on the face of the search warrant.  Ex. C., MTS TR., p.78.  Detective Johnson did not present Judge Astrab with the other addresses associated with Michael Menefield.  Ex. C., MTS TR., p.78. Detective Johnson was aware of these other addresses.  Ex. C., MTS TR., p.81.  Detective Johnson, and the other defendants, even had Maple Heights officers setup in front of another address on this street because they believed Menefield may have been found there.  Ex. C., MTS TR., p.92. Detective Johnson never informed Judge Astrab that the did not personally observe Michael Menefield living in the home.  Ex. C., MTS TR., p.78.

In *Sanders v. Jones*, the Sixth Circuit considered the seriousness of omissions.  *Sanders v. Jones*, 728 Fed.Appx. 563 (6th Cir. 2018).  In *Sanders*, the officer reviewed a video of a drug transaction while preparing a search warrant and concluded that the suspect on the video did not look like the individual for which he prepared the warrant.  *Id*., at 566.  The officer, however, omitted this information from the warrant.  *Id.*  The Sixth Circuit, taking the facts in the light most favorable to the plaintiff, concluded that a jury could infer that the officer "knew or strongly

suspected from viewing the video that the person who sold the confidential informant the drugs was not Sanders, or at least, did no look like Sanders." *Id.*

The question in *Sanders* was "whether [the officer] 'acted with something akin to deliberate indifference in failing to ascertain that [the plaintiff]…was not the person wanted.'" *Id. citing Gray v. Cuyahoga Cty. Sheriff's Dep't*, 150 F.3d 579, 582-83 (6th Cir. 1998). The Sixth Circuit concluded that there was a genuine issue of material fact "as to whether [the officer] recklessly misidentified Sanders as the person who sold drugs to the confidential informant." *Id.* As there was a genuine issue of material fact, the Sixth Circuit held that summary judgment was inappropriate.

The *Sanders* case is similar to the facts in this case. Detective Johnson was not really interested in searching the home for criminal gang activity but he was interested in finding Michael Menefield. Ex. C., MTS TR., p.92. Detective Johnson was aware that there were other addresses associated with Michael Menefield and kept this information from Judge Astrab. Ex. C., MTS TR., p.78. Detective Johnson acted with both deliberate indifference and reckless disregard when he omitted from his search warrant, and failed to provide to Judge Astrab information that made an already weak search warrant even weaker.

Defendant Johnson alleges that Andrew Carr's assertion in this case "dangerously smacks of a *Brady* challenge, which does not apply in warrant context and only applies in the context of a criminal trial." Def. Johnson Motion, p14. This assertion is misguided. *Brady* imposes a burden on the government to produce materially exculpable evidence. *Brady v. Maryland*, 373 U.S. 83 (1963). The case is inapplicable here, as Andrew Carr is not alleging that the State withheld material evidence in his case. The allegations in this case stem from Defendant Johnson's conduct

14

before a criminal case had been initiated against Andrew Carr.  As the Sixth Circuit noted in *Sanders*, material omissions create a genuine issue of material fact for a jury.

**IV.  Defendant Johnson's reckless and wanton conduct is not entitled to immunity pursuant to R.C. 2744.03(A)(6).**

Defendant Johnson's claim of immunity pursuant to R.C. 2744.03(A)(6) must fail as Defendant Johnson conduct is subject to the exceptions set forth.  Revised Code 2744.03(A)(6) states that "in addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

> (a)     The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b)     The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c)     Civil liability is expressly imposed upon the employee by a section of the Revised Code.  Civil liability shall no be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued or because the section uses the term "shall" in a provision pertaining to an employee.

In this case, Defendant Johnson is not entitled to immunity under R.C. 2744.03(A)(6).

The decision in *Gill v. Kovach* sets forth the definitions as utilized by R.C. 2744.03(A)(6). *Gill v. Kovach*, 729 F.Supp.2d 925, 943-44 (N.D.Ohio 2010).  Malice is defined as "that state of mind under which a person's conduct is characterized by hatred ill will or a spirit of revenge" or "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Id. citing Preston v. Murty*, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174 (1987).  "Bad faith is 'a dishonest purpose, conscious wrongdoing or breach of a known duty by some ulterior motive or ill will characterized by fraud.'"  *Id.*, at 944 *citing Kalain v. Smith*, 25

15

Ohio St.3d 157, 159 n.1, 25 Ohio B. 201, 495 N.E.2d 572 (1986).  "Wanton conduct is the failure to exercise any care whatsoever toward one to whom a duty of care is owed under the circumstances in which there is a great probability of resulting harm."  *Id. citing Hawkins v. Ivy*, 50 Ohio St.2d 114, 117-18, 363 N.E.2d 367 (1977).  "An act is committed recklessly if it is done 'with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than necessary to make the conduct negligent."  *Id. citing Caruso v. State*, 136 Ohio App. 3d 616, 621, 737 N.E.2d 563 (Ohio App. Ct. 2000).

