IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | CASE NO. 1:17-cv-00620 |
|---|---|---|
| ANDREW CARR | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE: DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| DETECTIVE ALFRED JOHNSON, *et al* | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORDANUM IN OPPOSITION TO DEFENDANTS
## STEVEN DAVIS AND KEITH KULAK'S MOTION FOR SUMMARY JUDGMENT

---

Now comes Plaintiff, Andrew Carr, by and through his undersigned counsel, who hereby submits this Memorandum in Opposition to Defendant Steven Davis and Keith Kulak's Motion for Summary Judgment moves this Honorable Court for an order denying Defendants Steven Davis and Keith Kulak's Motion for Summary Judgment.

No reasonable jurist, or officer, would have found this search warrant to be founded upon probable cause where it fails to state a single criminal action happening within the address to be searched.  Further, Defendants are not entitled to qualified immunity.

WHEREFORE, Plaintiff prays this Honorable Court denying Defendants Steven Davis and Keith Kulak's Motion for Summary Judgment.

Respectfully submitted,

By: /s/  Joseph C. Patituce
Joseph C. Patituce (#0081384)
Megan M. Patituce (#0081064)
Patituce & Associates, LLC.
26777 Lorain Road, Suite 1
North Olmsted, Ohio 44070

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iii

I.     Introduction ......................................................................................................................1

II.    Defendants Davis and Kulak violated Andrew Carr's constitutional rights and are not
entitled to summary judgment ...........................................................................................1

        a.   Defendants Davis and Kulak entrance into the residence at 19409 Milan Drive was
unconstitutional, without probable cause, and no reasonable officer would have
believed the warrant valid .......................................................................................2

        b.   Defendants Davis and Kulak are not entitled to qualified immunity because the
search warrant was so devoid of probable cause that belief in its existence was
unreasonable .............................................................................................................7

        c.   There remain genuine issues of material fact as to whether Defendants violated the
knock and announce rule when the video evidence contradicts their arguments that
they did knock and announce ...................................................................................10

III.   Defendants engaged in the malicious prosecution of Andrew Carr through their actions and
when reviewed in a light most favorable to the non-moving party summary judgment is not
appropriate .......................................................................................................................11

IV.   Viewing the evidence in the light most favorable to Andrew Carr, there remain genuine
issues of material fact as to whether Defendants falsely imprisoned Andrew Carr ..........13

V.    Viewing the evidence in the light most favorable to Andrew Carr, there remain genuine
issues of material fact as to whether Defendants engaged in a civil conspiracy ...............14

VI.   Conclusion .......................................................................................................................15

Certificate of Service .........................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Texas*, 378 U.S. 108 (1964) ................................................................3

*Anderson v. Creighton*, 483 U.S. 535, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ............7

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ............7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................1

*Franks v. Delaware*, 438 U.S. 254 (1978) ...................................................3

*Fry v. Robinson*, 678 Fed. Appx. 313 (6th Cir. 2017) ........................................ 1, 11s

*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ..................2, 3

*KRL v. Estate of Moore*, 512 F.3d 1184 (9th Cir. 2008) ....................................9

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................................7, 8

*Marchese v. Umstead*, 110 F.Supp.2d 361 (E.D. Pa. 2000) .................................14

*Mays v. Dayton*, 134 F.3d 809 (1998) ...................................................2, 5

*Messerschmidt v. Millender*, 565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) ..................7

*Nathanson v. U.S.*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) ..............................3

*Radvansky v. Olmsted Falls*, 395 F.3d 291 (2005) ...........................................10, 13

*Ridgewood Bd. of Educ. v. N.E. ex rel.* M.E., 11 172 F.3d 238 (3d Cir. 1999) ............14

*Stillwagon v. City of Delaware*, 2018 U.S. App. LEXIS 24002 (6th Cir. Aug. 24, 2018) ..........14

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) .........................................11

*United States v. Besase*, 521 F.2d 1306 (6th Cir. 1975) ...................................5

*United States v. Brown*, 828 F.3d 375 (6th Cir.2016) .......................................3

*United States v. Carpenter*, 360 F.3d 591 (6th Cir.2004) .................................3

