IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW CARR, | ) | CASE NO. 1:17 CV 620 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| ALFRED JOHNSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION** |
| | ) | |

This matter is before the Court on Defendants, Officer Steven Davis and Sgt. Keith E. Kulak's Motion for Summary Judgment (ECF #57); Defendant Alfred Johnson's Motion for Summary Judgment and Defendants Alfred Johnson, The City of Cleveland and Cleveland Police Department's Motion for Summary Judgment on the Remaining Solon Police Defendants' Cross Claims (ECF #58); and, Defendant Patrolman Ron Dodge's Motion for Summary Judgment (ECF #59). Plaintiff has filed Oppositions to all three motions, and each Defendant has filed a reply in support of their own Motion. (ECF # 62, 63, 64, 67, 70, 73, 74). Third-party Defendant, Southeast Area Law Enforcement Network ("SEALE") has also filed a Motion to Dismiss for Failure to State a Claim. (ECF #61). No response was filed to that motion.

## Factual and Procedural Background[1]

Plaintiff, Andrew Carr, filed this Complaint against Detective Alfred Johnson, , Patrolman Ron Dodge, Officer Steven Davis, and Sgt. Keith E. Kulak in both their official and individual capacities. The Complaint also names The Cleveland Police Department, the Garfield Heights Police Department, the Solon Police Department, and the City of Cleveland. (ECF #1).

Officer Davis and Sgt. Kulak are police officers employed by the Solon Police Department and are members of the Southeast Area Law Enforcement Network's ("SEALE")[2] Special Weapons and Tactics ("SWAT") unit. Officer Dodge is employed by the Garfield Heights Police Department is also a member of the SEALE SWAT unit. On the night at issue, Officers Davis, Kulak, and Dodge were working as part of the SEALE SWAT unit. That unit was called in to assist the Cleveland Police Department by securing the property when a search warrant obtained by the Cleveland Police Department was executed at Plaintiff's residence in Maple Heights.

Plaintiff alleges that the Patrolman Dodge, Officer Davis, and Sgt. Kulak forcibly entered his home, using a flash bang device, without identifying themselves as police officers. The

---

[1]

Except as otherwise noted, the factual summary is based upon the undisputed facts as set forth by the Parties and, to the extent any disputes exist, such disputes will be construed in the light most favorable to Plaintiffs as required under the summary judgment standard.

[2]
The SEALE network was established through an Agreement for Establishment of Regional Council of Governments, authorized under Chapter 167 of the Ohio Revised Code, by and between the City of Bedford, the City of Maple Heights, the City of Bedford Heights, the Village of Oakwood, the City of Garfield Heights, the Village of Walton Hills, and the City of Solon. The purpose of SEALE is to pool resources and personnel into a specialized, flexible unit that is available to assist member departments in the containment, de-escalation and control of situations beyond the capabilities of a traditional on-duty police officer.

officers claim that they did identify themselves and upon receiving no response breached the door, deployed a Noise and Flash Diversionary Device ("NFDD") into the home, and entered the premises. Plaintiff fired a single shot at the front door immediately following their entrance. Plaintiff was subsequently arrested and indicted on three counts of felonious assault against a police officer, was incarcerated for approximately five months post-arrest and pre-trial before he was freed on a personal bond. He filed a Motion to Suppress in which two Detectives, including Detective Johnson testified. The matter was continued without a ruling to determine if Judge Astrab would be compelled to testify. Before that issue could be resolved, the State of Ohio dismissed the case against the Plaintiff in its entirety.

The SEALE SWAT team's only role in this incident was to secure the property prior to the execution of the search warrant. The SEALE SWAT officers were not involved in the actual search of the premises, and did not have the responsibility or jurisdiction to investigate and charge any crime that may or may not have been committed at the property. They were not directly involved in the prosecution of the Plaintiff.

Plaintiff acknowledges that the SEALE SWAT officers were acting in connection with a search warrant prepared for the Plaintiff's address. The search warrant was obtained in connection with an investigation that was being undertaken by Detective Johnson of the Cleveland Police Department. The investigation was centered on a suspect named Michael Menefield, who, as it turns out, did not live at that home at the time. Plaintiff's address was, however, listed as Mr. Menefield's residence in multiple computer data bases available to police officers. Detective Johnson was aware that there were also other possible residences for the target suspect.