Officers engaged in their official duties are granted a presumption of immunity and the plaintiff must overcome that presumption with sufficient evidence.  *Id.*  In this case, Defendant Johnson claims to have been "acting within the scope of his employment" and that his "investigation was entirely reasonable and approved by both the County Prosecutor's Office as well as the state court."  Def Johnson Motion, p17.  In support of this claim, Defendant Johnson merely states that the record is "devoid of any evidence that his action or omission were with malicious purpose, in bad faith, or in a wanton or reckless manner."  Def Johnson Motion, p17.  Defendant Johnson's allegations are, however, demonstrably false.

It is unclear upon what evidence Defendant Johnson bases his claim that his investigation was "approved" by the County Prosecutor's Office, but the record is clear that is far from the truth.  Although an indictment was issued against Andrew Carr, it was unequivocally dismissed by the County Prosecutor's Office after the shortcomings of Defendant Johnson's investigation were laid bare during the hearing on Andrew Carr's Motion to Suppress.  In fact, the County Prosecutor's Office stated it would have been "inappropriate" to proceed further at that time.  Ex. A, Dismissal TR, p107.

16

Likewise, it is unclear upon what evidence Defendant Johnson bases his claim that his investigation was "approved" by the trial court. The trial court had the discretion to either accept or reject the prosecution's motion to dismiss the indictment. After hearing the evidence set forth at the suppression hearing regarding Defendant Johnson's "entirely reasonable" investigation, the trial court, in its discretion, chose to accept the prosecution's motion to dismiss noting that Andrew Carr no longer had "anything to worry about" in that case. Ex. A, Dismissal TR, p108.

In this case, the prosecution's dismissal of the indictment levied against Andrew Carr makes clear that Defendant Johnson's claims that his "entirely reasonable" investigation were, in fact, not "approved" by the prosecution nor the trial court. Rather, the record makes clear that Defendant Johnson's investigation was anything but "entirely reasonable." Defendant Johnson was aware that Michael Menefield could be residing at other locations, but failed to conduct an investigation to confirm at which address he was residing and failed to conduct an investigation as to whether he was engaged in criminal activity at the address. Ex. C, MTS TR**,** p. 76. Instead, Defendant Johnson merely asked the confidential informant to point out the home, despite the fact that the confidential informant had not been deemed reliable. Ex. C, MTS TR, p62, 76. The confidential informant upon which Defendant Johnson relied had only worked with law enforcement on two previous occasions and had not provided information to law enforcement long enough to be considered reliable. Ex. C, MTS TR, p62-63. It is not "entirely reasonable" to rely upon an individual upon whom you cannot rely.

Defendant Johnson chose to rely upon an unreliable individual instead of conducting an independent investigation. Defendant Johnson did not conduct any trash pulls at 19409 Milan Drive. Ex. C, MTS TR, p 53-55. Defendant Johnson did not obtain the IP information associated with the social media accounts he attributed to Michael Menefield. Ex. C, MTS TR, p55.

17

Defendant Johnson did not investigate the other addresses associated with Michael Menefield and did not advise Judge Astrab that there were multiple addresses associated with Michael Menefield. Ex. C, MTS TR, 78.  Defendant Johnson did not conduct surveillance on 19409 Milan Drive to confirm that illegal activity was, in fact, occurring within the home.  Ex. C, MTS TR, p 48, 53.  In fact, the only surveillance Defendant Johnson conducted on one occasion resulted in him observing a male allegedly fitting Michael Menefield's description entering and exiting the home, but Defendant Johnson was unable to confirm whether that was, in fact, Michael Menefield or whether it was one of any number of black males who live and work in Maple Heights, Ohio.  Ex. C, MTS TR, p53.  Further, his "surveillance" netted him no observations of illegal activity at 19409 Milan Drive.