*United States v. Dice*, 200 F.3d 978 (6th Cir. 2000) ......................................10

*United States v. Leon*, 468 U.S. 897 (1984) ...............................................................................3, 9

*United States v. Spikes*, 158 F.3d 913 (6th Cir. 1998) ...........................................................10, 11

*Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) .................... 5-6

## CODE SECTIONS

42 U.S. Code 1983 ...............................................................................................................2, 14

## OTHER AUTHORITIES

Civil Rule 56 ...............................................................................................................................1

## II.     Introduction

Defendants are not entitled to summary judgment in this matter.  Civil Rule 56 provides that in cases where the movant can demonstrate that there is "no genuine dispute as to any material fact" the movant will be entitled to judgment as a matter of law.  The movant is entitled to such judgment where it can demonstrate that the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.*

In reviewing a movant's motion for summary judgment, the court "must view the facts and draw all reasonable inferences 'in the light most favorable' to the nonmoving party."  *Fry v. Robinson*, 678 Fed. Appx. 313 (6th Cir. 2017).  In this case, Defendants have moved for summary judgment on several grounds.  As to each claim, Defendants' Motion for Summary Judgment must fail.  Viewing the facts in the light most favorable to Andrew Carr, there are genuine disputes as to material facts.  Those disputes are set forth more fully *infra*, and, for those reasons, Defendants' Motion for Summary Judgment should be denied.

## III.     Defendants Davis and Kulak violated Andrew Carr's constitutional rights and are not entitled to summary judgment.

Defendants Davis and Kulak allege that Andrew Carr's constitutional rights were not violated and that, even if they were, Defendants are entitled to qualified immunity protections. Defendants allege that, for those reasons, they are entitled to summary judgment.  The facts, especially when viewed in the light most favorable to Andrew Carr, do not support Defendants'

conclusion. Rather, there remain genuine disputes which should be submitted to a jury for decision.

   A. <u>Defendants Davis and Kulak entrance into the residence at 19409 Milan Drive was unconstitutional, without probable cause, and no reasonable officer would have believed the warrant valid.</u>

"To assert a §1983 claim, a plaintiff must prove that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person who was acting under color of state law." *Mays v. Dayton*, 134 F.3d 809, 813 (1998). In the instant matter, the question hinges on whether Andrew Carr's constitutional rights were violated as a result of the illegal search of 19409 Milan Drive. This question can clearly be answered in the affirmative.

In this case, the search executed by law enforcement, including Defendants Davis and Kulak, was unconstitutional. Defendant Johnson's search warrant was not supported by probable cause. The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In reviewing warrants, the determination of the judge or magistrate "should be paid great deference by reviewing courts" and reviewed in a common-sense manner. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A totality of the circumstances analysis should be utilized in determining whether the magistrate had a substantial basis to believe the search would lead to evidence of criminal acts. *Id.* at 236, 238. "The job of the magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit... there is a fair probability that contraband or

evidence of a crime will be found in a particular place." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir.2016), *citing Gates*, 462 U.S. at 238. "There must, in other words, be a *nexus* between the place to be searched and the evidence sought." *Id. citing United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004) (en banc). Conclusory statements are not sufficient. *Gates*, 462 U.S. at 239, *see also Nathanson v. U.S.*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*. There must be a "specific and concrete" connection as opposed to one that is vague or generalized. *Brown*, 828 F.3d at 382. "[C]ourts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued" to ensure that magistrates do not abdicate their role, because "whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the circumstances presented." *Gates*, 462 U.S. at 239; *Brown*, 828 F.3d at 382.