Detective Johnson had obtained information from a confidential informant indicating that Mr. Menefield may have been trafficking in guns with the Heartless Felons gang. The Detective had seen social media posts by Mr. Menefield showing him in possession of weapons. When Mr. Menefield's name was run through various databases, his current address came up as Plaintiff's address, the residence where the search warrant was eventually executed. This address was listed as Mr. Menefield's on the Distributive Factual Analysis Criminal Threat Solutions Database which reviews public records including electric bills, phone bills, Ohio Adult Parole Authority, associated phone numbers, and effective dates of reported addresses. It was listed as Mr. Menefield's current address on the Ohio Law Enforcement Gateway, Law Enforcement Automated Data System, the Ohio Department of Rehabilitation and Corrections, and the Bureau of Motor Vehicles. Mr. Menefield still received mail at this address, used the address for his bank account, vehicle registration, and driver's license. (ECF #58, Ex. E). Detective Johnson surveilled the residence but did not observe Mr. Menefield at the address.

Detective Johnson then drafted a search warrant request and a supporting affidavit seeking to search for criminal gang material, weapons, and other criminal tools at the Plaintiff's address. He sent the draft to the Cuyahoga County Prosecutor's office for review. An Assistant Prosecutor suggested some revisions, which Detective Johnson incorporated before he took them to the Cuyahoga County Common Pleas Court for judicial review. Judge Michael Astrab of the Cuyahoga County Court of Common Pleas reviewed the warrant and the affidavit, found that there was probable cause to search, and signed the warrant.

Plaintiff claims that the search warrant that authorized the entry into his home, setting off this chain of events and providing the basis of Plaintiff's lawsuit, was not supported by probable

cause. He further alleges that the investigating detective knew that there was no probable cause to search the home, and that the officers who executed the warrant knew or should have known that the warrant was not supported by probable cause. His Complaint raises claims for unspecified civil rights violations stemming from the allegedly improper search, failure to train, civil conspiracy, false arrest/imprisonment, malicious prosecution and violation of state law, and unreasonable search and seizure under 42 U.S.C. § 1983.

Sergeant Kulak filed a Third-Party Complaint against the Southeast Area Law Enforcement Network, and a Cross-claim against Alfred Johnson, the Cleveland Police Department, and the City of Cleveland. The Court granted unopposed motions to dismiss filed by the City of Cleveland and the Cleveland Police Department, Solon Police Department, and Garfield Heights Police Department, which also eliminated the claims in Count Two of the Complaint. (ECF #38, 39, 40).

Plaintiff's claims hinge on his allegation that the search warrant executed at his home was invalid, that the officers executing the warrant knew or should have known that it was not supported by probable cause, and that the executing officers did not properly identify themselves as police officers when they executed the warrant.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of

> informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-

mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Evidence may be presented by citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). In lieu of presenting evidence, Fed. R. Civ. P. 56(c) also allows that a party may show that the opposing party's evidence does "not establish the presence of a genuine dispute" or that the adverse party "cannot produce admissible evidence to support the fact."

According to Fed. R. Civ. P. 56(e),

[i]f a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## Discussion

I. <u>Section 1983 (Counts One and Six)</u>

Counts One and Six of the Complaint raise claims for unspecified constitutional violations under §1983, as well as claims of false imprisonment, malicious prosecution, and civil conspiracy against the remaining Defendants. In order to prevail on a claim brought pursuant to § 1983, a plaintiff must establish by a preponderance of the evidence that a person acting under the color of law deprived him of a right secured by the United States Constitution or the laws of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). A violation of §1983 must be intentional or knowingly committed in order to be compensable. A negligent or reckless deprivation is not sufficient. *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999). Further, an injury caused by mere negligence, that does not rise to the level of a constitutionally protected interest is not compensable under §1983. *See, Collins v. City of Shaker Heights*, 503 U.S. 115 (1992). Government officials are protected from liability for civil damages, including those that arise under §1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2081 (2011).

A. <u>Warrant/Search</u>

In cases of alleged Fourth Amendment violations involving a search or seizure pursuant to a warrant, the Supreme Court has held that a warrant issued by a neutral magistrate is generally the "clearest indication that the officers acted in an objectively reasonable manner, or in 'objective good faith.' *Messerschmidt v. Millender*, 565 U.S. 535 (2012). The Court went on to hold that in an ordinary case, "'an officer cannot be expected to question the magistrate's

probable-cause determination' because '[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.'" *Messerschmidt* at 536, *quoting United States v. Leon*, 468 U.S. 897, 921, 104 S. Ct. 3405. The only exception noted is when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092. For example, when a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 921.