Defendant Johnson stated that he merely questioned his confidential informant, who told him that Michael Menefield was engaged in criminal activity at the home.  Ex. C, MTS TR p76.  Defendant Johnson admitted the information he obtained from reports and the confidential informant indicated Michael Menefield may have been living at the home as of December 2015 or January 2016.  Ex. C, MTS TR, p79, 81-82.  Detective Johnson's information was stale, but he did nothing to ensure it was still accurate and failed to disclose the shortcomings in his investigation to Judge Astrab.  Ex. C, MTS TR, p78.

Defendant Johnson's investigation consisted of observing pictures of Michael Menefield on social media in which Michael Menefield was in possession of firearms in a vehicle or at a shooting range, but agreed there were no pictures of Michael Menefield in possession of any firearms at 19409 Milan Drive.  Ex. C, MTS TR, p65-66, 75, 76.  Defendant Johnson conceded the search warrant contained no information regarding firearms at 19409 Milan Drive.  Ex. C, MTS TR, p 63-64, 65.

18

Nothing about Defendant Johnson's investigation was "entirely reasonable." Rather, Defendant Johnson acted with wanton disregard and in a reckless manner. In this case, Defendant Johnson failed to exercise any care whatsoever and created a situation in which there was a great probability of harm. Further, he acted knowing or having reason to know that would make a reasonable person believe he was creating an unnecessary risk. Defendant Johnson's actions put every individual in the home and every member of the law enforcement team at the scene in danger. By his own admissions, he failed to conduct a thorough investigation. Instead, Defendant Johnson relied upon the word of an untested informant and stale information.

Defendant Johnson's failure to conduct a legitimate investigation created a situation in which someone could have been grievously injured or killed. Defendant Johnson took stale information regarding an alleged gun runner to a judge he knew had been the victim of the Heartless Felons gang. He had no information whatsoever that criminal activity was actually taking place within the home. Instead of conducting a thorough investigation to update stale information, confirm sources, and gather sufficient evidence to sustain a warrant, Defendant Johnson cut corners and took shortcuts. His actions put everyone in jeopardy and led to the arrest of Andrew Carr. Although Andrew Carr's prosecution was subsequently terminated, his losses were a direct result of the wanton and reckless conduct of Defendant Johnson.

Just as in *Gill*, Defendant Johnson is not entitled to summary judgment as a result of statutory immunity pursuant to R.C. 2744.03(A)(6). *Id.* In viewing the facts in the light most favorable to Andrew Carr, genuine issues of material fact exist. As these questions still exist, Defendant Johnson is not entitled to summary judgment. Rather, it is for a jury to determine whether Defendant Johnson engaged in wanton and reckless conduct. For these reasons,

Defendant Johnson's Motion for Summary Judgment pursuant to R.C. 2744.03(A)(6) should be denied.

**V.      Conclusion**

In this case, Andrew Carr has clearly established rights which have been violated.  Further, Defendant Johnson, acting as a reasonable officer, should have known that his conduct would result in a violation of those rights.  Viewing the evidence in the light most favorable to Andrew Carr, Defendant Johnson's search warrant failed to establish probable cause for the search of 19409 Milan Drive.  The execution of that warrant at 19409 Milan Drive constituted an illegal search which violated the civil rights of Andrew Carr.

Defendant Johnson is not entitled to qualified immunity because no reasonably competent officer would have concluded that the warrant should issue and, therefore, Defendant Johnson is not entitled to the shield of immunity.  Likewise, Defendant Johnson is not entitled to immunity pursuant to R.C. 2744.03(A)(6) as he acted in a wanton and reckless manner.

Viewing the evidence in the light most favorable to Andrew Carr, Defendant Johnson has not met his burden.  He is not entitled to summary judgment.  Rather, genuine issues of material fact remain for which a jury is best suited to resolve.  For these reasons, Defendant's Motion for Summary Judgment should be denied.

WHEREFORE, Andrew Carr moves this Honorable Court for an order denying Defendant Johnson's Motion for Summary Judgment.

Respectfully submitted,

By: /s/  Joseph C. Patituce
Joseph C. Patituce (#0081384)
Megan M. Patituce (#0081064)
Patituce & Associates, LLC.

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing Memorandum in Opposition to Defendant Alfred Johnson's Motion for Summary Judgment has been forwarded to all parties via the clerk's office electronic filing on the 11th day of October, 2018.

/s/ Joseph C. Patituce
**JOSEPH PATITUCE (#0081384)**

21