Deference to a magistrate's findings, however, "does not preclude inquire into the knowing or reckless falsity of the affidavit on which that determination was based." *United States v. Leon*, 468 U.S. 897, 914 (1984) *citing Franks v. Delaware*, 438 U.S. 254 (1978). The magistrate must be functioning in a "neutral and detached" manner and may "not serve merely as a rubber stamp for the police." *Id. citing Aguilar v. Texas*, 378 U.S. 108 (1964). Further, deference will not be paid when a warrant is "based on an affidavit that does not' provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.*, at 915 *citing Illinois v. Gates*, *supra.*

In support of their Motion for Summary Judgment, Defendants Davis and Kulak allege that the search warrant was "facially sufficient" and contained "no obvious defect." Defs. Davis and

Kulak Motion, p8.  This claim is, however, clearly inaccurate.  Defendants point to no evidence which supports their broad claim of facial sufficiency.  The search warrant contained absolutely no evidence that criminal activity was occurring at 19409 Milan Drive.  Even a perfunctory reading of the warrant would reveal the lack of probable cause evidenced within the warrant.  There is, quite literally, no evidence of criminal activity at 19409 Milan Drive whatsoever.  Ex. A., Search Warrant.  Even Defendant Johnson conceded that there was no evidence of criminal activity at 19409 Milan Drive listed within the warrant.  Ex. B., MTS TR, p65-66.

No reasonable police officer would have relied upon a magistrate's signature upon this search warrant. Ex. C, Stoughton Report. At no place within the four corners of the search warrant's twenty-five paragraphs is there even a shred of evidence of criminal activity occurring at 19409 Milan Drive.  Ex. A., Search Warrant.

Paragraphs one through ten of the search warrant all deal with unrelated conduct that purportedly happened in 2014, two full years before the warrant in the underlying matter was signed by Judge Astrab.  Ex. A., Search Warrant; Ex. B., MTS TR, p.57.  Paragraphs eleven through fifteen deal with conduct that purportedly occurred in 2015, a full year to five months prior to the search warrant being signed in this matter.  Ex. A., Search Warrant; Ex. B., MTS TR, p.57.  Paragraphs eighteen through twenty-five are generalized, boiler plate, statements that are contained in multiple other search warrants.  Ex. A., Search Warrant; Ex. B., MTS TR, p.57-58.  Paragraph sixteen, taken on its face, merely states that a video was posted on April 9, 2016, purportedly showing Michael Menefield driving a vehicle with weapons. Ex. A., Search Warrant, paragraph 16.  This paragraph does not establish when the video was actually taken, nor does it show any nexus between the address to be searched and criminal conduct.  Paragraph seventeen also alleges that Michael Menefield was at a shooting range at some point with a video posted on

April 9, 2016.  Ex. A., Search Warrant, paragraph 17.  This paragraph does not establish when Michael Menefield was at a gun range, nor does it establish in any way that criminal conduct was occurring inside the location to be searched.

The search warrant purports that a confidential informant stated that Michael Menefield was the source of firearms that were previously recovered.  Ex. A., Search Warrant, paragraph 17.  There is nothing in the affidavit that suggests that the confidential informant provided the address from which Michael Menefield lived or that Michael Menefield was even still trafficking in firearms.  Ex. C., Stoughton Report.  Nothing in the affidavit establishes a nexus between ongoing criminal activity and 19409 Milan Drive.

The search warrant also purports to base the probable cause decision on social media posts allegedly made by Michael Menefield.  Ex. A., Search Warrant.  The first video allegedly shows Michael Menefield firing a rifle in October 2015.  The second video shows an African American male holding money and multiple firearms.  Ex. A., Search Warrant, Ex. C., Stoughton Report.  The third video shows a male firing a weapon at a gun range, it does not show enough information to conclude who the subject of the video is.  Assuming that Michael Menefield is the person depicted in all three videos there is no evidence, or declaration, contained within the search warrant that connects these videos in either time or place to 19409 Milan Drive.

The Sixth Circuit has stated that "the specificity required by the Fourth Amendment is *not* as to the person against whom the evidence is to be used, but rather as to the place to be searched and the thing to be seized." *Mays*, at 814 *citing United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975).  In "reviewing an application, courts must bear in mind that search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *Id. citing Zurcher v. Stanford Daily*, 436

U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). In the instant case, Defendant Johnson may have had probable cause for an arrest warrant for Michael Menefield, but, by his own admissions, officers had no evidence regarding criminal activity at 19409 Milan Drive.