### 1. SEALE SWAT Unit Members (Davis, Kulak, Dodge)

In this case there is absolutely no evidence that the SEALE SWAT officers had any reason to question validity of the warrant at issue. Plaintiff does not dispute that the officers were acting on a facially valid search warrant, signed by a judge. There is no evidence that they had access to the underlying affidavit or any of the investigative information that led to the issuance of the warrant, or that they had any reason to dispute the validity of the warrant. There is no evidence to suggest that they were acting within the capacity of Team Commander or any other position that is tasked with reviewing the warrant. "Even if a warrant is so lacking in probable cause that official reliance is unreasonable, not all officers executing the search are liable for the constitutional deficiency." *KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008). These officers did not plan or lead the search. They were within their rights to accept the word of their superiors that there was a warrant and that the warrant was valid. *See, Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1028 (9th Cir. 2002). They are, therefore, entitled to immunity from any of Plaintiff's claims that rely on the alleged invalidity of the warrant they

were called in to help execute.

### 2. Detective Johnson

Plaintiff argues that Detective Johnson did not have the right to rely on the search warrant because there was no probable cause for its issuance, and as the officer who provided the affidavit in support, he should have known that it was insufficient. Probable cause is a purely legal question that is to be determined by the court and is not an issue within the jury's province. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005). Probable cause for a search warrant exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998)(citing *Greene v. Reeves*, 80 F.3d 1101 (6th Cir. 1996). When reviewing a magistrate's determination of probable cause for a warrant, a court must give great deference to the issuing magistrate's decision and must uphold that determination unless it found to have been arbitrary. *Mays*, 134 F.3d at 814. In this case, the issuing judge, Judge Astrab, has testified that he reviewed the warrant and that his decision was independent and unbiased. (ECF #58, Ex. C).

A magistrate's determination of probable cause may be overridden if there is evidence that the affidavit leading to the issuance of the warrant knowingly or recklessly contained material falsehoods. *See, United States v. Leon*, 468 U.S. 897, 914 (1984). There is absolutely no evidence, nor even an allegation that the information contained in the affidavit presented to Judge Astrab was false. Plaintiff does assert that Detective Johnson made a material omission in his affidavit by failing to note that Mr. Menefield was also associated with other addresses and that the police were staking out those other residences. This is not a material omission, nor is

-10-

such an omission equivalent to the importation of false information into an affidavit. It cannot be uncommon for a suspect to have more than one potential residence or to have changed locations during the course of an investigation. This does not undermine a magistrate's conclusion that there may be a fair probability of finding sought after evidence at a location that the suspect has repeatedly reported as his residence, that a witness has confirmed as his address, and where he still receives his mail. There need not be a guarantee that a search warrant will be fruitful in order to find probable cause for its issuance.

A determination of probable cause also may not be entitled to deference if it is based on "an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *Id.* at 915. Plaintiff argues that Detective Johnson knew that there was no nexus between the address in the search warrant and potential criminal activity, and, therefore, that the affidavit was insufficient to support a finding of probable cause. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). The evidence supports a contrary finding. Detective Johnson knew that the suspect Mr. Menefield had connections to the Heartless Felons gang, that he had been in possession of weapons, and that he had past drug related convictions. He also knew that the address to be searched was the address listed for Mr. Menefield in multiple databases. The affidavit lays out this information, creating a nexus between the address and Mr. Menefield, and between Mr. Menefield and criminal activity. Based on this information, Judge Astrab found probable cause to issue the search warrant.

Detective Johnson was entitled to rely on this ruling. An officer is generally not expected to question a magistrate's determination of probable cause. Further, there is no evidence to suggest that Detective Johnson, himself, did not believe that there was probable

cause for a search. Although there was no specific claim in the affidavit that weapons had been seen at the location to be searched, it is not objectively unreasonable for a magistrate to find probable cause to believe that evidence of criminal activity will exist at the residence of a person who is engaged in criminal activity. As there was legitimate, reliable information indicating that the searched location was Mr. Menefield's residence, there was sufficient reason to believe that evidence of his alleged criminal activity may have been present in the home. Further, the fact that Judge Astrab's daughter may have been a victim of the Heartless Felons is not sufficient reason for Detective Johnson to disregard his finding of probable cause. There is no indication that Detective Johnson had any reason to believe that Judge Astrab or his family had been victimized by Mr. Menefield or that any prior connection to the Heartless Felons affected Judge Astrab's decision in this case. There is no legitimate reason, in this case, to second guess the determination of the magistrate, or to otherwise undermine the deference that is to be afforded his decision. Detective Johnson, is, therefore, entitled to qualified immunity the §1983 claims in Counts One and Six of the Complaint

B. Knock and Announce

In addition to challenging the validity of the warrant, Plaintiff claims that the SEALE SWAT officers failed to "knock and announce" prior to breaching his door and entering his home. The knock and announce rule requires officers to give notice of their authority and purpose when executing a warrant. *United States v. Spikes*, 158 F.3d 913 (6th Cir. 1998). "At its core, the 'knock and announce' rule serves to respect the sanctity of a person's home by affording notice to those inside so that they may open the door peaceably and without the needless destruction of property, as well as by avoiding the possibility of a violent confrontation

-12-

if those inside mistook the police for intruders." *Id.* at 925. If admittance is refused once the officers give notice of their identity and intent, they may be justified in forcefully entering the premises. *See, United States v. Maher*, 185 F. Supp.2d 826, 830 (W.D. Mich. 2001).