A reasonable police officer with even the minimum amount of training and experience could learn from the search warrant that: (1) Michael Menefield has a criminal history, (2) that he was arrested and convicted previously of a felony offense, (3) police had previously investigated Michael Menefield, (4) a confidential informant had previously indicated Michael Menefield sells weapons to the Heartless Felons, (5) there are three videos purportedly showing Michael Menefield with weapons, and (6) Michael Menefield at some point "listed" his address as 19409 Milan Drive. Ex. A, Search Warrant. At no place in the warrant is there a single description of illegal activity happening in connection with, in, or around 19409 Milan Drive. The search warrant is so devoid of any amount of evidence to establish that there was a nexus between 19409 Milan Drive and criminal activity committed by anyone that a reasonable officer would have not executed it. If they had taken the time to read it. In this matter, as explained below the officers claiming qualified immunity did not even take the time to read the warrant they were executing. Ex. D, Davis Second Interrogatory Response; Ex. E, Kulak Second Interrogatory Response.

Reviewing the facts in the light most favorable to Andrew Carr, Defendants did not have probable cause for the search warrant of 19409 Milan Drive. The affidavit contained absolutely no evidence related to illegal firearms within the home located at 19409 Milan Drive, or any other criminal activity. For these reasons, Defendants' Motion for Summary Judgment should be denied.

B. <u>Defendants Davis and Kulak are not entitled to qualified immunity because the search warrant was so devoid of probable cause that belief in its existence was unreasonable.</u>

Defendant Davis and Kulak's actions do not entitle them to qualified immunity in this case. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Id. citing Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id. citing Anderson v. Creighton*, 483 U.S. 535, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

As to violations of the Fourth Amendment, the fact that a neutral magistrate signed the warrant is a factor in favor of an officer's "objective reasonableness," but not the end of the inquiry. *Id.* at 546-47. Where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," the "shield of immunity" is lost. *Id.* For example, where affidavits are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the shield of immunity will be lost. *Id.* at 547.

Ordinarily, an officer is not expected to question a neutral magistrate's determination as to probable cause. *Id.* However, the question remains as to "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."

*Malley v. Briggs*, 475 U.S. 335, 345 (1986). In the alternative, "whether a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* "If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest." *Id.*

"[I]n an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it." *Id.* "But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should." *Id.*, at 345-46. For these reasons, the United States Supreme Court has found "it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." *Id.,* at 346.

In evaluating whether or not a magistrate is neutral and detached we need to also look at whether or not a reasonable jurist would conclude that there is probable cause on the face of the warrant. As described above not a single paragraph contained within the search warrant contains a shred of evidence that criminal activity happened within the walls of 19409 Milan Drive. Ex. A, Search Warrant; Ex. B, MTS TR, p. 65-66.

In this case, Defendants did not read the warrant and claim they had no responsibility to do so. Defs. Davis and Kulak Motion, p. 8; Ex. D, Davis Second Interrogatory Response; Ex. E, Kulak Second Interrogatory Response; Ex. I, Davis Declaration; Ex. J, Kulak Declaration. Defendants declare themselves as "rank and file" members of the team, claiming this alleviates their responsibility to read the warrant. Defs. Davis and Kulak Motion, p8. Defendants claim it was actually their superior officers' responsibility. Defs. Davis and Kulak Motion, p8. This position is, however, inconsistent with the facts and law.

Defendants cite to the Ninth Circuit decision in *KRL v. Estate of Moore*, which states that "officers who plan and lead a search 'must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way.'" *KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008) *citing United States v. Leon*, 468 U.S. 897, 922-23 (1984). Defendants misapply the standard set forth in *Leon*, however. In *Leon*, the United States Supreme Court explained that "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, at 922-23. The Court explained, however, that "references to 'officer' throughout [the] opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." *Leon*, fn 24. In this case, Defendants Davis and Kulak are, actually, two of the officers who executed the warrant. Given that Defendants were officers executing the warrant as contemplated in *Leon*, they were required to read the warrant and affidavit, which they admittedly did not. Had they taken the opportunity to read the document, Defendants would have discovered the fact that Defendant Johnson had alleged facts demonstrating criminal activity was occurring at 19409 Milan Drive.