The SEALE SWAT defendants in this case claim that they did, in fact, announce themselves by knocking on the front door and identifying themselves as officers who were executing a warrant. When there was no response to their announcement, they breached the front door. If they did, indeed, announce themselves in this fashion, and were refused admittance or otherwise ignored, then their forced entry would have been justified. Plaintiff, however, claims that there is a factual question as to whether any such announcement was made.

Officer Richard Cramer of the City of Garfield Heights and SEALE team member testified he was present for the execution of the search warrant and that he "loudly performed the 'knock and announce' at the Premises by indicating that [they] were the police and [they] had a search warrant." (Cramer Decl. ¶ 4). Officer Ronald Dodge, SEALE team member and officer for the City of Garfield Heights, also testified that Officer Cramer "loudly performed the 'knock and announce' at the Premises, identifying them as police officers and indicating that they had a search warrant. (Dodge Decl. ¶ 9). Sgt. Davis and Sgt. Kulak also submitted a affidavits stating that the SEALE SWAT team knocked on the front door and announced they were police officers executing a search warrant before entering the premises. (ECF #57, EX. I, J). Sgt. Kulak's written statement following the event also indicates that a "knock and announce" was made by Officer Cramer. (ECF # 57, Ex. H). Neither party submitted any statements by anyone at the scene contradicting these witnesses on this issue.

Plaintiff claims that the witness statements were contradictory, and points out that the

-13-

video recorded by one of the Maple Heights officers did not record any announcement of police presence or declaration of their purpose. Neither of these arguments is sufficient to satisfy Plaintiff's burden of showing that there is a genuine issue of material fact for trial. The witness statements provided by Defendants are not contradictory or inconsistent in any material fashion. There may be minor discrepancies related to the exact timing of events, which is to be expected from witnesses, located in different positions, during a fast moving event. However, all witnesses testified that an officer made the required announcement, all who identified the officer identified Officer Cramer as the person making the announcement, and all witnesses testified that the announcement was made prior to any entry being made to the home.

Plaintiff's purported expert indicates that he does not think, based on the evidence he reviewed, that an announcement was made prior to breaching the door, but he admits that there is no evidence that conclusively shows that the announcement was not made. Further, the question of whether an announcement was made is a factual question and not a matter of opinion. The determination of the issue does not rely on any specialized skill or knowledge, and, therefore, no opinion testimony on this issue would be admissible.

The video available is also insufficient to counter the witnesses' testimony as it does not depict or record the officers at the door at the time the announcement would have been made. Even Plaintiff's proffered expert indicates that the video does not disprove the officers' testimony. There were multiple people in the home at the time of the SWAT unit's entrance and Plaintiff has not cited any statement made by anyone in the house that contradicts the officers' testimony, or otherwise creates a material question of fact that requires a jury's determination. In fact, Plaintiff offers no admissible evidence that contradicts the multiple statements from

witnesses at the scene who testified that one of the SWAT officers "knocked and announced" before the entrance to the home was breached, and that no occupants of the home responded to this announcement. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Plaintiff has offered no evidence that would support his claim that the SEALE SWAT defendants violated his clearly established constitutional or statutory rights. The only admissible evidence provided in this case shows that the officers acted in an objectively legal and reasonable manner when they executed the search warrant at the Plaintiff's residence. They are, therefore, entitled to qualified immunity the §1983 claims in Counts One and Six of the Complaint.

C. State Claims

The officers are immune from all state law claims under Ohio Revised Code Chapter 2744. The Ohio Revised Code, Section 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability unless one of the following exceptions apply:

i. The employee's acts or omissions were manifestly outside the scope of his employment.

ii. The employee's acts or omissions were with malicious purpose, in bad faith, or in a wonton or reckless manner; or

iii. Civil liability is expressly imposed by a section of the Revised Code.