Defendants were also, shockingly, aware that they were being dispatched not just to one home but to two. Ex. B, MTS TR, p.92. The SWAT Team had been briefed that Michael Menefield may emerge from a second address on Milan Avenue and setup accordingly. Ex. B, MTS TR, p.92. Defendants were armed not only with a facially deficient warrant but they knew from their briefing that they were setting up in front of two different addresses. The implication is not only obvious but either a flagrant intentional misuse of a facially deficient warrant to look for a suspect, or they were entirely reckless in their disregard for the law.

As discussed above the defendants repeatedly attempt to classify themselves as mere "line officers" who purportedly bear no responsibility for their actions because they simply followed orders. Even if they were merely line officers that day, rather than highly trained SWAT officers who were executing an invalid search warrant, they are still responsible for their conduct. *Radvansky v. Olmsted Falls*, 395 F.3d 291, 315 (2005). In *Radvansky* the 6th Circuit rejected the argument that the defendants be shielded from liability even though the officers had consulted with both a prosecutor and superior officer before arresting Radavansky. *Id.* Here, the defendants should not be able to escape their legal obligations merely because they believe another officer was responsible for reading the warrant.

Here, no reasonably competent officer would have concluded that the warrant contained sufficient probable cause. Defendants' attempt to classify themselves as "rank and file" belies their extensive training and experience as members of the SWAT team. Their failure to read the warrant and affidavit prior to execution thereof is inconsistent with the actions of a reasonably competent officer. The affidavit was so lacking in indicia of probable cause that belief in its existence was rendered unreasonable. Viewing the facts in the light most favorable to Andrew Carr, Defendants Davis and Kulak should not be entitled to summary judgment as there are genuine issues of material fact which should be decided by a jury.

    C. <u>There remain genuine issues of material fact as to whether Defendants violated the knock and announce rule when the video evidence contradicts their arguments that they did knock and announce.</u>

Police officers are required to give notice of their authority and purpose for being on an individual's property to execute a search warrant. *United States v. Spikes*, 158 F.3d 913 (6th Cir. 1998); *see also United States v. Dice*, 200 F.3d 978 (6th Cir. 2000). As the court explains the purpose of the knock and announce law serves a useful purpose to reduce the potential for violence

to the occupants and officers, reduces the needless destruction of private property, and protects an individual's right to privacy in his or her house. *Id.*

Defendants claim that they complied with the knock and announce requirement, however, this is contradicted by the evidence in this case. One of the Maple Heights officers was wearing a GoPro video that depicts part of the events that unfolded that day; specifically, it depicts the breach into 19409 Milan Drive. Ex. C, Stoughton Report; Ex. F, GoPro Video. Defendants provided written statements following their entry into the home. Ex. G, Davis statement; Ex. H, Kulak Statement. These written statements are inconsistent with both the video and each other. Moreover, these statements are inconsistent with the declarations filed in this matter. Ex. I, Davis Declaration; Ex. J, Kulak Declaration.

In reviewing whether or not the officers violated the knock and announce law in a light most favorable to Andrew Carr there is a genuine issue of material fact. The video evidence while not entirely dispositive does show material inconsistences with the written statements and declarations made by Defendants. Accordingly, this Honorable Court should deny Defendants' Motion for Summary Judgment.

**IV. Defendants engaged in the malicious prosecution of Andrew Carr through their actions and when reviewed in a light most favorable to the non-moving party summary judgment is not appropriate.**

Defendants Davis and Kulak allege that Andrew Carr's claim for malicious prosecution must fail because Defendants "had no involvement in Carr's arrest or prosecution." Defs. Davis and Kulak Motion, p12. This position is both factually and legally incorrect.