There is no evidence to suggest that at any time during the events giving rise to this action, the named officers were acting outside the scope of their employment, or that any of their

actions were taken "with malicious purpose." There is also no evidence that the officers acted recklessly or in bad faith.

### 1. Malicious Prosecution

A malicious prosecution claim requires the Plaintiff to prove: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Gradisher v. City of Akron*, 794 F.3d 574 (6th Cir. 2015). An officer cannot be held liable for malicious prosecution if he did not make the decision to prosecute. *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002). There is no allegation that Detective Johnson had any involvement in Mr. Carr's prosecution.

Although, Plaintiff contends otherwise, the SEALE SWAT officers have presented evidence to show that they had no involvement in Mr. Carr's prosecution. Mr. Carr has presented no evidence to the contrary. The fact that they were present at the incident, and that they completed statements that may or may not have been used in the investigation and decision by other entities to pursue charges, is not sufficient to make them liable for the decision to prosecute. These officers were witnesses to and victims of the incident. Witnesses and victims, who have no authority to prosecute, are not subject to claims for malicious prosecution. Further, there is no dispute that Mr. Carr fired a weapon at the SEALE SWAT officers as they entered his home. There is also no dispute that a Grand Jury indicted him for this action. A grand jury indictment issued by a properly constituted grand jury, conclusively determines the existence of

probable cause and defeats a claim for malicious prosecution. Therefore, the malicious prosecution claim against these officers must be dismissed.

### 2. False Imprisonment

Plaintiff's Complaint also asserts a claim against the SEALE SWAT officers for false arrest imprisonment. Law enforcement officers cannot be held liable for false imprisonment in the execution of their duties. *Snyder v. United States*, 990 F.Supp.2d 818, 829 (S. D. Ohio). This claim, therefore, fails as a matter of law. In his opposition, Plaintiff restates this claim as a claim for false arrest. In order to prove this claim, he must demonstrate that these officers intentionally detained him and that the detention was unlawful. *Radvansky v. Olmsted Falls*, 395 F.3d 291, 315 (2005). Although the parties dispute whether any of the SEALE SWAT officers were involved in Mr. Carr's actual arrest, there is no question that some officers intentionally detained the Plaintiff at the scene. There is no evidence, however, suggesting that this detention was in any way unlawful. As discussed above, these officers entered the Plaintiff's property in execution of search warrant that they were entitled to rely upon. The evidence shows that they did so following a knock and announce identifying themselves as police officers executing search warrant. Plaintiff was taken into custody after he fired shots at them, and Plaintiff was later indicted by a grand jury for his actions. Plaintiff's claim for false imprisonment against these officers should be dismissed.

### D. Civil Conspiracy

Plaintiff claims the Defendants, by working together to execute the search warrant, were engaged in a civil conspiracy to violate his constitutional rights. There has been no violation of Plaintiff's constitutional rights, therefore, no conspiracy claim can be maintained. Further, there

is no evidence that the SEALE SWAT officers or Detective Johnson were involved in any agreement to violate Plaintiff's rights. All evidence shows that they were working together in the normal course of their duties to execute a warrant that they believed to be valid.

III. Third Party Claims and Cross-Claims

Because the Plaintiff in this action has not sustained his burden of demonstrating that there is triable issue of fact that could support his claims against the Defendants, there remains no basis for recovery under the Third-Party Claims and Cross-claims raised by the Defendants in this case. For this reason all claims, third-party claims, and cross-claims are hereby dismissed with prejudice.

**Conclusion**

It is undisputed that the search of Plaintiff's residence resulted in a surprising and dangerous invasion of his properly that was not instigated by any wrongdoing on his part. Following an investigation, and determination that Plaintiff's own act of firing at officers upon their entry may have been defensible under the circumstances, all resulting charges against the Plaintiff were dismissed. However, there is no evidence of actionable conduct against any of the individual Defendants. There is no evidence to suggest that their actions were anything other than reasonable, warranted, and properly authorized. Therefore, for the foregoing reasons, the Defendants, Officer Steven Davis and Sgt. Keith E. Kulak's Motion for Summary Judgment (ECF #57); Defendant Alfred Johnson's Motion for Summary Judgment and Defendants Alfred Johnson, The City of Cleveland and Cleveland Police Department's Motion for Summary Judgment on the Remaining Solon Police Defendants' Cross Claims (ECF #58); and, Defendant

Patrolman Ron Dodge's Motion for Summary Judgment (ECF #59), are all GRANTED. Third-party Defendant, Southeast Area Law Enforcement Network's Motion to Dismiss for Failure to State a Claim, (ECF #61), is also GRANTED without opposition. This case is hereby TERMINATED.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: December 12, 2018