A malicious prosecution claim encompasses "wrongful investigation, prosecution, conviction, and incarceration." *Fry v. Robinson*, 678 Fed. Appx. 313, 319 (6th Cir. 2017) *citing Sykes v. Anderson*, 625 F.3d 294, 205 (6th Cir. 2010). "A malicious prosecution claim therefore requires

a showing that (1) the officer initiated, influenced, or participated in the decision to prosecute; (2) the officer lacked probable cause for the prosecution; (3) as a result of the prosecution, the plaintiff suffered a deprivation of liberty, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Id.* In this case, all four elements can be established. Defendants participated in the decision to prosecute in that they not only illegally entered Andrew Carr's home at 19409 Milan Drive. Defendants completed statements to advance the criminal proceedings which were initiated against Andrew Carr at both the city and county level, and were consulted by the Cuyahoga County Prosecutor's Office in connection with the criminal prosecution of Andrew Carr. Ex. G, Davis statement; Ex. H, Kulak Statement; Ex. K, Dismissal TR, p107. As argued *supra*, Defendants lacked probable cause to enter the residence at 19409 Milan Drive. Their unlawful entrance of the residence created a dangerous situation which led to the arrest and prosecution of Andrew Carr.

As a result of the prosecution, Andrew Carr suffered extensively. Andrew Carr was incarcerated as a result of Defendants' actions in the Cuyahoga County jail for multiple months while he waited for trial. He incurred debt to pay for his attorney fees. He lost standing in the community. Shockingly, he was set to swear in as a citizen of the United States the morning the defendants executed the search warrant. Andrew Carr has been damaged far in excess of what has been stated here because the defendants executed a facially defective warrant that they did not even bother to read.

Finally, the criminal proceedings against Andrew Carr were terminated in his favor – a dismissal before the trial court ruled on his motion to suppress. The prosecution averred that it had consulted with numerous parties, including Defendants, and ultimately concluded that Andrew Carr had a defense. Ex. K, Dismissal TR, p.107. The raid of 19409 Milan Drive was

unconstitutional and, thus, Defendants had no right to be in the residence. Defendants were, in essence, intruders in the home. After the vast array of shortcomings were laid bare at the suppression hearing, the prosecution opted to terminate the criminal proceedings in Andrew Carr's favor. Ex. K, Dismissal TR, p.107.

Viewing the evidence in the light most favorable to Andrew Carr, there remain genuine issues of material fact as to the claim for malicious prosecution. For these reasons, Defendants Davis and Kulak should not be entitled to summary judgment.

**V.** **Viewing the evidence in the light most favorable to Andrew Carr, there remain genuine issues of material fact as to whether Defendants falsely imprisoned Andrew Carr.**

Defendants' vague claims of non-involvement do not absolve them of their liability as to Andrew Carr's claim for false imprisonment. The claims of false arrest and false imprisonment are indistinguishable. *Radvansky v. Olmsted Falls*, 395 F.3d 291, 315 (2005). To prevail, there must be proof of an intentional detention of a person and that the detention was unlawful. *Id.* The good or bad intentions of the actor are immaterial. *Id.*

As argued *supra*, Defendants were unlawfully trespassing at 19409 Milan Drive. They forcibly entered the home without probable cause. The unconstitutional entrance into and search of 19409 Milan Drive by Defendants caused the arrest and imprisonment of Andrew Carr.

These Defendants are the ones who actually arrested and detained Andrew Carr, as well as his father and brother. Ex. C, Stoughton Report; Ex. I, Davis Declaration; Ex. J, Kulak Declaration. The defendants are directly responsible for the arrest and subsequent detention of Andrew Carr. As stated at length above the defendants intentionally failed to review the facially defective search warrant that they were executing. Their actions resulted in Andrew Carr being falsely imprisoned.

Viewing the facts in the light most favorable to Andrew Carr, there remain genuine issues of material fact. These issues remain for a jury to decide. For these reasons, Defendants should not be entitled to summary judgment.

**VI.** **Viewing the evidence in the light most favorable to Andrew Carr, there remain genuine issues of material fact as to whether Defendants engaged in a civil conspiracy.**

Defendants Davis and Kulak vaguely argue that they were uninvolved and, therefore, are not liable under a theory of civil conspiracy. This argument must fail. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Stillwagon v. City of Delaware*, 2018 U.S. App. LEXIS 24002, 34 (6th Cir. Aug. 24, 2018). "To prevail on a §1983 civil-conspiracy claim, a plaintiff must show that (1) 'a single plan existed;' (2) the alleged co-conspirator 'shared in the general conspiratorial objective' to deprive plaintiff of his constitutional or federal statutory rights; and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury' to the plaintiff." *Id.* "Direct evidence is ___***not***___ required, and circumstantial evidence may provide adequate proof." *Id.*, at 33-34. *Ridgewood Bd. of Educ. v. N.E. ex rel.* M.E., 11 172 F.3d 238, 254 (3d Cir. 1999) ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right."); *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D. Pa. 2000) ("To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a depravation [sic] of civil rights in furtherance of the conspiracy by a party to the conspiracy.")

In this case, it is clear that a single plan existed. That plan was to enter the residence at 19409 Milan Drive with a constitutionally deficient search warrant. In this matter the search warrant was facially invalid. Ex. A, Search Warrant. The defendants did not read the warrant

prior to executing it. Ex. D, Davis Second Interrogatory Response; Ex. E, Kulak Second Interrogatory Response. The defendants formulated a plan for entering the premises together. Ex. G, Davis Statement; Ex. H, Kulak Statement; Ex. I, Davis Declaration; Ex. J, Kulak Declaration; Ex. L, Search Execution Report.

The Defendants in this case shared in the general conspiratorial objective in this case. They gathered prior to the execution of the unconstitutional warrant to review exactly how they would execute the illegal search at 19409 Milan Drive. Defendants made sure to position officers at a second address in order to flush out Michael Menefield. Ex. B, MTS TR, p.92. The defendants were armed not only with an invalid warrant that they did not read but they would have known, had they acted reasonably and lawfully, that the entire search of 19409 Milan drive was a sham designed to find a suspect that the Cleveland Gang Unit was looking for.

The overt act in this case consisted of the illegal entrance into the residence at 19409 Milan Drive. The unconstitutional search of the residence furthered the conspiracy and caused injury to Andrew Carr. As described above Defendants' actions caused Andrew Carr to not only be injured in the traditional sense but he initially lost the opportunity to become a citizen of the United States only to have to spend many months fighting to get that opportunity back.

The facts, when viewed in the light most favorable to Andrew Carr, make clear that genuine issues of material fact remain. These issues of fact are for the jury to decide. For these reasons, Defendants are not entitled to summary judgment.

## VII. Conclusion

In this case, Andrew Carr has clearly established rights which have been violated. Further, Defendants Davis and Kulak, acting as a reasonable officer, should have known that his conduct would result in a violation of those rights. Further, Defendants Davis and Kulak, acting as

reasonable officers, should have known that his conduct would result in a violation of those rights. Viewing the evidence in the light most favorable to Andrew Carr, Defendants' search was unconstitutional because there was no probable cause for the search of 19409 Milan Drive. The execution of that warrant at 19409 Milan Drive constituted an illegal search which violated the civil rights of Andrew Carr.

Defendants Davis and Kulak are not entitled to qualified immunity because no reasonably competent officer would have concluded that the warrant should issue and, therefore, Defendants are not entitled to the shield of immunity. Viewing the evidence in the light most favorable to Andrew Carr, Defendants have not met their burden to warrant summary judgment as to the civil rights, civil conspiracy, false imprisonment, and malicious prosecution claims. Rather, genuine issues of material fact remain for which a jury is best suited to resolve. For these reasons, Defendants' Motion for Summary Judgment should be denied.

WHEREFORE, Andrew Carr moves this Honorable Court for an order denying Defendant Davis and Kulak's Motion for Summary Judgment.

Respectfully submitted,

By: /s/ Joseph C. Patituce
Joseph C. Patituce (#0081384)
Megan M. Patituce (#0081064)
Patituce & Associates, LLC.
26777 Lorain Road, Suite 1
North Olmsted, Ohio 44070
Phone: 440-471-7784
Fax: 440-398-0536
Email: attorney@patitucelaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Memorandum in Opposition to Defendants Steven Davis and Keith Kulak's Motion for Summary Judgment has been forwarded to all parties via the clerk's office electronic filing on the 11th day of October, 2018.


/s/ Joseph C. Patituce_____
**JOSEPH PATITUCE (#0081384)**